UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN TREVINO, CHRISTOPHER WARD, LINDA QUINTEROS, ROMEO PALMA, BRITTANY HAGMAN, ALBERTO GIANINI, and JUAN C. AVALOS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN STATE FC, LLC, a Delaware Corporation; AMAZON.COM INC., a Delaware Corporation; AMAZON FULFILLMENT SERVICES, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Lead Case No.: 1:18-cv-00120-DAD-BAM (*Trevino*)<br><br>Member Case Nos.:<br><br>1. 1:18-cv-00121-DAD-BAM (*Palma*)<br>2. 1:18-cv-00567-DAD-BAM (*Avalos*)<br>3. 1:18-cv-01176-DAD-BAM (*Hagman*)<br>4. 1:17-cv-01300-DAD-BAM (*Ward*)<br><br><u>ORDER DENYING DEFENDANTS' MOTIONS TO STAY PROCEEDINGS PENDING THE SIXTH CIRCUIT'S DECISION IN *SALDANA*</u><br><br>Resolving:<br><br>(1) 1:18-cv-00120-DAD-BAM (*Trevino*), Doc. No. 40-1<br><br>(2) 1:18-cv-00567-DAD-BAM (*Avalos*), Doc. No. 41-1<br><br>(3) 1:18-cv-01176-DAD-BAM (*Hagman*), Doc. No. 35-1 |

This matter is before the court on defendants' motions to stay in three cases: (1) *Trevino v. Golden State FC LLC*, 1:18-cv-00120-DAD-BAM, Doc. No. 40-1 ("*Trevino*"); (2) *Avalos v.*

1

*Amazon.com LLC and Golden State FC LLC*, 1:18-cv-00567-DAD-BAM ("*Avalos*"), Doc. No. 41-1; (3) *Hagman et al v. Amazon Fulfillment Services, Inc.*, et al, 1:18-cv-01176-DAD-BAM ("*Hagman*"), Doc. No. 35. On February 28, 2019, these three cases and two other cases were consolidated with *Trevino v. Golden State FC LLC et. al*, 1:18-cv-00120-DAD-BAM ("Consolidated Action") being designated as the lead case. (*See* Consolidated Action, Doc. No. 45.)

A hearing on the motions to stay was held on November 20, 2018. Attorney Shawn Westrick appeared telephonically on behalf of the *Hagman* plaintiffs, attorneys Peter Dion-Kindem and Lonnie Blanchard appeared telephonically on behalf of the *Trevino* plaintiffs, and attorney Isandra Fernandez appeared telephonically on behalf of the *Avalos* plaintiffs. Attorneys Barbara Miller and Joel Purles appeared telephonically on behalf of moving party defendants Amazon Fulfillment Services, Inc. and Golden State FC LLC. The court has considered the parties' briefs and oral arguments. For the reasons stated below, the court will deny defendants' motion to stay.

**FACTUAL AND PROCEDURAL BACKGROUND**

Amazon.com, Inc. ("Amazon.com") is a Delaware corporation and online retailer. (*See* Consolidated Action, Doc. No. 65 ("Consolidated Compl.") at ¶ 15.) Amazon Fulfillment Services, Inc. is purportedly a wholly-owned subsidiary of Amazon.com. (*Id.* at ¶ 16.) Golden State FC, LLC ("Golden State") is a Delaware corporation that is purportedly a wholly-owned subsidiary of Amazon Fulfillment Services, Inc. (*Id.*) Golden State was purportedly created to build and operate fulfillment centers for Amazon.com, including at least nine that are in operation in California. (*Id.* at ¶ 17.) Plaintiffs in this Consolidated Action are non-exempt employees of defendants in California, alleging violations of the California Labor Code and applicable Wage Order provisions. (*See id.* at ¶¶ 1–5.)

**A.** *Allison* **Action**

On September 6, 2013, ten former warehouse employees filed a class action lawsuit, *Allison v. Amazon.com, Inc.*, W.D. Wash. Case No. 13-cv-01612-RSL ("*Allison*"), alleging that defendants Amazon.com, Inc. and Integrity Staffing Solutions, Inc. violated federal and state law

by failing to compensate workers at Amazon fulfillment centers for time spent in security screening. (*See Hagman*, Doc. No. 35-1 at 7.) The *Allison* plaintiffs brought claims based on defendants' alleged violation of the Fair Labor Standards Act ("FLSA"), asserting that defendants did not compensate their hourly warehouse workers for time spent passing through a security checkpoint before taking lunch and again at the end of each shift. (*Id.*) Additionally, the *Allison* plaintiffs brought two class claims under California law: 1) failure to pay overtime and meal break violations; 2) unlawful business practices in violation of California Business & Professions Code § 17200. (*Id.*)

**B.**     ***Saldana* Action**

On December 19, 2013, four additional former warehouse employees filed a similar class action lawsuit in the Los Angeles County Superior Court, *Saldana v. Amazon.com, LLC*, Case No. 14-cv-01545-R-VBK ("*Saldana*"), which was subsequently removed to the U.S. District Court for the Central District of California on February 28, 2014. (*See Hagman*, Doc. No. 35-1 at 8.) As in *Allison*, the *Saldana* plaintiffs allege that defendants Amazon.com, LLC; Golden State FC LLC; SMX, LLC; and Staff Management, LLC violated California law by requiring employees at California fulfilment centers to submit to individual security searches when clocking out for meal periods and at the end of the day. (*See id.* at 8–9.) The *Saldana* plaintiffs allege that this practice prevented warehouse workers from being paid for all the hours that they worked. (*Id.*)

The *Saldana* plaintiffs asserted eight causes of action under California law: 1) failure to pay hourly wages or, alternatively minimum wages; 2) failure to pay overtime wages; 3) failure to provide meal periods or compensation in lieu thereof; 4) failure to provide rest periods or compensation in lieu thereof; 5) failure to timely pay wages due at termination; 6) failure to provide itemized employee wage statements; 7) violation of the Unfair Competition Law; 8) violation of the Private Attorneys General Act of 2004 ("PAGA"). (*Id.*)

**C.     Amazon Security Screening MDL Proceedings**

On February 19, 2014, the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") issued an order centralizing five actions pending in different district courts across the country, including the

*Allison* action, in the U.S. District Court for the Western District of Kentucky (the "MDL court"). (*Id.*) In each of the five actions the plaintiffs alleged that Amazon and staffing agencies violated federal and state wage and hour laws by not compensating employees for time spent passing through security screening at Amazon's fulfillment centers. *See In re Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, 999 F. Supp. 2d 1375, 1377 (J.P.M.L. 2014). The J.P.M.L. concluded that centralization of the five actions was warranted "[g]iven the overlap in the FLSA collective action certification issues and the Rule 23 proposed classes . . .." *Id.* at 1376.

On April 1, 2014, the *Saldana* case was also transferred to the MDL court for coordinated pretrial proceedings. (*See Hagman*, Doc. No. 35-2 at 2.) On March 19, 2015, following the Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, ___U.S.___, 135 S. Ct. 513, 519 (2014), in which the court held that the time spent passing through security at Amazon Fulfillment Centers was not compensable under the FLSA, the *Allison* plaintiffs dismissed all of their claims except the California state law claims. (*Hagman*, Doc. No. 35-1 at 9.) After discovery commenced in *Allison* and *Saldana* in the Western District of Kentucky, the *Saldana* plaintiffs and one of the defendants in that action, SMX LLC, reached a settlement, which released the wage and hour claims of all but one plaintiff, Khadijah Robertson, and dismissed all defendants except for Amazon.com, LLC and Golden State.[1] (*Id.*) Plaintiff Robertson, however, continued to pursue class-wide claims against Amazon.com, LLC and Golden State in that action. (*Id.*)

On June 7, 2016 and prior to the filing of any class certification motion, defendants Amazon.com, LLC and Golden State FC, LLC filed a motion for summary judgment as to all remaining causes of action in *Saldana*. (*Id.*). On June 20, 2017, the MDL court found that plaintiff Robertson had failed to present evidence showing that there are "hours worked" for which she was not paid and, accordingly, granted summary judgment in favor of the defendants in that case. *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage &*

---

[1] Though Robertson is the only remaining named plaintiff in the case, the parties generally continue to refer to the case as *Saldana*.

*Hour Litig.*, No. 3:14-CV-290-DJH, 2017 WL 2662607, at *1 (W.D. Ky. June 20, 2017). The MDL court found that the undisputed evidence before it on summary judgment established that "Amazon employees could choose to avoid any security-related delay by leaving personal items outside the secure area." *Id.* at *3.

Plaintiff Robertson appealed the MDL court's decision granting summary judgment in favor of defendants to the Sixth Circuit Court of Appeals on July 10, 2017. (*See Hagman*, Doc. No. 35-1 at 10.) The Sixth Circuit held oral arguments on June 14, 2018, but no decision on appeal has yet been rendered. (*Id.*) On July 20, 2018, the *Allison* parties jointly moved to stay *Allison* until a decision was issued on the *Saldana* appeal. (*Hagman*, Doc. No. 35-1 at 12.) On July 24, 2018, the MDL court granted the parties' request and stayed *Allison* pending resolution of *Saldana*. (*Id.*)

**D.     The Instant Action**

Initially, this Consolidated Action began as five separate putative class actions that were filed between the period of September 28, 2017 and August 31, 2018.[2] All five cases involve similar and related allegations that defendants failed to comply with provisions of the California Labor Code and the applicable Wage Order in connection with employment at Amazon.com fulfillment centers in California. In particular, the complaints in *Trevino*, *Avalos*, and *Hagman* all included allegations that plaintiffs were not compensated for the time that they spent in security screening lines at fulfillment centers. Defendants filed motions with the J.P.M.L. to transfer the *Hagman* and *Trevino* actions to the Amazon Security Screening MDL, but the J.P.M.L denied the motions on August 1, 2018 on the ground that the majority of the prior transferred actions had concluded and, therefore, transfer of additional actions to the MDL would not be efficient. (*See Hagman*, Doc. No. 35-1 at 11.)

/////

---

[2] The specific details regarding the procedural history of each separate class action are somewhat lengthy and need not be covered here in resolving the motions pending before this court. Defendants have provided summaries of the procedural histories for *Trevino*, *Avalos*, and *Hagman* leading up to consolidation in their respective motions to stay. (*See Trevino*, Doc. No. 40-1 at 10–11; *Avalos*, Doc. No. 41-1 at 10–12; *Hagman*, Doc. No. 35-1 at 10–11.)

5

Before this court, defendants filed motions to stay in *Trevino*, *Avalos*, and *Hagman* on September 26, 2018. (*See Trevino*, Doc. No. 40-1; *Avalos*, Doc. No. 41-1; *Hagman*, Doc. No. 35-1.) At the hearing for the motions to stay held on November 20, 2018, the court and the parties discussed the possibility of a formal consolidation of the cases. On February 25, 2019, the parties stipulated to the consolidation of: (1) *Juan Trevino v. Golden State FC LLC, et al.,* 1:18-cv-00120-DAD-BAM ("*Trevino*"); (2) *Romeo Palma v. Golden State FC, LLC*, 1:18-cv-00121-DAD-BAM ("*Palma*"); (3) *Juan C. Avalos v. Amazon.com, LLC, et al.,* 1:18-cv-00567-DAD-BAM ("*Avalos*"); (4) *Brittany Hagman, et al. v. Amazon Fulfillment Services, Inc., et al.*, 1:18-cv-01176-DAD-BAM ("*Hagman*"); and (5) *Christopher Ward, et al. v. Amazon, et al.,* 1:17-cv-01300-DAD-BAM ("*Ward* "). (*See Trevino,* Doc. No. 53; *Palma,* Doc. No. 40; *Avalos,* Doc. No. 54; *Hagman,* Doc. No. 44; *Ward,* Doc. No. 33.) On February 28, 2019, the assigned magistrate judge issued an order consolidating the cases pursuant to the parties' stipulation and granting plaintiffs leave to file a consolidated complaint. (*Trevino*, Doc. No. 54.) On March 28, 2019, all plaintiffs filed a consolidated first amended complaint against all defendants. (*Trevino*, Doc. No. 65.) On April 11, 2019, defendants filed an answer. (*Trevino*, Doc. No. 66.)

The operative Consolidated Complaint includes the following seven causes of action: 1) failure to pay wages for all hours worked, including overtime pursuant to California Labor Code § 510; 2) meal period violations pursuant to Labor Code § 226.7 and the applicable Industrial Welfare Commission ("IWC") Wage Order; 3) rest period violations; 4) wage statement violations pursuant to § 226; 5) failure to pay waiting time wages pursuant to Labor Code § 203; 6) violation of Unfair Competition Law pursuant to California Business and Professions Code § 17200; 7) recovery of civil penalties pursuant to the California Private Attorney General Act ("PAGA"). (*Trevino*, Doc. No. 65.)

In the parties' April 16, 2019 joint scheduling report, defendants stated that their motions to stay all security screening claims pending the appeal before the Sixth Circuit in the earlier-filed actions would equally apply to the security screening claims that plaintiffs had asserted here in their Consolidated Complaint. (*Trevino*, Doc. No. 67 at 8.)

/////

**DISCUSSION**

Defendants have filed essentially the same motion to stay in all three cases. (*See Trevino*, Doc. No. 40-1; *Avalos*, Doc. No. 41-1; *Hagman*, Doc. No. 35-1.) In all three motions, defendants argue that this court should stay the plaintiffs' security screening claims in *Trevino*, *Avalos*, and *Hagman* actions pending the Sixth Circuit's decision in *Saldana*, based on either the first-to-file rule or pursuant to the court's inherent discretion to stay claims pending completion of parallel litigation.

All plaintiffs submitted separate oppositions to defendants' motion to stay. The *Trevino* plaintiffs argue that because the MDL court granted summary judgment in *Saldana* prior to class certification, the appeal only involves individual claims, and thus resolution of the case pending before the Sixth Circuit will have no preclusive effect on this Consolidated Action. (*Trevino,* Doc. No. 45 at 1.) The *Trevino* plaintiffs also argue that their claims are broader than those asserted in *Saldana*. (*Id.* at 2.) The *Avalos* plaintiffs argue that the two actions are not substantially similar so as to justify a stay under the "first-to-file" rule or under the court's inherent authority and, in the alternative, that any stay that is granted should be limited in scope to the plaintiffs' security screening based allegations. (*Avalos*, Doc. No. 47.) The *Hagman* plaintiffs argue that there is no preclusive effect to the Sixth Circuit's decision in *Saldana* and that any overlap in the various cases is insufficient to order a stay. (*Hagman*, Doc. No. 37.)[3]

After the motions for stay were taken under submission, the parties stipulated to plaintiffs filing a first amended consolidated class action complaint, which encompasses *Hagman*, *Trevino*, and *Avalos*, as well as the *Palma* and *Ward*. (*Trevino*, Doc. No. 65.) The parties have not

---

[3] Additionally, the *Hagman* plaintiffs argue that defendants' request for a stay should be analyzed under the doctrine discussed in *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976). (*See Hagman*, Doc. No. 37 at 3–4.) "Under *Colorado River*, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted). However, the instant motions involve staying this action pending a decision in another federal court, specifically a circuit court. The *Hagman* plaintiffs have not provided any authority supporting the application of the *Colorado River* doctrine in the context involved here, and the court declines the invitation to resolve the pending motions on this basis.

7

indicated that supplementing or updating of their briefing on the pending motion is necessary following consolidation. Therefore, the court will evaluate defendants' arguments as applied to the Consolidated Complaint.

**A.     First-to-File Rule**

"The first-to-file rule is intended to serve the purpose of promoting efficiency . . . and should not be disregarded lightly." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)) (internal citation omitted). Courts applying the first-to-file rule should be driven to maximize "economy, consistency, and comity." *Kohn Law Grp., Inc.*, 787 F.3d at 1240 (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)).

The first-to-file rule "may be invoked when a complaint involving the same parties and issues has already been filed in another district." *Alltrade, Inc.*, 946 F.2d at 625 (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). "In applying the first-to-file rule, a court looks to three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (citing *Alltrade, Inc.*, 946 F.2d at 625–626). If the action meets all three threshold requirements, the court may exercise its discretion to transfer, stay, or dismiss the action. *Id.* The first-to-file rule is meant to "alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013) (citing *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted)). A district court's decision to apply the first-to-file rule is discretionary subject to review only for an abuse of that discretion. *See Pacesetter*, 678 F.2d at 95.

    1.  <u>Chronology</u>

"Where duplicative actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction generally should proceed with the litigation." *Negrete v. Petsmart, Inc.*, No. 2:13-cv-01218-MCE-AC, 2013 WL 4853995, at *2 (E.D. Cal. Sept. 10, 2013). Here, the chronology of the actions permits application of the first-to-file rule. The *Saldana* action was

filed on December 19, 2013 and transferred to the *Amazon Security Screening MDL* on April 1, 2014. (*See Hagman*, Doc. No. 35-1 at 13.) All the actions in the consolidated action pending before this court were filed thereafter, with the earliest filed being *Ward*, which was initiated in the Stanislaus County Superior Court on August 1, 2017 and removed to this federal court on September 28, 2017. (*See Ward*, Doc. No. 1 at 2.) None of the plaintiffs dispute that their respective actions were filed after the *Saldana* action was initiated. Therefore, the first factor of the first-to-file rule is met and permits granting a stay here.

2.  Similarity of the Parties

"Regarding similarity of the parties, courts have held that the first-to-file rule does not require exact identity of the parties." *Kohn Law Grp., Inc.*, 787 F.3d at 1240 (citing cases). Substantial similarity between the parties is sufficient. *Id.* Generally, in class actions, the proper comparison is between the classes, rather than the class representatives. *See Adoma*, 711 F. Supp. 2d at 1147 (citing *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).

Here, the parties agree that the defendants in the Consolidated Action and *Saldana* are substantially similar. The Consolidated Complaint names as defendants Amazon.com and Golden State FC, LLC. (*See* Consolidated Compl., Doc. No. 65 at 4.) The complaint in *Saldana* names Amazon.com, LLC and Golden State as defendants. (*See Hagman*, Doc. No. 35-1 at 14.) Generally, in both complaints, plaintiffs allege that the defendants acted as joint employers of plaintiffs and the other class members, and that "Golden State was created to build and operate the fulfilment centers for Amazon.com . . .." (*Id.* at 65 at 5.)

Additionally, plaintiffs do not contest that the plaintiffs in the Consolidated Action and *Saldana* are also substantially similar.[4] In *Saldana*, the plaintiff sought to represent a class

---

[4] The court notes that while the Ninth Circuit has stated that the first-to-file rule only requires "substantial similarity of parties" *see Kohn*, 787 F.3d at 1240, it has not discussed this requirement in the context of class actions, either before class certification or after certification has been denied. District courts in the Ninth Circuit have disagreed about whether a comparison regarding the similarity of the parties may occur when a class has not yet been certified. *Compare Ross*, 542 F. Supp. 2d at 1020 (concluding that plaintiffs in two actions were different because the earlier filed case proceeded as an individual action, after plaintiffs were denied class certification, and the second case was proceeding as a putative class action) and *Lac Anh Le v. Pricewaterhousecoopers LLP*, No. C-07-5476 MMC, 2008 WL 618938, at *1 (N.D. Cal. Mar. 4,

composed of all current and former hourly, nonexempt warehouse employees of Golden State in California from December 19, 2009 to the present. (*See Hagman*, Doc. No. 35-1 at 14.) The complaint in the Consolidated Action before this court contemplates a class of all non-exempt employees of defendants in California between July 12, 2013 and the date of class certification. (*See* Consolidated Compl. at ¶ 21.) Therefore, the court concludes that there are substantial similarities between the parties that permits granting a stay.

        3.      Similarity of the Issues

Finally, the similarity of the issues presented between *Saldana* and the consolidated action also permits granting a stay. "To determine whether two suits involve substantially similar issues, we look at whether there is substantial overlap between the two suits." *Kohn Law Grp., Inc.*, 787 F.3d at 1241 (internal quotations omitted). "The issues in both cases . . . need not be identical, only substantially similar." *Id.* at 1241.

Here, there is significant overlap between the claims asserted in the Consolidated Complaint and the *Saldana* action that is on appeal before the Sixth Circuit. Of the seven causes of action in the Consolidated Complaint, the first three are based on the impact of defendants' security procedures and how those procedures affect whether: defendants paid the wages paid for the hours worked, including overtime (claim 1); defendants provided lawful meal periods (claim 2); defendants provided lawful rest periods (claim 3). (*See* Consolidated Compl. at ¶¶ 38, 43, 49.) In general, plaintiffs allege in the Consolidated Complaint that they were not compensated for the time spent going through the necessary security procedures required at defendants' fulfillment centers. (*See id.*) Due to the size of the fulfillment centers and the security procedures necessary

---

2008) (concluding that the plaintiffs in the two FLSA actions were not similar because the earlier filed action was not certified at the time and therefore, both cases were individual actions) with *Negrete v. Petsmart, Inc.*, 2013 WL 4853995, at *3 ("In the context of a class action, the court compares the potential classes rather than the named representatives.") (citing *Adoma*, 711 F. Supp. 2d at 1147); *see also Wallerstein*, 967 F. Supp. 2d at 1295 (comparing cases discussing whether the first-to-file rule applies to proposed group actions before certification and concluding that it is proper to compare classes prior to certification); *Adoma*, 711 F. Supp. 2d at 1147 (same). In the summary judgment in favor of the defendants was granted prior to the plaintiff moving for class certification. The Consolidated Action before this court remains a putative class action. However, because this issue was not raised or addressed by the parties, the court declines base any determination of whether plaintiffs in both actions are substantially similar on this ground.

to enter and exit those centers, plaintiffs allege that they were unable to leave the area from their work station in the time allotted to have rest breaks and/or meal periods. (*Id.*) As in *Saldana*, the fourth and fifth claims in the Consolidated Action, which allege wage statement violations and failure to timely pay wages due at termination, are in part dependent on the violations alleged in the first three causes of action. (*See id.* at 14–18.) Finally, plaintiffs' sixth and seventh claims, which allege violation of California's Unfair Competition Law and a PAGA violation, are derivative of the other substantive claims. (*See id.* at 18–19.)

The court acknowledges that plaintiffs' Consolidated Complaint includes allegations of additional facts and claims other than those related to the size of the Amazon fulfillment center and the necessary security screening procedures.[5] However, defendants are only seeking a stay of the claims which are based on the security screening procedures. (*See Trevino*, Doc. No. 48 at 7.) Therefore, the similarity of the issues in the *Saldana* action and the Consolidated Action also permits granting a stay on the security screening procedures claims.

    4.    <u>Judicial Efficiency and Fundamental Fairness</u>

"Even assuming the three requirements of the first-to-file rule are satisfied here, it does not follow that application of the rule is appropriate." *Adoma*, 711 F. Supp. 2d at 1149. "Fairness considerations and equitable concerns can bar application of the rule and in any event inform the court's decision." *Espineli v. Toyotal Motor Sales U.S.A., Inc.*, No. 2:17-cv-00698-KJM-CKD, 2018 WL 1569570, at *3 (E.D. Cal. Mar. 30, 2018) (internal citation omitted).

Even though the three threshold factors of the first-to-file rule have arguably been met in this case, the court cannot conclude that application of the rule here would promote efficiency and alleviate the likelihood of inconsistent judgments. In this regard, the court is unpersuaded by defendants' argument that a stay pending resolution of the *Saldana* appeal would "promote efficiency and judicial economy by allowing both the Courts and the parties to benefit from the consideration and resolution of that appeal regardless of the outcome." (*Hagman*, Doc. No. 35-1

---

[5] For instance, the Consolidated Complaint alleges that class members who worked at locations operating under an improper alternative work week schedule were not compensated for all hours worked. (*See* Consolidated Compl. at ¶¶ 22, 35–37.)

at 16.) The decision of the Sixth Circuit in *Saldana* will not be binding authority in this case. Defendants argue that such a showing is unnecessary for the court to apply the first-to-file rule. (*Hagman*, Doc. No. 40 at 3–4.) Though it is not a factor in applying the first-to-file rule, courts have considered whether the first filed case would have preclusive effect in determining whether a stay would resolve legal issues posed in the second filed case, thereby preventing duplicate litigation. *See Lovell v. United Airlines, Inc.*, 728 F. Supp. 2d 1096, 1108 (D. Haw. 2010) (citing the collateral estoppel doctrine as a reason why a stay pursuant to the first-to-file rule would guide litigation and settlement of a similar action); *Ross*, 542 F. Supp. 2d at 1020 (denying motion to dismiss or stay because the previously-filed case denied class certification and the current case was a putative collective action, and therefore, a judgment in the previously-filed case would not resolve the issues in the current case).

The court is also not persuaded that a stay would promote judicial efficiency. If the Sixth Circuit affirms the granting of summary judgment in *Saldana*, it will resolve only the claims of the individual plaintiff in that case, while at the most providing this court with persuasive authority. Further, it is unclear whether the decision in *Saldana* will be instructive for resolving the Consolidated Action, since much of the district court's analysis was based on facts specific to the plaintiff in *Saldana* and the security screenings at the Amazon facility where she worked, which could differ from the facts as alleged in the Consolidated Complaint before this court. If the Sixth Circuit reverses the grant of summary judgment in *Saldana* and remands for further proceedings, this court also will not gain any efficiencies since the J.P.M.L. has already denied defendants' motion to transfer actions to the Amazon Security Screening MDL. Finally, the court notes that the *Saldana* appeal has now been pending before the Sixth Circuit for nearly two years. In any event, it is likely that the Sixth Circuit will issue its opinion before the undersigned is called on to resolve substantive motions in this case and thus judicial efficiency would not be served by the granting of a stay.

For all of these reasons, this court will exercise its discretion to deny defendants' motion to stay the Consolidated Action pending the Sixth Circuit's decision in *Saldana*.

/////

**CONCLUSION**

Accordingly,

1. Defendants' motion to stay the security screening claims in this action (*Trevino,* 18-cv-00120-DAD-BAM, Doc. No. 40-1, *Avalos,* 18-cv-00567-DAD-BAM, Doc. No. 41-1, *Hagman,* 18-cv-01176-DAD-BAM, Doc. No. 35-1) are denied; and

2. This matter is referred back to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **June 27, 2019**

_____
UNITED STATES DISTRICT JUDGE