UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN TREVINO, ROMEO PALMA, JUAN C. AVALOS, ALBERTO GIANINI, CHRISTOPHER WARD, and LINDA QUINTEROS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN STATE FC, LLC, a Delaware Limited Liability Company, AMAZON.COM INC., a Delaware Corporation, and AMAZON FULFILLMENT SERVICES, INC., a Delaware Corporation,<br><br>Defendants. | Lead Case No.: 1:18-cv-00120-DAD-BAM (*Trevino*)<br><br>Member Case Nos.:<br><br>1. 1:18-cv-00121-DAD-BAM (*Palma*)<br>2. 1:18-cv-00567-DAD-BAM (*Avalos*)<br>3. 1:18-cv-01176-DAD-BAM (*Hagman*)<br>4. 1:17-cv-01300-DAD-BAM (*Ward*)<br><br>ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE<br><br>(Doc. No. 72) |

This matter is before the court on defendants Golden State FC, LLC, Amazon.com, Inc., and Amazon Fulfillment Services, Inc.'s (collectively, "Amazon") motion to transfer this consolidated action to the United States District Court for the Central District of California. (Doc. No. 72.) The court deemed the motion suitable for decision without oral argument pursuant to Local Rule 230(g). (Doc. No. 79.) Having considered the parties' briefs, and for the reasons stated below, the court will deny Amazon's motion to transfer.

/////

1

# FACTUAL BACKGROUND

This consolidated action consists of five separately filed class actions which were initially filed in state courts located within the boundaries of the United States District Court for either the Eastern or Central Districts of California and thereafter removed to those federal courts. Three of the five cases (*Trevino*, *Ward*, and *Palma*) were filed within the Eastern District of California, and the remaining two (*Avalos* and *Hagman*[1]) were originally filed within the Central District of California. (Doc. No. 72 at 9–10.) Each of these actions was filed as a class action and each asserted similar wage and hour violations against Amazon. (*Id.*)

On January 8, 2018, plaintiff Juan Trevino filed a notice of related cases, seeking to relate *Trevino*, *Ward*, and *Palma*. (Doc. No. 10.) On January 24, 2018, the undersigned issued an order relating the *Trevino*, *Ward*, and *Palma* cases. (Doc. No. 11.)

On April 23, 2018, the parties in *Avalos* filed a stipulation seeking to transfer that case to this district and, on August 29, 2018, the parties in *Hagman* filed a stipulation seeking to transfer that case to this district. (Doc. No. 72 at 10–11.) Both stipulations were adopted by court order and the *Avalos* and *Hagman* actions were thereafter assigned to this court. (*Id.* at 11.)

On February 25, 2019, the parties in each of the five aforementioned actions stipulated to consolidating those actions. (Doc. No. 53.) That stipulation was adopted by court order and *Trevino* was designated as the lead case. (Doc. No. 54.) On March 28, 2019, plaintiffs filed a first amended consolidated class action complaint. (Doc. No. 65.) Therein, they allege the following wage and hour violations: (1) failure to pay wages for all hours worked, including overtime; (2) meal period violations; (3) rest period violations; (4) wage statement violations; (5) failure to pay waiting time wages; and (6) violations of California Business and Professions Code. (*See id.*)

/////

---

[1] On December 6, 2019 former plaintiff Brittany Hagman and defendant Amazon filed a stipulation seeking to dismiss former plaintiff Hagman as a putative class representative. (Doc. No. 106.) On December 9, 2019, the undersigned gave effect to that stipulation. (Doc. No. 109.) Although former plaintiff Hagman is no longer a putative class representative as a result, the undersigned will nonetheless consider the circumstances surrounding the transfer of the *Hagman* action to this district court in ruling on the pending motion to transfer.

2

On April 23, 2019, the parties participated in a joint scheduling conference before Magistrate Judge Barbara A. McAuliffe. (Doc. No. 68.) During this scheduling conference, "Magistrate Judge McAuliffe informed the parties that the Chief Judge of the Eastern District would be retiring[2] at the end of 2019, leaving [the undersigned] as the only remaining district court judge in the Fresno [Courthouse]." (Doc. No. 72 at 11.)

On June 6, 2019, twenty-seven named plaintiffs filed a separate wage and hour class action in Orange County Superior Court against Amazon.com Services, Inc. and, on July 5, 2019, that action was removed to the Central District of California (the "*Sherman* action"). (Doc. No. 72 at 11–12); *see also Sherman et al v. Amazon.com Services, Inc.*, 8:19-cv-01329-JVS-SHK, (C.D. Cal. July 5, 2019).

On July 5, 2019, Amazon filed the pending motion to transfer. (Doc. No. 72.) Therein, Amazon seeks to transfer this consolidated action back to the Central District of California. First, Amazon argues that the original purpose of transferring the *Avalos* and *Hagman* actions to this district has been frustrated by "[t]he impending retirement of the Chief Judge," which "was unknown and unforeseen at the time the parties stipulated to transfer[ring] and consolidat[ing] all related cases in the Eastern District." (*Id.* at 12.) Second, it contends that transfer is warranted because the *Sherman* class action asserts claims that overlap with those asserted in this consolidated class action. (*Id.* at 16.) Finally, Amazon argues that this action meets all the requirements for transfer under 28 U.S.C. § 1404(a) and that the parties will not be prejudiced by the transfer. (*Id.* at 17–22.) On August 6, 2019, plaintiffs filed their opposition to the pending motion and, on August 13, 2019, Amazon filed its reply thereto. (Doc. No. 77, 81.)

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. "[T]he purpose of [§ 1404(a)] is to prevent the waste of

---

[2] Although counsel may have interpreted Magistrate Judge McAuliffe as indicating that Chief Judge O'Neill is retiring at the end of January 2020, in fact, he intends to move to inactive senior status at that time.

3

time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

District courts employ a two-step analysis when determining whether to transfer an action. *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575 EMC, 2014 WL 2702894, at *3 (N.D. Cal. June 13, 2014). "A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district.") "Once the party seeking transfer has made this showing, district courts have discretion to consider motions to change venue based on an 'individualized, case-by-case consideration of convenience and fairness.'" *Park*, 964 F. Supp. 2d at 1093 (quoting *Stewart Org.*, 487 U.S. at 29). The burden is on the moving party to show that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979.)

"A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). These factors include: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 489–99. Moreover, while "§ 1404(a) transfers are different than

4

dismissals on the ground of *forum non conveniens*," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981), the Ninth Circuit has found that "*forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), *superseded by statute on other grounds by* 28 U.S. C. § 1391. Accordingly, a district court can consider private and public factors affecting the convenience of the forum. *Id.* The private factors include "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Piper Aircraft Co.*, 454 U.S. at 241, and *Gulf Oil Corp.*, 330 U.S. at 509).

Finally, "[m]otions to retransfer an action back to the transferor court are generally looked upon with disfavor." *Dewan v. M-I, L.L.C.*, No. 1:14-cv-01151-AWI, 2015 WL 3797462, at *5 (E.D. Cal. June 18, 2015) (internal quotation marks and citation omitted). Accordingly, such motions require "the most impelling and unusual circumstances or a manifestly erroneous transfer order to overcome the law of the case doctrine." *Id.* (internal quotation marks and citation omitted). However, while "[i]t is not appropriate for a transferee court to make an independent determination as to the propriety of the transfer of the case[, . . . ] [t]his rule . . . does not apply where the circumstances under which the transfer was made have changed." *Id.*; *see also* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (4th ed.) § 3846 (2015) ("[T]he doctrine of law of the case and notions of judicial comity ordinarily suggest that the decision of a coordinate court should not be reconsidered. But such restraint is not universally exhibited. A

/////

motion to retransfer is perfectly appropriate, however, on a showing of changed circumstances, particularly when such development would frustrate the purpose of the change of venue.").

With this guidance in mind, the court will now turn to the pending motion.

**ANALYSIS**

The parties do not dispute that this action may have been brought in the U.S. District Court for the Central District of California. Rather, the parties focus on the balance of the relevant factors. As discussed, Amazon primarily argues that the original purpose of transferring the *Avalos* and *Hagman* action to this district has been frustrated by Chief Judge O'Neill's impending move to inactive senior status. It also contends that transfer back to the Central District is warranted because the *Sherman* action overlaps with this action. The court will address Amazon's arguments with respect to the *Sherman* action first, and then address whether the original purpose of the *Avalos* and *Hagman* transfers has been frustrated by Chief Judge O'Neill's taking of inactive senior status in early 2020.

Amazon offers no analysis for why this consolidated class action overlaps with the *Sherman* class action beyond simply asserting so in conclusory fashion. It is not, however, the court's task to compare the allegations in the respective actions to determine whether the actions are overlapping, and transfer is warranted. *See Savage*, 611 F.2d at 279 ("The burden is on the moving party to show that transfer is appropriate."). In any event, it would appear that the two actions are not overlapping. While Amazon's transfer motion was pending, plaintiffs attempted to intervene in the *Sherman* action for the limited purpose of obtaining a stay of that case pending resolution of this action.[3] *See* 8:19-cv-01329-JVS-SHK, (Doc. No. 11). Judge Selna denied that
/////

---

[3] In their opposition to the pending motion, plaintiffs argue that Amazon's motion to transfer is "blatant forum shopping" because, while it "ha[s] selectively stayed numerous other overlapping actions in various state and federal courts based on the pendency of the proceedings in this action and elsewhere," Amazon has "inexplicably chosen to permit *Sherman* to move forward by removing it to the Central District and litigating it there." (Doc. No. 77 at 13–14.) As explained below, Amazon's motion to transfer will be denied due to its failure to carry its burden as the moving party. The court, however, pauses to note that Amazon's decision not to seek a stay in *Sherman* does lend credence to plaintiffs' position that Amazon's motion to transfer in this case suggests some degree of forum shopping on its part.

motion. *See id.* at (Doc. No. 30). In doing so, he found that "there is no substantial overlap between the Trevino and Sherman cases." (*Id.* at 12.) Specifically, he noted that:

> One of the only similarities between the Trevino Matter and Sherman is the third cause of action in Sherman (failure to provide rest breaks in violation of the Wage Order) and the third cause of action in Trevino (failure to provide rest periods). The Trevino Plaintiffs' third claim for relief arises from allegations that (1) as a result of the size of Amazon's fulfilment centers, the Trevino Plaintiffs and class members had a rest break of less than ten minutes; and (2) Amazon enforced a uniform policy that prevented employees from leaving the fulfillment center on rest periods. The Sherman Plaintiffs' third cause of action arises from allegations that Amazon did not provide rest periods every four hours or major fraction thereof. The Sherman Plaintiffs' fourth cause of action for failure to provide suitable resting facilities bears some similarities to Trevino because it arises from failure to provide adequate resting facilities due to the infrequency of bathrooms and size of the fulfillment centers. However, this cause of action was dismissed [in Sherman] . . . .
>
> [A]lthough the sixth cause of action in the Sherman Complaint (failure to pay wages for each hour worked) and the first cause of action in [Trevino] (failure to pay wages for all hours worked, including overtime) are both failure to pay wage violations, they arise from different facts. The Sherman claim derives from unpaid wages related to Amazon's failure to pay reporting-time wages. On the other hand, the Trevino Plaintiffs' claims arise from allegations that Amazon rounded employee clock-in and clock-out times, failure to pay night shift premiums, requiring employees to work unenforceable or invalid alternative work week agreement, failure to pay overtime due to Amazon's workweek and shift scheduling policy and practice, and failure to pay wages for time spent going through Amazon's security procedures. Given that these claims arise from completely different factual allegations, the Court does not find them to substantially overlap.
>
> Finally, while the Sherman Complaint also refers to unpaid wages resulting from "clock-in" time, its allegations are very different from the Trevino Plaintiffs' allegations resulting from an alleged scheme by Amazon to improperly round clock-in and clock-out periods to the detriment of employees. Sherman's allegations pertain to unpaid wages for the time when the Sherman Plaintiffs and class members clock in "ten to twenty-five minutes prior to their scheduled work shifts in order to check their daily assignments on the bulletin board" and retrieve required work equipment. Thus, these allegations are wholly unrelated.

(*Id.* at 12–13) (internal citations omitted). Accordingly, Amazon's "inten[tion] to seek consolidation of *Sherman* with *Trevino* in the Central District, pending the outcome of this motion, in light of the overlapping claims and class period" (Doc. No. 72 at 12) does not weigh in

/////

7

favor of transfer, as Judge Selna has already ruled that there is no substantial overlap between the two actions, thus clearly indicating that he is unlikely to consolidate this action with *Sherman*.

Next, the court addresses Amazon's contention that the purpose of transferring *Avalos* and *Hagman* to the Eastern District has been frustrated by Chief Judge O'Neill's impending move to inactive senior status. Amazon argues that "[t]his [] will leave only one presiding judge—[the undersigned]—in the Fresno division of the already-congested Eastern District, and thwart the original purpose of the transfer and consolidation: preserving time and resources, and ensuring faster and more efficient outcomes in this case." (Doc. No. 72 at 12.) The court is not persuaded.

First, it appears that Amazon was (or at least should have been) aware that the Eastern District was "already-congested" prior to stipulating to transferring the *Avalos* and *Hagman* actions to this district. Indeed, on June 19, 2018—*before* Amazon stipulated to transferring *Hagman* to this district—the district judges of this district wrote a publicly available and widely distributed letter to Congress regarding the caseload crisis in the Eastern District of California.[4] But if the purpose of the transfers was to "ensur[e] faster and more efficient outcomes in th[e] case[s]," why then did Amazon's attorneys stipulate to transferring actions to an "already-congested" district court?

Second, further undercutting Amazon's position are the stipulations themselves. Even a perfunctory review of those stipulations reveals that ensuring a more expeditious resolution of

---

[4] *See* Lawrence J. O'Neill, et al, *An Important Letter to Congress from the Judges of the Eastern District of California Regarding Our Caseload Crisis*, (June 19, 2018) http://www.caed.uscourts.gov/caednew/index.cfm/news/important-letter-re-caseload-crisis/. In speaking of district courts in crisis due to unfilled vacancies, it should be noted that the premise underlying defendant's motion for transfer would appear to be flawed. This is so because the Central District of California is in much the same position as the Eastern District when it comes to a lack of judicial resources due to inaction by the other branches of government. Indeed, just a few months after the release of Judge O'Neill's letter warning of the emergency about to befall the Eastern District, Central District of California Chief Judge Virginia Phillips penned a similar letter urging that the Central District's nine vacancies (out of 27 allotted positions) be filled immediately and warning of the "grave danger" those vacancies "pose to our Court's ability to serve justice in a timely and judicious manner." Crisis of Unprecedented Magnitude: Chief Judge Urges Senate to Fill Vacancies in Central District of Calif. (November 1, 2019) https://www.law.com/therecorder/2019/11/01/crisis-of-unprecedented-magnitude-chief-judge-urges-senate-to-fill-central-district-vacancies/. None of the nominees for the Central District vacancies have been confirmed since Chief Judge Phillips' letter.

this action was not a purpose of changing venue.[5]  Instead, the *Avalos* and *Hagman* parties agreed that "the Eastern District would be the more convenient and thus proper venue for this action" because the five actions that make up this consolidated action "significantly overlap," Amazon "ha[s] substantial operations in the Eastern District," and "[l]itigating th[e] [*Avalos* and *Hagman*] action[s] in a difference district court than *Trevino*, *Palma*, [and] *Ward* . . . w[ould] result in duplicative efforts and a waste of judicial and party resources." *Avalos*, 1:18-cv-00567-DAD-BAM, (Doc. No. 23 at 4); *Hagman*, 1:18-cv-01176-DAD-BAM, (Doc. No. 26 at 4).  Notably absent from these stipulations is *any* indication that the parties in *Avalos* or *Hagman* stipulated to transferring those actions to the Eastern District for a more prompt disposition than might have been obtained in the Central District.  Contrary to Amazon's assertion then, Chief Judge O'Neill's impending move to senior status does not in any way frustrate the purpose of why the *Avalos* and *Hagman* actions were transferred to this district, given that the actions that make up this consolidated action continue to overlap, Amazon continues to have substantial operations in this district, and transferring *Avalos* and *Hagman* to this district did indeed prevent a duplication of efforts and judicial and party resources.

Third, while Amazon states that "courts regularly consider docket congestion when deciding a motion to transfer venue" (Doc. No. 72 at 15), it offers no authority for the proposition that court congestion *alone* provides an adequate reason to transfer an action to another district. Indeed, the parentheticals Amazon provides for the cases it relies upon in support of its position confirm that court congestion is but one factor a court may consider when deciding to transfer. (*See, e.g.*, Doc No. 72 at 15) (citing to *Parker v. FedEx Nat., Inc.*, No. 1:10-cv-1357-LJO-MJS, 2010 WL 5113809, at *1 (E.D. Cal. Dec. 9, 2010), *report and recommendation adopted sub nom. Parker v. FedEx Nat'l LTL, Inc.*, No. 1:10-cv-1357-LJO-MJS (PC), 2011 WL 13323369 (E.D. Cal. Jan. 18, 2011) (noting that that court transferred the case *in part* because of this district's heavy caseload).  Here, however, because the court has concluded that the *Sherman* action does not overlap with this action, Amazon's motion to transfer now rests solely on the fact that this

---

[5] The court is skeptical that a desire to obtain a more prompt disposition may serve as the basis for a motion or stipulation to transfer.

9

district is overburdened. This district's backlog is by itself an insufficient basis upon which to grant a motion to transfer.

Finally, the court briefly addresses the § 1404(a) factors. Amazon argues that the Central District is more convenient for the parties and witnesses for various reasons, but its arguments in this regard rely on a finding that the *Sherman* action overlaps with this action. (*See* Doc. No. 72 at 18.) Because there is no overlap, Amazon's arguments with respect to the § 1404(a) factors are unpersuasive.

## CONCLUSION

For the reasons set forth above, the motion to transfer (Doc. No. 72) is denied.

IT IS SO ORDERED.

Dated: **December 11, 2019**

_____
UNITED STATES DISTRICT JUDGE