MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800 | Facsimile:  949.451.4220

JASON C. SCHWARTZ (admitted *pro hac vice*)
  jschwartz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.955.8500 | Facsimile:  202.467.0539

KARL G. NELSON (admitted *pro hac vice*)
  knelson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201-6912
Telephone:  214.698.3100 | Facsimile:  214.571.2900

KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
HELEN AVUNJIAN, SBN 300284
  havunjian@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000 | Facsimile:  213.229.7520

Attorneys for Defendants GOLDEN STATE FC LLC
(now known as AMAZON.COM SERVICES LLC),
AMAZON.COM, INC. and AMAZON FULFILLMENT
SERVICES, INC. (now known as AMAZON.COM
SERVICES LLC)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| JUAN TREVINO, CHRISTOPHER WARD, LINDA QUINTEROS, ROMEO PALMA, BRITTANY HAGMAN, ALBERTO GIANINI, and JUAN C. AVALOS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN STATE FC LLC, a Delaware Limited Liability Company; AMAZON.COM INC., a Delaware Corporation, AMAZON FULFILLMENT CENTERS, INC. a Delaware Corporation, and Does 1 through 10, inclusive,<br><br>Defendants. | **LEAD CASE NO. 1:18-cv-00120-DAD (BAM)**<br>Member Case No: 1:18-cv-00121-DAD-BAM<br>Member Case No: 1:18-cv-00567-DAD-BAM<br>Member Case No: 1:18-cv-01176-DAD-BAM<br>Member Case No: 1:17-cv-01300-DAD-BAM<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT DR. BRIAN KRIEGLER**<br><br>**Hearing:**<br>Date:   March 27, 2020<br>Time:   9:00 AM<br>Place:  Courtroom 8<br>Judge:  Honorable Barbara A. McAuliffe |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Dr. Kriegler's Opinions Do Not Assist the Court in Determining Whether Plaintiffs' Claims Are Susceptible to Classwide Resolution ........................................ 2

    B. Dr. Kriegler's Opinions Are Purely Speculative ............................................................ 5

    C. Dr. Kriegler Does Not Employ Any Ascertainable Methodology ................................ 6

    D. Nothing in Dr. Kriegler's Supplemental Declarations Renders His Opinions Relevant and Reliable .................................................................................................... 8

III. CONCLUSION ................................................................................................................... 9

## I.     INTRODUCTION

Although Plaintiffs concede that this Court must evaluate the relevance and reliability of Dr. Kriegler's opinions under the standards laid out in *Daubert*, Dkt. 133 at 2, 3, 7, their arguments evince a fundamental misunderstanding of what those standards of reliability and relevance require at the class-certification stage.  In Plaintiffs' telling, expert testimony based on unsupported assumptions and reaching speculative conclusions passes muster if it arguably "assists the Court in its class certification determination." Dkt. 133 at 3–4.  In fact, Plaintiffs make no serious effort to defend Dr. Kriegler's vague references to "various" models that can "potentially" be used in the future to calculate damages.  Instead, Plaintiffs just repeat Dr. Kriegler's qualifications and suggest his testimony must be sufficient because it is his "customary practice." Dkt. 133 at 1, 6; Dkt. 133-1 at 2.

Plaintiffs also emphasize the supposed narrowness of Dr. Kriegler's testimony, and assert that he was only opining on "damages" issues.  But even on those issues, Dr. Kriegler provides no testimony that satisfies *Daubert*.  As Plaintiffs admit, at the class certification stage there must be a "damages model . . . that establish[es] that damages are capable of measurement on a class wide basis." Dkt. 133 at 6.  Yet Dr. Kriegler's testimony establishes nothing of the sort, as it simply assumes all of the difficult issues in this case away, and having done that concludes that what remains is an exercise in mere bean-counting.  That evidence-free approach is the height of arbitrariness, and the antithesis of a reliable application of sound statistical methods. *Cf. Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (rejecting the proposition that "at the class certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be," as it "would reduce Rule 23(b)(3)'s predominance requirement to a nullity").

Because Plaintiffs have not demonstrated that Dr. Kriegler's testimony comports with *Daubert*, this Court should disregard his opinions in assessing the propriety of class certification.

## II.     ARGUMENT

### A.     Dr. Kriegler's Opinions Do Not Assist the Court in Determining Whether Plaintiffs' Claims Are Susceptible to Classwide Resolution

As Plaintiffs agree, to be relevant and admissible under *Daubert*, expert testimony "must assist the trier of fact to . . . determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). The "fact in issue" here—at class certification—is whether Plaintiffs' claims are susceptible to classwide resolution or whether, instead, individual issues predominate. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). Plaintiffs spend the majority of their response restating Dr. Kriegler's various theories for how classwide damages might be calculated *if* individualized issues are assumed away and *if* the right data were ultimately to be available. Dkt. 133 at 3–4, 7, 9. But they fail to demonstrate—or even address—how Dr. Kriegler's opinions could help the Court determine whether and to what extent the merits of Plaintiffs' claims are actually capable of resolution on a classwide basis.

To start, Plaintiffs concede that Dr. Kriegler ignores the existence and impact of individualized behavior or choices (and fails to conduct any form of analysis assessing the degree to which the data reflects behavior that is homogenous or varies across employees), but dismiss this deficiency as nothing more than a "red herring." Dkt. 133 at 4. To the contrary, whether and to what extent an opinion assists this Court in determining whether "there was a common pattern and practice that could affect the class as a whole"—rather than a series of individualized experiences or policies—is a ***critical*** issue in assessing the helpfulness of an expert's testimony offered in support of a motion for class certification. *See Ellis*, 657 F.3d at 983; *Comcast*, 569 U.S. at 34–35. But as Dr. Kriegler admitted at his deposition, he made no attempt whatsoever to address "whether and to what extent the merits of Plaintiffs' claims are susceptible to being resolved collectively." Dkt 125-1, Ex. A, Kriegler Tr. 49:25–50:8 (emphasis added); *see also id*. at 50:16–21 (did not assess or quantify the degree to which the data . . . is homogenous or varies widely from individual to individual"); *id*. at 51:13–21 (conducted no inquiry into whether any complained-of security "policy or practice was[] uniformly applied in every location"). Rather, Dr. Kriegler readily admits the calculations that he theorizes could potentially be performed in the future (subject to the availability of presumed data),

are premised on the Court certifying the classes as proposed and accepting that Plaintiffs' claims can be tried collectively. *E.g.*, Dkt. 107-1 ¶ 40; Dkt. 125-1, Ex. A, Kriegler Tr. 21:19–23:5.

Plaintiffs attempt to excuse this glaring omission in Dr. Kriegler's analysis on two grounds: First, Plaintiffs assert that counsel instructed Dr. Kriegler to simply assume the absence of any individual differences. Dkt. 133 at 4 (arguing that Dr. Kriegler "was not tasked with . . . examining what putative class members did at specific points of time"). But an expert may not just blindly assume away the existence of critical issues that would fundamentally impact his methodology. *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 544–45 (C.D. Cal. 2012) (discussing an expert's duty to "independently evaluate[]" the evidence provided him). Second, Plaintiffs contend that any inquiries into individualized patterns and practices are "merits issue[s]" that are "outside the scope of Dr. Kriegler's assignment" and irrelevant at the class certification stage. Dkt. 133 at 4. Yet the Supreme Court rejected this very argument in *Comcast*. *See* 569 U.S. at 34 ("By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry.").

Even on the issue of damages—which Plaintiffs tout as the "helpful" aspect of his testimony—Dr. Kriegler's opinions are deficient. As an initial matter, Plaintiffs' repeated assertions that Dr. Kriegler provides only a "damages methodology," *see* Dkt. 133 at 5, 10, are at odds with his own testimony that he does not "propos[e] a damages model," Dkt 125-1, Ex. A, Kriegler Tr. 100:3–14, nor "advocat[e]" or "recommend" any particular approach to calculating damages, *id*. at 77:11–2. More to the point, though, Dr. Kriegler's general conclusions that some hypothetical amount of damages "can be analyzed" or "can be calculated" do not meet the *Daubert* standard. Dkt. 133-1 ¶¶ 21, 33, 34. Simply offering "a" method (or "various," "possible" methods) does not suffice, because it is emphatically not the case that "at the class-certification stage, *any* method of measurement is acceptable so long as it can be applied classwide." *Comcast*, 569 U.S. at 35–36 (emphasis added). In stressing the importance of a damages model fitted to the actual liability issues, the Supreme Court in *Comcast* explained, "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Id*. at 38 (quoting Federal

Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)). The Court then explicitly rejected the validity of a "methodology that identifies damages that are not the result of the wrong." *Id*. at 37.

Dr. Kriegler's proposed "frameworks" in no way differentiate between damages that are "the result of [a] wrong" and those that are not. *See, e.g.*, Dkt 125-1, Ex. A, Kriegler Tr. 103:5–25 (does not "know of any" way and does not "have an opinion" about how to distinguish between employees who were allegedly kept under Amazon's "control" during their meal period and employees who simply chose to eat inside); *id*. at 93:3–7 (does not know whether "what employees may do between punching in early and the start of their scheduled shift may vary from location to location or from person to person"). A damages model (or "framework" or "approach") such as this, ill-fitted to a specific alleged wrong, is neither helpful nor relevant to the issues before this Court.

For the same reason, despite Plaintiffs' unsupported footnote to the contrary, Dkt. 133 at 5 n.1, the fact that Dr. Kriegler's opinion fails entirely to account for any distinction between injured and non-injured putative class members is not only an "appropriate" topic of discussion—it is a necessary one. If "no class may be certified that contains members lacking Article III standing," *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (citation omitted), then a proposed damages model that fails to account for the presence of uninjured parties does not "assist the trier of fact" in evaluating the propriety of class certification, *Daubert*, 509 U.S. at 591. As Chief Justice Roberts has explained, "if there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring). Accordingly, a damages model that fails even to acknowledge, much less account for, differences between injured and uninjured employees is not helpful and cannot support class certification.

In sum, Plaintiffs have provided no support for their insistence that Dr. Kriegler's testimony adds value to the class-certification determination. Because they entirely ignore the existence of individualized differences across class members, Dr. Kriegler's opinions do not actually assist the Court on the issues central to class certification and his testimony should be disregarded. *See Lust By*

*& Through Lust v. Merrell Dow Pharm.*, Inc., 89 F.3d 594, 598 (9th Cir. 1996) (explaining that the "proponent of the expert" carries "the burden of proving admissibility" of the expert testimony).

**B.     Dr. Kriegler's Opinions Are Purely Speculative**

As explained in Amazon's initial motion, opinions based on "subjective belief or unsupported speculation" are not reliable and cannot be considered in support of class certification. *Daubert*, 509 U.S. at 589–90; *see also Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (*Daubert* standards appropriate at class certification). Dr. Kriegler's opinion, as Defendants originally noted, is speculative both because he merely offers assurances that it will be possible to construct an appropriate damages model in the future, Dkt. 125 at 13–14, *and* because he presumes without foundation that as-of-yet unreviewed data would support Plaintiffs' theories in full, *id*. at 11, 16. Plaintiffs insist that "there is nothing speculative about Dr. Kriegler's testimony" because it is "based in part" on a "10% random sampling of Defendants' timekeeping and payroll records." Dkt. 133 at 8. But that sampling is the only input to his hypothetical damages "methods" that Dr. Kriegler actually reviewed. Dkt. 107-1 at 14–15. His opinions are unreliable because they are dependent upon *other* unreviewed data that he only speculates contains additional pieces of the puzzle that would support Plaintiffs' theories in full.[1]

In responding to the charge that Dr. Kriegler's arguments are conjectural, Plaintiffs and Dr. Kriegler make much of the fact that Dr. Michael P. Ward's and Ms. Elizabeth Arnold's reports confirm that "Historical Data Sources"—including turnstile data and surveillance footage—"exist." Dkt. 133 at 3, 4; Dkt. 133-1 ¶¶ 11, 12, 15. Both Plaintiffs and Dr. Kriegler ignore, however, that Defendants' experts also identified the significant limitations of these data sources. Dr. Ward explained, for example, that "there are other factors, **not reflected in the data**, that impact the time that individuals take to first enter the facility before clocking in for work." Dkt. 123, Ex. A at 3

---

[1] Plaintiffs also mischaracterize or misunderstand the problem with Dr. Kriegler's failure to independently verify the data underlying his opinion. Dkt. 133 at 9. The issue does not, as Plaintiffs suppose, derive from Dr. Kriegler's analysis of a sampling rather than a comprehensive set of records, *see* Dkt. 133 at 9–10, nor from the size of the sample reviewed, but rather from Dr. Kriegler's blind reliance on Plaintiffs' counsel's representations of what the relevant data would show and his failure to conduct an independent evaluation of the data to determine its relevance to the claims at issue. *See Cholakyan*, 281 F.R.D. at 544–45.

(emphasis added).  Dr. Ward also noted that some facilities "did not have turnstile data," for others "only entry turnstile data was available," and for still others "only a fraction of days had a record of turnstile data."  *Id*. at 2, 3.  And Ms. Arnold noted various limitations on the historical video footage that exists across the class period, including that archived security video footage does not exist at all locations for the full class period and that, even where it exists, such archived video is in a format that significantly limits any analysis that might be conducted.  Dkt. 123, Ex. B at 17, 23, 30.

In any event, the mere *existence* of certain data is not enough to support a reliable statistical analysis.  What matters is the actual scope and content of the data—whether it can *in fact* be used to establish damages across the class.  *See Comcast*, 569 U.S. at 35–36.  Dr. Kriegler's opinions do not answer that question because they are based on speculation that (a) the data he has not reviewed will support Plaintiffs' theories and (b) the data he has reviewed applies equally to all members of the class without regard to their individual conduct or experience.  *See* Dkt. 125 at 12–14.

**C.    Dr. Kriegler Does Not Employ Any Ascertainable Methodology**

Dr. Kriegler's opinions are also unreliable because they are based largely on nothing more than his own say-so.  A party proffering expert testimony "must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable . . . method and followed it faithfully."  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 n.11 (9th Cir. 1995).  And "[f]or scientific evidence to be admissible, the proponent must show the assertion is 'derived by [a] scientific method.'"  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Daubert*, 509 U.S. at 590).

Plaintiffs' naked assertion that Dr. Kriegler's opinions are based on his "experience" do not establish their reliability.  *See* Dkt. 133 at 8.  Indeed, Dr. Kriegler's own deposition testimony belies Plaintiffs' assertion.  For instance, Dr. Kriegler suggests relying on a 10th percentile "summary statistic" because it "just seems unlikely" such a percentile would "overstat[e] the . . . amount of time that is allegedly under the control of the employer."  Dkt 125-1, Ex. A, Kriegler Tr. 164:2–7, 18–19.  When pressed as to the underlying methodology for this decision, Dr. Kriegler stated that it was dictated by "common sense."  *Id*. at 164:12–19.  In none of these instances did he rely on his "experience" as a statistician, which is the type of expert he purports to be.

More importantly, though, an expert who intends to offer statistical analyses cannot rely solely on "experience." *See Thomas v. Newton Int'l Enters*., 42 F.3d 1266, 1270 (9th Cir. 1994) (noting that although "non-scientific testimony need only be linked to some body of specialized knowledge or skill," a "scientific conclusion must be linked in some fashion to the scientific method"). Indeed, in *Hangarter v. Provident Life and Acc. Ins., Co.*, 373 F.3d 998 (9th Cir. 2004), the case Plaintiffs' cite in defense of Dr. Kriegler's opinions (Dkt. 133 at 8), the challenged expert was a former insurance representative who testified to industry norms and standards based *solely* on his personal experience, rather than offering any damages model. The Ninth Circuit expressly distinguished experiential opinions like the one in *Hangarter* from those based in scientific methods, as would apply here to any damages model: "Given that, unlike scientific or technical testimony, the reliability of [the expert's] testimony was not contingent upon a particular methodology or technical framework, the district court did not abuse its discretion in finding [the] testimony reliable based on his knowledge and experience." *Hangarter*, 373 F.3d at 1018. Dr. Kriegler, in contrast, claims to be an expert in the science of statistics. Dkt. 107-1 ¶¶ 8–9. Accordingly, his methodology must be grounded in that science; he may not espouse just any opinion, regardless of methodology, that happens to support his clients' claims under the guise of "experience." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Finally, that other testimony by Dr. Kriegler has been admitted in other cases, for other reasons, by other courts, (*see* Dkt. 133-1 at ¶¶ 26–31), does not make the opinions he offers here helpful or reliable. Rather, the court's decision to exclude his testimony in *Hamilton v. Wal-Mart Stores, Inc.*, 2019 WL 1949457 (C.D. Cal. Mar. 4, 2019), is instructive because the opinions Dr. Kriegler offered in that case suffered from the same defects as those he proposes to offer here. *See* Dkt. 125 at 11–13. In *Hamilton*, the court found that Dr. Kriegler's report fell short because "he merely listed all possible methods for calculating damages . . . in the abstract." *Id*. at *6. Here, the same shortcomings should result in this Court disregarding Dr. Kriegler's testimony as unreliable for merely listing a "variety of things that can be done with the data." Dkt 125-1, Ex. A, Kriegler Tr.

76:19–25. Plaintiffs' suggestion that *Hamilton* addressed Dr. Kriegler's proposed testimony at a later stage in that litigation than the class certification proceedings here is a distinction without a difference. At any stage of litigation, an expert's opinion is only reliable to the extent that it is "'properly grounded, well-reasoned, and not speculative.'" *Cal. Found. for Indep. Living Ctrs. v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1047 (E.D. Cal. 2015) (quoting *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002)).

### D. Nothing in Dr. Kriegler's Supplemental Declarations Renders His Opinions Relevant and Reliable

Dr. Kriegler has offered new declarations accompanying Plaintiffs' reply brief in support of their class certification motion and in response to Amazon's motion to exclude his testimony, repeating many of Plaintiffs' arguments and urging that his initial expert report should be accepted. Dkt. 133-1. As a procedural matter, the Court should disregard these declarations as they are essentially an (improper) extension of the legal arguments in Plaintiffs' briefs. For example, Dr. Kriegler discusses (and attaches to his declaration) four legal opinions in which courts have found his testimony in other settings acceptable, and attempts to draw analogies between these cases and his testimony in the present case. *Id.* at ¶¶ 26–30. He also attempts to expand on Plaintiffs' distinctions between his opinions in this case and those offered in *Hamilton* based on the stage of litigation. Such argument and "[l]egal conclusions, however, are not the proper subject of his [expert] testimony," and should be disregarded in full. *Avila v. California*, No. 115CV00996LJOEPG, 2018 WL 836440, at *12 (E.D. Cal. Feb. 13, 2018); *see also CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1234 (E.D. Cal. 2005) (discussing a court's refusal to consider an expert's report when a portion of the report "read[] more like a legal brief than an expert opinion").[2]

To the extent that these declarations *could* properly be considered additional expert testimony, they change nothing. That Dr. Kriegler's "customary practice" involves blanket assumptions of

---

[2] Ironically, Dr. Kriegler in the same few pages strenuously objects to providing legal testimony, contending that recommending a damages model would require that he "form a specific legal opinion" and that "advocat[ing] for a specific set of numbers . . . could be perceived as biased." Dkt. 133-1 ¶ 20.

liability and that courts have at times, under different circumstances, admitted his testimony has no bearing on the relevance of his testimony to the class certification considerations the Court faces in this case. Dkt. 133-1 ¶¶ 6, 26–30. Unlike the Ward and Arnold reports, Dr. Kriegler's declarations do not engage with the question of whether damages models can properly be determined on a classwide basis, given the variance in individual behavior, choice, habit, or facility environment, policy or practice (or with any other question central to this case). What Dr. Kriegler's testimony boils down to, at best, is that data exists and "damages" of some sort can be calculated. But this opinion—divorced from any analysis as to whether Plaintiffs' claims are susceptible to classwide resolution and absent any evaluation of the actual data itself—is neither helpful nor reliable under *Daubert* at the class certification stage and should be disregarded.

### III.   CONCLUSION

For the foregoing reasons, Amazon requests that the testimony and opinions of Dr. Kriegler be excluded in their entirety.

Dated: February 14, 2020

JASON C. SCHWARTZ
MICHELE L. MARYOTT
KARL G. NELSON
KATHERINE V.A. SMITH
HELEN AVUNJIAN
GIBSON, DUNN & CRUTCHER LLP


By:  /s/ Katherine V.A. Smith
          Katherine V.A. Smith

Attorneys for Defendants
GOLDEN STATE FC LLC (now known as AMAZON.COM SERVICES LLC), AMAZON.COM, INC. and AMAZON FULFILLMENT SERVICES, INC. (now known as AMAZON.COM SERVICES LLC)