

PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone:   (818) 883-4900
Email:     peter@dion-kindemlaw.com

Attorneys for Plaintiffs Juan Trevino, *et al.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Juan Trevino, Christopher Ward, Linda Quinteros, Romeo Palma, Brittany Hagman, Alberto Gianini, and Juan C. Avalos, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>GOLDEN STATE FC LLC, a Delaware Limited Liability Company; AMAZON.COM INC., a Delaware Corporation, AMAZON FULFILLMENT SERVICES, INC. a Delaware Corporation, and Does 1 through 10, inclusive,<br><br>     Defendants. | **LEAD CASE NO. 1:18-cv-00120-DAD-BAM**<br>Member Case No: 1:18-cv-00121-DAD-BAM<br>Member Case No: 1:18-cv-00567-DAD-BAM<br>Member Case No: 1:18-cv-01176-DAD-BAM<br>Member Case No: 1:17-cv-01300-DAD-BAM<br>**CLASS ACTION**<br><br>**Declaration of Peter R. Dion-Kindem in Support of Plaintiffs' Supplemental Brief Regarding Impact of Proposed MDL Settlement on Plaintiffs' Motion for Class Certification** |

I, Peter R. Dion-Kindem, declare:

1.    I am an attorney licensed to practice in California. I am co-counsel for Plaintiffs in this action. I have personal knowledge of the following facts.

2.    Attached hereto as Exhibit 1 are true and correct conformed copies of Plaintiffs' Motion to Intervene and supporting papers filed in the Kentucky MDL proceedings.

3.    Attached as Exhibit 2 to is a true and correct copy of an Order from the Court in the MDL proceedings ordering the parties to respond to Plaintiffs' motion to intervene.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: May 22, 2020

_____

Peter R. Dion-Kindem

**Declaration of Peter R. Dion-Kindem in Support of Supplemental Authority**

Exhibit 1

### UNITED STATES DISTRICT COURT
### WESTERN DIVISION OF KENTUCKY
### AT LOUISVILLE

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FOR FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION<br><br>This Document Relates to *Saldana v. Amazon.com, LLC*, Case No. 14-CV-00290-DJH | Master File No. 3:14-MD-2504<br>MDL Docket No. 2504<br>Judge: Hon. David J. Hale<br><br>**NOTICE OF MOTION TO INTERVENE FOR THE PURPOSE OF OPPOSING THE PRELIMINARY APPROVAL AND/OR OTHER RELIEF DEEMED APPROPRIATE**<br><br>[Filed concurrently with the Memorandum of Points and Authorities; Declaration of Peter Dion-Kindem; Declaration of Brian Kriegler; [Proposed] Order lodged]<br><br>Date:<br>Time:<br>Dept: 106<br>Judge: Hon. David J. Hale |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on a date as soon as practical, in Courtroom 106 of the above-captioned court, located at 241 East Main Street, Bowling Green, KY 42101, before the Honorable David J. Hale, proposed Plaintiffs-in-Intervention Juan Trevino, Christopher Ward, Linda Quinteros, Romeo Palma, Alberto Gianini, and Juan C. Avalos (collectively, "*Trevino* Plaintiffs") will and hereby do move the Court for an Order allowing them to intervene in *In re: Amazon.com, Inc., Fulfillment Center for Fair Labor Standards Act (FLSA) and Wage and Hour Litigation* for the purpose of opposing the preliminary approval motion filed by Plaintiff Robertson and/or obtaining any other relief deemed appropriate pursuant to Federal Rule of Civil Procedure 24(a) and Federal Rule of Civil Procedure 24(b).

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Peter R. Dion-Kindem and Dr. Brian

Kriegler, the Proposed Order, the pleadings and records on file in this action, and upon any other

matters that may be presented to this Court at this hearing.  Plaintiffs request a telephonic

hearing.

 Dated: May 21, 2020

/s Peter R. Dion-Kindem
Peter R. Dion-Kindem (SBN 95267)
The Dion-Kindem Law Firm
Peter R. Dion-Kindem, P. C.
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone:     (818) 883-4900
Email: peter@dion-kindemlaw.com

Lonnie C. Blanchard, III (SBN 93530)
The Blanchard Law Group, APC
5211 East Washington Blvd. # 2262
Commerce, CA 90040
Telephone:     (213) 599-8255
Fax:               (213) 402-3949
Email: lonnieblanchard@gmail.com

DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian
Alvin B. Lindsay
535 N. Brand Blvd., Suite 705
Glendale, CA 91203
Telephone:     (818) 230-8380
Fax:               (818) 230-0308
Email: david@yeremianlaw.com
alvin@yeremianlaw.com

JAMES HAWKINS APLC
James Hawkins
Isandra Fernandez
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone:     (949) 387-7200
Fax:               (949) 387-6676
Email: james@jameshawkinsaplc.com
isandra@jameshawkinsaplc.com

HAFFNER LAW PC
Joshua H. Haffner
Graham G. Lambert
445 South Figueroa Street, Suite 2325
Los Angeles, CA 90071
Telephone:     (213) 514-5681
Fax:               (213) 514-5682
Email: jhh@haffnerlawyers.com
gl@haffnerlawyers.com


THE WESTRICK LAW FIRM, P.C.
Shawn C. Westrick
11075 Santa Monica Boulevard, Suite 125
Los Angeles, CA 90025
Telephone:     (310) 746-5303
Fax:               (310) 943-3373
Email: swestrick@westricklawfirm.com


Attorneys for proposed Plaintiffs-in-Intervention

# UNITED STATES DISTRICT COURT
# WESTERN DIVISION OF KENTUCKY
# AT LOUISVILLE

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FOR FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION<br><br><br>This Document Relates to *Saldana v. Amazon.com, LLC*, Case No. 14-CV-00290-DJH | Master File No. 3:14-MD-2504<br>MDL Docket No. 2504<br>Judge: Hon. David J. Hale<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE PURPOSE OF OPPOSING THE PRELIMINARY APPROVAL AND/OR OTHER RELIEF DEEMED APPROPRIATE**<br><br>[Filed concurrently with the Notice of Motion; Declaration of Peter Dion-Kindem; Declaration of Brian Kriegler; [Proposed] Order lodged]<br><br>Date:<br>Time:<br>Dept: 106<br>Judge: Hon. David J. Hale |

## Table of Contents

I.    INTRODUCTION ........................................................................................... 1

II.   RELEVANT FACTS AND PROCEDURAL HISTORY ...................................... 3

    A.    The Consolidated Trevino Action.......................................................... 3

    B.    Amazon's Previous Unsuccessful Attempts to Forum Shop and Delay *Trevino* ...................................................................................... 3

    C.    Class Certification Is Pending in *Trevino*. .......................................... 4

    D.    The Proposed Settlement Specifically Misapplies the California Supreme Court's decisions in *Frelekin* and *Troester*............................. 6

    E.    The Reverse-Auctioned Settlement of the Stagnant MDL Action is Legally Untenable and Resulted from Patently Obvious Bad Faith Tactics. ......... 7

        1.    The Preliminary Approval Motion is unsupported by any evidence of the value of the claims released by the putative class. ........................... 8

        2.    The value of the proposed settlement is orders of magnitude higher than the value the MDL parties describe, suggesting fraud and collusion.......................................................................................... 9

        3.    The settlement amount is tremendously undervalued given the changes in California law...................................................... 12

        4.    There is no evidence that any discovery occurred during the interim when the MDL Action was on appeal. ........................... 16

        5.    The Settlement was not conducted at arms' length. ................ 17

        6.    The Settlement is not in the public interest............................. 17

III.  PLAINTIFFS' MOTION TO INTERVENE SHOULD BE GRANTED. ................. 18

    A.    The *Trevino* Plaintiffs' Motion Is Timely.......................................... 18

    B.    The *Trevino* Plaintiffs Have a Sufficient Interest in the Subject Matter of the Action........................................................................................ 19

    C.    The Disposition of this Action Will Impair the *Trevino* Plaintiffs' Ability to Protect Their Interests and the Interests of the Putative Class........................ 20

    D.    The *Trevino* Plaintiffs' Interest May Not Be Adequately Represented by the Parties to the Action..................................................................... 20

    E.    Permissive Intervention Is Warranted.................................................. 21

IV.  THIS COURT HAS MANY OPTIONS TO UTILIZE TO PROTECT THE CLASS MEMBERS. .............. 22

    A.    The Court Has Inherent Power to Stay This Matter. ............................ 22

    B.    There is No Risk of Damage From a Stay. ........................................... 23

    C.    Plaintiffs in the *Trevino* Consolidated Cases Would Suffer Without a Stay. ....... 23

    D.    A Stay Promotes Efficiency.................................................................. 23

V.    CONCLUSION.................................................................................................................. 24

## Cases

*Blyden v. Mancusi*, 186 F.3d 252 .................................................................................... 7

*Cuyahoga Valley Ry. Co. v. Tracy* (6th Cir. 1993) 6 F.3d 389 .................................... 18

*DeJonghe v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 209950 ................................ 22

*Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038 .......................................................... passim

*Frlekin v. Apple Inc.* (N.D. Cal., Nov. 7, 2015, No. C 13-03451 WHA) 2015 WL 6851424 ...... 12

*Frlekin v. Apple, Inc.* (9th Cir. 2017) 870 F.3d 867 .................................................. 12

*Garcia v. Hollister Co.* (C.D. Cal., Aug. 2, 2016, No. CV 16-154-JGB (AGRX)) 2016 WL 10988791 .......................................................................................... 23

*In re Lease Oil Antitrust Litigation* (5th Cir. 2009) 570 F.3d 244 ............................... 18

*Integrity Staffing Solutions, Inc. v. Busk* (2014) 574 U.S. 27 ..................................... 14

*Leyva v. Certified Grocers of California, Ltd.* (9th Cir. 1979) 593 F.2d 857 ....................... 22

*Macy v. GC Servs. L.P.*, 2019 U.S. Dist. LEXIS 210632 ................................... 8, 13, 17

*Michael v. Ghee* (N.D. Ohio 2004) 325 F.Supp.2d 829 ........................................ 23

*Michigan State AFL-CIO v. Miller* (6th Cir. 1997) 103 F.3d 1240 ................... 18, 19, 20, 21

*Nuesse v. Camp* (D.C. Cir. 1967) 385 F.2d 694 ............................................... 20

*Olden v. Gardner* (6th Cir. 2008) 294 Fed.Appx. 210 ......................................... 8

*Panavision Imaging, LLC v. OmniVision Technologies, Inc.* (C.D. Cal., Apr. 19, 2010, No. CV09-1577 DMG (CTX)) 2010 WL 11507881 ..................................................... 23

*Searcy v. Palmer*, 2018 U.S. Dist. LEXIS 167516 ............................................. 22

*Trbovich v. United Mine Workers of America* (1972) 404 U.S. 528 ............................ 21

*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829 ......................................... 6, 12

*U.S. v. City of Detroit* (6th Cir. 2013) 712 F.3d 925 ...................................... 19

*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338 ......................................... 1

## Other Authorities

John C. Coffee, Jr., "Class Wars: The Dilemma of the Mass Tort Class Action," 95 *Colum. L.Rev.* 1343 ............................................................................................ 7

Marcel Kahan & Linda Silberman, "The Inadequate Search for `Adequacy' in Class Actions: A *Critique of Epstein v. MCA, Inc.*," 73 N.Y.U. L.Rev. 765 .................................... 7

Samuel Issacharoff, "Governance and Legitimacy in the Law of Class Actions," 1999 Sup. *Ct. Rev.* 337, 388 ........................................................................................ 7

## Rules

Fed. R. Civ. P. 23(e)(2)..................................................................................................... 8

Fed. R. Civ. P. 24 ................................................................................................ 18, 19, 20, 21

## I.   INTRODUCTION

The Plaintiffs in five consolidated actions under the action entitled *Juan Trevino et al. v. Golden State FC LLC et al.* (ED Cal Case No. 1:18-cv-00120-DAD-BAM) ("*Trevino*") seek to intervene in this matter to oppose the Motion for Preliminary Approval filed by Plaintiff Robertson in *In re: Amazon.com Inc., Fulfillment Center for Fair Labor Standards Act (FLSA) and Wage And Hour Litigation* (hereinafter the "MDL Action") (ECF No. 265, *et seq.*). The *Trevino* Plaintiffs alternatively request the Court to stay these proceedings pending the hearing on the Motion for Class Certification in *Trevino*.

The *Trevino* action has progressed through years of hotly contested litigation towards a crucial hearing on Plaintiffs' Motion for Class Certification, which the Eastern District of California continued to May 8, 2020. This action, on the other hand, has been stayed since this Court granted Defendants' motion for summary judgment against Robertson's individual claims in June of 2017, and Robertson appealed such judgment to the Sixth Circuit.

Rather than facing likely class certification of the claims by the *Trevino* Plaintiffs in the Eastern District of California, including claims for failure to pay for all compensable hours worked during security screening under recent binding California Supreme Court precedent, Defendants hastily secured a settlement with Robertson via a patently insufficient reverse auction without conducting a mediation, without reasonably valuing the claims, and without accounting for the impact of the California Supreme Court's decision in *Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038 [258 Cal.Rptr.3d 392, 457 P.3d 526], *reh'g denied (May 13, 2020)* ("*Frlekin*"). Also, despite the differences between several of the claims in *Trevino* and the *Robertson* action, the proposed Settlement encompasses all claims asserted in the Consolidated Complaint in *Trevino*.

Rule 23's requirements for class certification are not dispensed with under the approval process and must be applied rigorously. (*See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 350–351 [131 S.Ct. 2541, 2551, 180 L.Ed.2d 374].) Even conditional class certification cannot be realistically and reasonably assessed or satisfied under the factual and

legal background underlying the proposed Settlement. The most efficient way for the Court and parties to assess the reasonableness of the present Settlement, which must hinge on surviving rigorous scrutiny under Rule 23, is to defer or otherwise stay any ruling on the Motion for Preliminary Approval in these proceedings pending the result of the hearing on Plaintiffs' Motion for Class Certification in *Trevino*.

Counsel for the same Amazon Defendants in *Trevino* gave notice of this Settlement on April 30, 2020 and requested the Court vacate the May 8, 2020 hearing in light of it. The *Trevino* Court then vacated the hearing and ordered Plaintiffs to file briefing by May 22, 2020 addressing the impact of the MDL Settlement on the proposed Classes of Amazon's California employees in *Trevino*. The *Trevino* Plaintiffs will inform the *Trevino* Court of their present motion to intervene in the MDL proceedings, including their intent to request a stay pending the *Trevino* Court's ruling on Class Certification. It is therefore anticipated that any stay of these proceedings would not be for more than a couple of months.

The *Trevino* Plaintiffs satisfy the requirements for both mandatory and permissive intervention. This Motion is timely as they are promptly seeking relief upon learning this action was hastily settled on the eve of the *Trevino* Motion for Class Certification hearing.

The *Trevino* Plaintiffs also have a substantial interest in the MDL Action as the two cases have some overlapping claims and the MDL Settlement has been explicitly drafted to release the *Trevino* claims. By attempting to proceed to preliminary approval without a thorough evaluation of the settlement terms and without a realistic assessment of the strengths and weaknesses of the parties and their contentions, Robertson and Defendants are requesting the Court to approve an unreasonably undervalued and reverse-auctioned Settlement which Amazon expedited to avoid facing an adverse class certification ruling.

The *Trevino* Plaintiffs therefore seek an order allowing them to intervene in this Action to oppose the Motion for Preliminary Approval and staying these proceedings or otherwise deferring hearing and ruling on the Motion for Preliminary Approval pending the outcome of the Motion for Class Certification hearing in *Trevino*.

---

**Memorandum of Points and Authorities in Support of Motion to Intervene**

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    The Consolidated Trevino Action

The *Trevino* action pending in the Eastern District of California is a consolidated matter comprising five wage and hour class action lawsuits, the earliest of which was filed on July 12, 2017. (*See* Declaration of Peter Dion-Kindem ("Dion-Kindem Decl."), ¶ 2.) The initial proceedings in all the actions were litigated on Amazon's behalf by Morgan Lewis, who has also been counsel to Amazon in these MDL proceedings. (Dion-Kindem Decl., ¶ 3.)

After initial discovery and depositions and motions on the pleadings were completed in the California actions, the Amazon Defendants substituted Gibson Dunn as new counsel, who proceeded with aggressive litigation tactics designed to make completing discovery and class certification as difficult as possible for the *Trevino* Plaintiffs. (Dion-Kindem Decl., ¶ 4.) When those tactics could no longer delay hearing on the motion for class certification, Amazon tasked Morgan Lewis with settling the remaining MDL claims on a class basis as quickly as possible to avoid an adverse class certification ruling in *Trevino*. (Dion-Kindem Decl., ¶ 5.)

### B.    Amazon's Previous Unsuccessful Attempts to Forum Shop and Delay *Trevino*

Before consolidation in *Trevino*, Defendants' first attempt to forum shop this matter occurred when they attempted to transfer and consolidate the *Trevino* cases with this MDL, even though MDL proceedings were no longer pending in the Western District of Kentucky. (Dion-Kindem Decl., ¶ 6.) This Court had already granted Defendants' Motion for Summary Judgment against Robertson's individual claims in the MDL and the matter was pending appeal to the Sixth Circuit. (Dion-Kindem Decl., ¶ 7.) The Defendants' attempt to forum shop the cases into the MDL was denied by the JPML panel on the basis that the MDL action had already concluded and that the transfer would be inefficient. (Dion-Kindem Decl., ¶ 8.)

Not to be deterred, the Amazon Defendants next sought to stay the *Trevino* matters either in whole or in part based on the pending appeal in the Sixth Circuit. (Dion-Kindem Decl., ¶ 9.) Shortly after the hearing on the Motion to Stay, the *Trevino* Plaintiffs sought to file a consolidated complaint. (Dion-Kindem Decl., ¶ 10.) On June 28, 2019, the Court for the Eastern

---

**Memorandum of Points and Authorities in Support of Motion to Intervene**

District of California denied Defendants' Motion to Stay. (Dion-Kindem Decl., ¶ 11.) Notably, after observing how long the MDL proceedings had been stayed, the Court concluded that: "If the Sixth Circuit reverses the grant of summary judgment…this court also will not gain any efficiencies since the J.P.M.L. has already denied defendants' motion to transfer actions to the Amazon Security Screening MDL." (*Trevino* ECF No. 71, page 12.)

It is also notable that Amazon was attempting to stay only the security screening claims in the consolidated *Trevino* cases. This evidences a recognition that the other claims in *Trevino* that are not based on or do not derive from the claims asserted and remaining in the MDL proceedings will remain independent of any MDL Settlement. Amazon has apparently reneged on this recognition by drafting the proposed MDL Settlement release to encompass all the claims in *Trevino*.

Defendants next attempted to forum shop by moving the *Trevino* cases from the Eastern District to the Central District of California, where a new case against Defendants had been filed. The District Court of the Central District of California denied Defendants' motion. (Dion-Kindem Decl., ¶ 12.)

### C.     Class Certification Is Pending in *Trevino*.

While the MDL trial court proceedings were stayed pending Robertson's appeal, the *Trevino* matter was actively litigated. Following two Court-ordered continuances, the *Trevino* Plaintiffs' motion for class certification, which was filed on November 26, 2019 and extensively briefed, was finally set for a hearing on May 8, 2020. (Dion-Kindem Decl., ¶ 13.)

Realizing that the district court would likely grant certification of Plaintiffs' claim, Amazon and counsel for Robertson rushed through a settlement that purported to resolve Robertson's claims on a class-wide basis to avoid an adverse certification ruling in the Eastern District of California. Amazon then had its Gibson Dunn attorneys in California give notice in *Trevino* of the MDL Settlement negotiated at its behest by its attorneys in the Kentucky MDL Action.

The *Trevino* Court has now vacated the hearing once again and requested the parties to brief the impact of the MDL Settlement on the proposed Classes of California employees in *Trevino*. (Dion-Kindem Decl., ¶ 14.) By doing so, Amazon is placing this Court in a difficult position. As *Frlekin* was only recently decided, the *Trevino* Plaintiffs' motion for class certification hearing represented a critical decision point in California jurisprudence. The Eastern District of California is poised to be one of the first California courts, if not the first, to apply directly controlling California precedent on security screening claims to California class proceedings. The import of the certification ruling is further underscored by the fact that it would apply to hundreds of thousands of Amazon's California employees. This California authority is diametrically opposed to the federal authority.

Amazon fears the result of this analysis and application of California law in *Trevino* and instead requests this Court to dispense with the Rule 23 requirements and misapply recent binding precedent from the California Supreme Court. The Court must rigorously apply the Rule 23 requirements even in the settlement approval context, but the issues that are before it now hinge on analysis and application of ***California*** law, not Kentucky law or federal law. Judicial comity should counsel in favor of deference to the Eastern District of California to determine the application of California law in the certification process, especially on a threshold issue such as compensation for security screenings where California differs from the federal approach.

Amazon is one of the largest California employers and is attempting to force through a blatantly inadequate under-valuation of Robertson's California MDL claims. If Amazon's underhanded tactics are allowed by the Court, Amazon will have succeeded in valuing security screening claims in California at pennies on the dollar, despite recent California Supreme Court precedent, and the impact on California employees could be far-reaching and debilitating to the rights of California employees. The *Trevino* Plaintiffs therefore ask this Court to defer consideration of the motion for preliminary approval of the MDL Settlement until the Eastern District of California rules on the motion for class certification. This Court should not preliminarily approve Amazon's reverse-auctioned settlement

**D.     The Proposed Settlement Specifically Misapplies the California Supreme Court's decisions in *Frelekin* and *Troester*.**

While these proceedings have been stayed for several years pending Robertson's appeal, the *Trevino* matter has been thoroughly prepared for certification in the Eastern District of California. The *Trevino* Plaintiffs sought substantial discovery in five separate actions and in the consolidated action, including compelling Amazon to produce comprehensive class data, defeated numerous attempts by Amazon to move or delay the case, hired an expert, and deposed numerous Amazon representatives and the experts retained by Amazon. (Dion-Kindem Decl., ¶ 15.) The parties fully briefed the motion for class certification and provided and responded to Notices of Supplemental Authority. (Dion-Kindem Decl., ¶ 16.) One of those notices pertained to the recent ruling issued by the California Supreme Court in *Frlekin*, which answered a certified question from the Ninth Circuit by ruling that time spent in exit screenings is compensable under California law. (*Frlekin v. Apple Inc.*, 8 Cal.5th 1038, 1057 (2020) (the employer "must compensate those employees to whom the policy applies for the time spent waiting for and undergoing these searches.").) (Dion-Kindem Decl., ¶ 17.)

The fatal legal misapplication behind the pending MDL Settlement is that time spent in security screenings is considered *de minimis* and is not compensable under federal law. The prior Settlement in the MDL action was valued based on this legally untenable application of federal law rather than California law after this Court applied federal law and what is now outdated authority issued by the district court's decision in *Frlekin* in granting summary judgment to Amazon.

Recent decisions of the California Supreme Court makes it clear that under California law, employees are under Amazon's control during exit security screenings and this time is not *de minimis* and must be compensated. (*See Frlekin*, 8 Cal. 5th at 1057; *see also Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 848 [235 Cal.Rptr.3d 820, 833, 421 P.3d 1114, 1125], *as modified on denial of reh'g (Aug. 29, 2018)* ("We hold that the relevant California statutes and wage order have not incorporated the *de minimis* doctrine found in the FLSA.") ("*Troester*").)

After fully briefing the class certification issues under Rule 23 and prior to the certification hearing, the *Trevino* Plaintiffs and Amazon engaged in a mediation. (Dion-Kindem Decl., ¶ 18.) It was unsuccessful, ███████████████████████████████████ ████████████████████████████████ Amazon then raced to counsel for Robertson in these MDL proceedings, conducted a hasty reverse auction[1] without any assistance from a third-party neutral, and filed the Motion for Preliminary Approval currently before this Court with a haste that almost defies belief.

### E. The Reverse-Auctioned Settlement of the Stagnant MDL Action is Legally Untenable and Resulted from Patently Obvious Bad Faith Tactics.

The *Trevino* case has proceeded along expeditiously while the present MDL Action has remained stayed while on appeal. After Robertson lost on summary judgment and appealed, the *Trevino* Plaintiffs conducted substantial discovery, including payroll records, time records (which only followed a contested discovery motion and hearing), thousands of documents produced by Amazon, and completed depositions. (Dion-Kindem Decl., ¶ 19.) The *Trevino* Plaintiffs hired an expert to prepare a report for certification. (*Id.*) The *Trevino* Plaintiffs deposed Amazon representatives and its expert witnesses. (*Id.*) The Amazon Defendants also deposed Plaintiffs and initiated contested discovery Motions to Compel production from them. (*Id.*) The parties in the *Trevino* matter fully briefed the certification motion before the Eastern District of California and even submitted supplemental notices and responses regarding cases like *Frlekin*.

---

[1] A "reverse auction" is the practice whereby a defendant in a series of class actions picks the weakest class action to negotiate a settlement in the hope that a district court will approve a weak settlement that will preclude other claims against the defendant. (*Blyden v. Mancusi*, 186 F.3d 252, 270 fn. 9 (2d Cir. 1999); Samuel Issacharoff, "Governance and Legitimacy in the Law of Class Actions," 1999 Sup. *Ct. Rev.* 337, 388; Marcel Kahan & Linda Silberman, "The Inadequate Search for `Adequacy' in Class Actions: A *Critique of Epstein v. MCA, Inc.,*" 73 N.Y.U. L.Rev. 765, 775 (1998); John C. Coffee, Jr., "Class Wars: The Dilemma of the Mass Tort Class Action," 95 *Colum. L.Rev.* 1343, 1370-73 (1995).)

Facing Plaintiffs' certification motion, Amazon and Robertson's counsel complicitly raced to enter a blatantly inadequate settlement to attempt to minimize the impact of an adverse certification ruling in the *Trevino* matter.

To protect the rights of absent class members, Rule 23(e) requires that the Court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." (Fed. R. Civ. P. 23(e)(2); *Olden v. Gardner* (6th Cir. 2008) 294 Fed.Appx. 210.) The factors courts will look to in the Sixth Circuit are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. (*Macy v. GC Servs. L.P.*, 2019 U.S. Dist. LEXIS 210632, *5 (W.D. Ken. Dec. 6, 2019).)

A more probing inquiry of the MDL Settlement readily establishes it is lacking in fundamental fairness to the putative class of 200,000 California employees and evidences a maleficent reverse auction.

> ### 1. *The Preliminary Approval Motion is unsupported by any evidence of the value of the claims released by the putative class.*

The Motion for Preliminary Approval of the proposed MDL Settlement is entirely bereft of any discussion of the value of the claims released by the putative class. The closest thing to an estimation of Amazon's potential liability exposure is a one-paragraph discussion of the alleged uncertainty of the appeal presented in the Thierman Declaration. (Dock. No. 265-2 Thierman Declaration at ¶ 58.) In this one-paragraph description, the attorney references complete uncertainty as to the value of the case and argues only that the undervalued MDL Settlement is reasonable because it is better than 50% of the expected value. Robertson's counsel provides no details on what that expected value was or how they arrived at the valuation. However, one can at least presume that, given the $11,100,000 maximum settlement value, Robertson's counsel, on behalf of 200,000 California employees, estimated a total potential liability exposure on all of the

remaining MDL class and PAGA claims, along with all the claims in *Trevino*, at a ceiling of $22.2 million.

The MDL parties admittedly have based their valuation on the danger of losing on appeal and the denial of summary judgment on the merits from years ago, without accounting for the markedly changed bargaining positions of the parties following the California Supreme Court's mandates in *Troester* and *Frlekin*. By undervaluing the parties' bargaining positions and failing to account for binding California precedent in their potential liability exposure estimates, the MDL Settlement is legally untenable and unreasonable in the abstract.

> **2.      *The value of the proposed settlement is orders of magnitude higher than the value the MDL parties describe, suggesting fraud and collusion.***

The *Trevino* Plaintiffs provided an expert declaration in support of Class certification in *Trevino*. To elucidate the undervaluation of the MDL Settlement, the *Trevino* Plaintiffs asked their expert, Dr. Brian Kriegler, to provide a potential liability exposure analysis based on a sampling of data provided by Amazon in *Trevino*. Dr. Kriegler opines that the value of the class claims Amazon seeks to settle in this Action dwarf the paltry $11 million settlement Amazon and Robertson's counsel promote:

| Table 1: Summary of Potential Classwide Damages, Interest, and Penalties in *Trevino* Through May 19, 2020 | |
| --- | --- |
| **Description** | **Dollar Amount** |
| | |
| *Unpaid Wages for Each Additional Minute of Compensable Time* | |
| Principal damages* | $4,870,976 |
| Pre-Judgment interest** | $1,166,112 |
| Liquidated damages*** | $3,832,004 |
| | |
| *Meal Premium Payments Owed for "Controlled" Meal Periods* | |
| Principal damages* | $200,917,727 |
| Pre-Judgment interest** | $48,099,704 |
| | |
| *Rest Premium Payments Owed for "Controlled" Rest Periods* | |
| Principal damages* | $223,480,940 |
| Pre-Judgment interest** | $53,501,337 |
| | |

| | |
|---|---|
| *California LC § 203 Penalties for Failure to Pay All Wages Upon Termination****** | $168,640,290 |
| *California LC § 226 Penalties for Failure to Issue Adequate Wage Statements******* | $122,196,500 |
| | |
| **Potential Recovery Across All Class Claims** | **$826,705,590** |
| | |
| \* - Statute of limitation dates back to July 12, 2013.<br>\*\* - Computed at 7% simple per annum with an accrual date of May 19, 2020.<br>\*\*\* - Statute of limitation dates back to July 12, 2014.<br>\*\*\*\* - Statute of limitation dates back to July 12, 2016. | |

(Kriegler Decl., ¶ 7, Table 1.)

Moreover, while the proposed Settlement would only pay **$30** per employee to the post-
May 2013 class members (which class would encompass all the *Trevino* class members), Dr.
Kriegler has opined that the average recovery per terminated employee should be **$8,121.29** and
the average recovery per currently employee should be **$4,669.79**

| Table 2: Summary of Potential Damages, Interest, and Penalties Per Putative Class Member in *Trevino* Through May 19, 2020 | |
|---|---|
| **Description** | **Dollar Amount** |
| | |
| *Unpaid Wages for Each Additional Minute of Compensable Time* | |
| Principal damages\* | $27.13 |
| Pre-Judgment interest\*\* | $6.50 |
| Liquidated damages\*\*\* | $21.34 |
| | |
| *Meal Premium Payments Owed for "Controlled" Meal Periods* | |
| Principal damages\* | $1,119.11 |
| Pre-Judgment interest\*\* | $267.92 |
| | |
| *Rest Premium Payments Owed for "Controlled" Rest Periods* | |
| Principal damages\* | $1,244.79 |
| Pre-Judgment interest\*\* | $298.00 |
| | |
| *California LC § 203 Penalties for Failure to Pay All Wages Upon Termination****** | $3,451.50 |
| *California LC § 226 Penalties for Failure to Issue Adequate Wage Statements******* | $1,685.00 |

| *Potential Recovery Per Person Across All Class Claims* | |
|---|---|
| **Putative Class Members Terminated On/After July 2014** | **$8,121.29** |
| **Putative Class Members Not Terminated On/After July 2014** | **$4,669.79** |
| | |
| \* - Statute of limitation dates back to July 12, 2013.<br>\*\* - Computed at 7% simple per annum with an accrual date of May 19, 2020.<br>\*\*\* - Statute of limitation dates back to July 12, 2014.<br>\*\*\*\* - Statute of limitation dates back to July 12, 2016. | |

Kriegler Decl., ¶ 8, Table 2.

Finally, the $333,333 allocated to PAGA claims is a small fraction of the potential PAGA penalties that Amazon faces.

| **Table 3: Summary of Potential PAGA Penalties in *Trevino\**, July 12, 2016 through Present Day** | |
|---|---|
| **Assumed Dollar Amounts Per Violative Employee Pay Period** | **Dollar Amount** |
| $100 per violation | $163,308,000 |
| $200 per violation | $326,616,000 |
| $250 per violation | $408,270,000 |
| \* - Statute of limitation dates back to July 12, 2016. | |

Kriegler Decl., ¶ 10, Table 3.

| **Table 4: Summary of Potential PAGA Penalties Per Alleged Aggrieved Employee in *Trevino,\**, July 12, 2016 through Present Day** | |
|---|---|
| **Assumed Dollar Amounts Per Violative Employee Pay Period** | **Dollar Amount** |
| $100 per violation | $562.98 |
| $200 per violation | $1,125.95 |
| $250 per violation | $1,407.44 |
| \* - Statute of limitation dates back to July 12, 2016. | |

Kriegler Decl., ¶ 11, Table 4.

    **3.**    ***The settlement amount is tremendously undervalued given the changes in California law.***

When it granted Summary Judgment against Robertson in the MDL Action in June of 2017, the Court considered *Frlekin v. Apple Inc.* (N.D. Cal., Nov. 7, 2015, No. C 13-03451 WHA) 2015 WL 6851424 (*Frlekin* 1) to be persuasive authority in favor of Amazon.

The *Frlekin* plaintiffs appealed to the Ninth Circuit. In August of 2017, the Ninth Circuit requested the California Supreme Court to address the central holding of *Frlekin 1*, namely whether, in contrast to the federal approach, exit security screenings are compensable under California law. (*See, Frlekin v. Apple, Inc.* (9th Cir. 2017) 870 F.3d 867, *certified question answered* (2020) 8 Cal.5th 1038 [258 Cal.Rptr.3d 392, 457 P.3d 526].)

On February 13, 2020, the California Supreme Court ruled unequivocally that Apple, like Amazon, controlled its employees during the time when they were subject to mandatory security screenings while off the clock, especially where the employer's interest in deterring theft was of critical importance to the employer. (*Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1051 (2020).)

Prior to this seminal security screening ruling in *Frlekin*, the California Supreme Court also provided further binding authority in *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) the MDL parties failed to properly apply. In *Troester*, the California Supreme Court removed from consideration a common defense argument that even if work was performed off-the-clock, it was so small as to be *de minimis* under the prevailing federal doctrine and approach under the FLSA. (*Id.* at 847.)

When read together, *Frlekin* and *Troester* establish that time during exit security screenings in California is not impacted by the federal *de minimis* approach and that it is compensable as hours worked under California law.

This binding precedent is much more than merely a positive development for the putative class of 200,000 California employees – it is an unquestionable boon to them. Rather than valuing the MDL Settlement and Amazon's potential liability exposure based on the changes in California law following *Frlekin* and *Troester*, however, the MDL parties selectively elected not

to apply the change in the law. They instead cite only to the inherent risk presented by the appeal of a summary judgment ruling and base their valuation of this proposed 2020 MDL Settlement solely on a prior October of 2016 Settlement for some of the MDL Plaintiffs who were temporary staffing employees ("the *Saldana* Settlement"). (*See* Declaration of Thierman at ¶¶ 63-64.)

Given the positive changes in the law for California employees, the genesis of 2016 MDL *Saldana* Settlement is notably dissimilar to the proposed 2020 Robertson MDL Settlement, and the terms and valuation of the 2016 Settlement cannot serve as a "similar settlement" deeming the proposed 2020 MDL Settlement fair and reasonable. Both the prior Settlement and the Court's summary judgment ruling were founded upon a presumption that security screening time is not compensable under the federal approach and a California holding in *Frlekin 1*, which the California Supreme Court specifically reversed in *Frlekin*.

The proposed 2020 MDL Settlement vastly undervalues the bargaining position of the 200,000 California employees at issue by failing to correctly estimate the baseline exposure Amazon faces on the claims, and fatally fails to account for the change in that law under *Frlekin* and *Troester*.

This is not a good settlement for the putative class of California employees, and instead serves only to benefit Robertson's attorneys. When presented with the choice of awaiting the result of the appeal, they were more than pleased to agree to enter into a clearly under-valued settlement so they could ask for over $3 million in attorneys' fees for filing a complaint, unsuccessfully opposing a motion for summary judgment, and briefing the appeal therefrom. They are attempting to sell out the class members by hastily agreeing to a vastly undervalued settlement without conducting any arms-length negotiation or proper claim evaluation and valuation. This conduct raises substantial questions as to whether the relief obtained is adequate. (*See Macy*, 2019 U.S. Dist. LEXIS 210632, *7-8 (W.D. Ken. Dec. 6, 2019).)

There are over 200,000 putative California Class members, and this shear number alone compels the need for a probing analysis to determine whether the relief obtained by the

remaining MDL Plaintiff is fair and adequate. The California Supreme Court precedent in *Frlekin* and *Troester* make it perfectly clear that the federal law and approach (*see, e.g Integrity Staffing Solutions, Inc. v. Busk* (2014) 574 U.S. 27 [135 S.Ct. 513, 190 L.Ed.2d 410]) simply does not apply to California claims. Whereas the FLSA approach is that security screening time is not compensable as *de minimis*, California law has now been clarified to mandate the exact opposite, namely that exit security screening time is not *de minimis* and is compensable.

Although the claims that remain in the MDL proceedings were on appeal for years and this case was not even active in the district court, the *Robertson* Plaintiff and her lawyers have allowed themselves to be seduced by Amazon to engage in a reverse auction settlement process that fundamentally "sells out" approximately 200,000 Amazon workers. According to the MDL Plaintiff's attorneys, their primary rationalization for settling the remaining MDL claims, and also all claims by the *Trevino* Plaintiffs, at such an incredibly low amount was the risk of losing their case on appeal before the Sixth Circuit (which would have no binding effect on the class in any event because the *Robertson* class claims had never been certified). This rationalization is truly weak and self-serving, as it does not appropriately allocate risk and bargaining position amongst the parties.

On the other hand, the *Trevino* Plaintiffs stand in a dramatically more favorable procedural position than the remaining MDL Plaintiff. There has been no motion for summary judgment filing in *Trevino,* let alone one ruling in favor of Amazon on the merits. To the contrary, in *Trevino*, the Eastern District of California is poised to render a ruling on class certification based on applying California law to hundreds of thousands of California employees. Amazon's fear of certification in *Trevino* resulted in its hasty and successful attempt to entice the MDL Plaintiff attorneys to accept an objectively unreasonable and undervalued Settlement so that they could recover substantial fees at the expense of 200,000 California Class members.

The MDL Settlement is replete with other evidence of its lack of fundamental fairness. For example, the *Robertson* motion for preliminary approval also implies, or at best ambiguously asserts that the average wage rate is $10 per hour. It is not. $10.00 per hour is an 8-year-old wage

rate. According to the information produced in the consolidated *Trevino* cases, the average wage rate during the period was actually ***$13.17***. (Krielger Decl., ¶ 26.) This takes into account the incremental increases in the California minimum wage rate, which is currently $13.00/hr. As a result, any settlement analysis or calculations by the Robertson lawyers based upon an alleged $10 per hour wage rate is fatally flawed.

In fact, the current *Robertson* settlement uses exactly the same settlement formula and valuation methodology as the 2016 *Saldana v SMX LLC* Settlement. The fact that the settlement amount in the proposed 2020 MDL Settlement did not increase above the 2016 *Saldana* Settlement valuation construct after the California Supreme Court's decisions in *Troester* and *Frlekin* establishes that the *Robertson* Plaintiff's lawyers placed ***ZERO*** value on the holdings of *Troester* and *Frlekin*. They did so despite the fact that this Court's summary judgment ruling occurred before both the *Troester* and *Frlekin* decisions were rendered to clarify California law.

As a result, the proposed *Robertson* settlement simply cannot be viewed through the same eyes as the 2016 *Saldana* Settlement or judged against the same circumstances as it. The circumstances and the state of the law are not the same. The 2016 *Saldana* Settlement was before *Troester* and *Frlekin*. The proposed Robertson settlement is clearly post-*Troester* and *Frlekin*. While the Court may have viewed that 2016 *Saldana* MDL Settlement as reasonable under the state of the law at the time, this has no bearing on whether the 2020 Robertson MDL Settlement is reasonable now. The California Supreme Court precedent in *Troester* and *Frlekin* has now made it perfectly clear that the proposed *Robertson* settlement is unfair and unreasonable. The decision by Robertson's attorneys to disregard the differences in California and federal law post-*Frlekin* and *Troester* also further establishes the proposed 2020 MDL Settlement is almost certainly a product of collusion and a reverse auction.

Finally, the lack of information or justification presented by Robertson's attorneys in their motion for preliminary approval of the 2020 MDL Settlement demonstrates that the parties to the MDL Action are trying to slip an unreasonable settlement by this Court. The critical

information necessary to evaluate the proposed MDL Settlement, which is conspicuously omitted from the preliminary approval papers, includes:

- The average hourly pay rates for class members of both classes so unpaid hours worked can be calculated;

- The number of regular versus overtime hours worked by class members of both classes so unpaid regular wages and overtime wages can be calculated;

- The number of shifts worked by class members of both classes so unpaid hours worked can be calculated;

- The number of shifts worked by class members of both classes so that meal and rest break premiums can be calculated;

- The number of pay periods worked by class members of both classes so that wage statement penalties can be calculated;

- The number of work weeks or pay periods worked by class members of both classes so that PAGA penalties can be calculated, and

- The potential 203 penalties payable to terminated employees in both classes.

The MDL Settlement parties have failed to provide any data points or analysis to the Court in support of their requested approval. This is further proof that the fraudulent settlement remains undervalued and unsupported, and the motion for its preliminary approval must be denied.

> ### 4.   *There is no evidence that any discovery occurred during the interim when the MDL Action was on appeal.*

The attorneys for the remaining MDL Plaintiff also provide no evidence in the preliminary approval papers that the settlement was reached with the benefit of any discovery after the MDL proceedings were stayed when summary judgment was granted for Amazon. This dearth of discovery begs the question of how the proposed MDL Settlement, which is valued in accordance with only the discovery completed for the 2016 Saldana Settlement, can be based on any reasonable, evidence-based valuation specific to the employees it is intended to benefit in 2020. There is no question it greatly benefits the *Robertson* attorneys. It also provides a great benefit to Amazon, who so feared a class certification ruling in favor of the *Trevino* Plaintiffs

that it hurried to reach the proposed MDL settlement for as little money as possible as hearing on the motion for class certification in *Trevino* was imminent.

Since the case was stayed pending the appeal to the Sixth Circuit, it is self-evident that no discovery taking into account the effects of *Frlekin* or *Troester* occurred. The absence of discovery while the matter was stayed again raises the specter of collusion. (*Macy*, 2019 U.S. Dist. LEXIS 210632, *6 (W.D. Ken. Dec. 6, 2019).)

### 5.   The Settlement was not conducted at arms' length.

There is also no evidence provided in the preliminary approval papers to establish that the settlement was reached through the help of a skilled wage and hour mediator. That this did not occur is evident from the fact that Amazon needed to move swiftly to get a settlement finalized before the Eastern District of California certified the *Trevino* California claims against it. This provides further compelling evidence that the settlement resulted from a hasty and particularly unbecoming reverse auction. (*See Macy*, 2019 U.S. Dist. LEXIS 210632, *7 (W.D. Ken. Dec. 6, 2019).) The lack of a mediator, especially post-*Frklin* or *Troester*, suggests blatant collusion. There is no way the 2020 MDL Settlement negotiations can be described as arm's-length.

### 6.   The Settlement is not in the public interest.

As the proposed MDL Settlement failed to account for the change in the law post-*Frlekin* and *Troester*, and failed to acknowledge that California employees must be paid for their time during exit screenings, the vastly undervalued proposed settlement of the MDL Action cannot be in the public's interest. Settlements for what may be considered small amounts per employee are often beneficial in class actions, which are notoriously difficult and unpredictable and seek to conserve judicial resources (*see Macy*, 2019 U.S. Dist. LEXIS 210632, *17 (W.D. Ken. Dec. 6, 2019)). However, in the present case, the *Trevino* Plaintiffs' motion for class certification is pending in the Eastern District of California. A favorable finding would demonstrate that the putative class is owed significantly more than the paltry sum of a few dollars per person proposed by the MDL Action Plaintiff. This factor cannot support preliminary approval.

---

**Memorandum of Points and Authorities in Support of Motion to Intervene**

**III.**   **PLAINTIFFS' MOTION TO INTERVENE SHOULD BE GRANTED.**

Intervention by right in federal lawsuits is governed by Federal Rule of Civil Procedure 24(a),[2] which provides in pertinent part: "Upon timely application anyone shall be permitted to intervene in an action... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." The Sixth Circuit applies Rule 24 with the following four part test: (1) timeliness of the application; (2) the applicant's substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court. (*Cuyahoga Valley Ry. Co. v. Tracy* (6th Cir. 1993) 6 F.3d 389, 395.)

In applying these tests, Rule 24(a) must be construed "broadly in favor of potential intervenors" and in light of the "liberal policy in favor of intervention." (*City of Los Angeles*, 288 F. 3d at 397; *Forest Conservation Council*, 66 F. 3d at 1493.) This four-part test is satisfied in this case. This general rule has been approved by the Sixth Circuit. (*See Michigan State AFL-CIO v. Miller* (6th Cir. 1997) 103 F.3d 1240, 1245.)

**A.**   **The *Trevino* Plaintiffs' Motion Is Timely.**

In determining timeliness, the following factors are weighed: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his or her interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual

---

[2] Intervention into MDL matters is allowed under the Rules of Civil Procedure. (*See generally In re Lease Oil Antitrust Litigation* (5th Cir. 2009) 570 F.3d 244.)

circumstances militating against or in favor of intervention. (*U.S. v. City of Detroit* (6th Cir. 2013) 712 F.3d 925.)

Here, the *Trevino* Plaintiffs seek to intervene for the purpose of opposing the Motion for Preliminary Approval of the proposed 2020 MDL Settlement. Should the Court wish to defer considering the merits of the settlement, or lack thereof, or would like to rely on a class certification analysis by a sister-district Court in California, the *Trevino* Plaintiffs ask the Court to stay the MDL Action pending the Eastern District of California's ruling on their motion for class certification. (Dion-Kindem Decl., ¶ 19.) If the certification motion is granted in the *Trevino* matter, even in part such that the certified claims overlap with the claims alleged in the MDL Action, the proposed settlement by Amazon would be rendered wholly inadequate. At a minimum, the *Trevino* Court's motion for class certification ruling will inform the Rule 23 analysis, which this or any Court must apply in assessing the reasonableness of a proposed settlement.

In this case, the *Trevino* Plaintiffs are filing their Motion to Intervene with expedience upon learning that Amazon is now seeking to reverse auction and settle their class action claims out from underneath them on the eve of a certification ruling. There will be no prejudice to the other parties. Indeed, counsel for Plaintiff Robertson should appreciate that a certified class would result in the putative class receiving a far greater settlement than achieved via Amazon's reverse auction. Furthermore, this Court, as a fiduciary for the putative class, should want to know whether the claims alleged in both the MDL Action and the *Trevino* matter are certifiable, and the California Court is best positioned to decide such a threshold issue of importance under California law.

### B.   The *Trevino* Plaintiffs Have a Sufficient Interest in the Subject Matter of the Action.

Rule 24(a)'s requirement of substantial legal interest is analyzed under an expansive notion in the Sixth Circuit. (*Michigan State AFL-CIO v. Miller* (6th Cir. 1997) 103 F.3d 1240, 1245.)

Here, there is no debate that the MDL Action will impact the *Trevino* Plaintiffs' interest. Prior to this surprise settlement, the MDL Action was dormant, as Robertson's individual claims were on appeal to the Sixth Circuit. First, there is a substantial overlap between the two actions. Amazon concedes as much as it attempts to subsume the *Trevino* matter in its release in the MDL Action. Second, as explained previously, the *Trevino* Plaintiffs believe that Defendants are trying to use the MDL Action as an opportunity to conduct a reverse auction and push through a sub-standard settlement while avoiding a pressing adverse ruling on a motion for class certification that is fully briefed in the Eastern District of California.

### C. The Disposition of this Action Will Impair the *Trevino* Plaintiffs' Ability to Protect Their Interests and the Interests of the Putative Class.

To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. (*Miller*, 103 F. 3d at 1247.) The "practical impairment" standard of Rule 24(a) resulted from a 1966 amendment "designed to liberalize the right to intervene in federal actions." (*Nuesse v. Camp* (D.C. Cir. 1967) 385 F.2d 694, 699); *see also* Fed. R. Civ. P. 24(a)(2), Advisory Committee Note ("[I]f any [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene").)

The *Trevino* Plaintiffs oppose Amazon's attempt to engineer a reverse auction by settling a dormant case on appeal in the Sixth Circuit when a certification order was imminent in the Eastern District of California. The *Trevino* Plaintiffs submit that Amazon is simply attempting to avoid a certification decision in the *Trevino* case and settle for as little as possible.

### D. The *Trevino* Plaintiffs' Interest May Not Be Adequately Represented by the Parties to the Action.

Finally, an applicant in intervention need not show that the existing parties will engage in conduct that will be detrimental to the applicant's interest. To the contrary, the requirement of inadequacy of representation "is satisfied if the applicant shows that representation of his interest

'may be' inadequate; and the burden of making that showing should be minimal." (*Trbovich v. United Mine Workers of America* (1972) 404 U.S. 528, 538 fn. 10 [92 S.Ct. 630, 636, 30 L.Ed.2d 686] (citation omitted).) This element is minimal because it is sufficient that the movant prove that the representation may be inadequate. (*Miller*, 103 F. 3d at 1247 (holding it may be sufficient to show that the existing party need only show that the existing party will not make all of the prospective intervenor's arguments) (internal citations omitted).)

Here, the MDL Action has been dormant as it was on appeal to the Sixth Circuit. Amazon concedes that the parties in the MDL Action only recently struck up settlement discussions. Amazon is ostensibly attempting to avoid a certification decision on a motion that is fully briefed in the Eastern District of California and which is supported by substantial evidence of record, expert opinions, and California law. After years of lying dormant, Amazon rushed to the Plaintiff's attorney in the MDL Action upon the failed mediation with the *Trevino* Plaintiffs. This is further evidence of Amazon's attempt to conduct a reverse auction. Amazon's nefarious behavior is further evidenced by the fact that the settlement of the proposed MDL Action was engineered by Amazon and agreed to by the parties without the use of a skilled mediator in wage and hour class actions.

### E.    Permissive Intervention Is Warranted.

In the alternative, the *Trevino* Plaintiffs should be permitted to intervene pursuant to Federal Rule of Civil Procedure 24(b) which allows permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." (Fed. R. Civ. P. 24(b)(2).) In exercising discretion under Rule 24(b), the Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (*Id.*; *Miller*, 103 F. 3d at 1248.)

The *Trevino* Plaintiffs seek to intervene in the MDL Action so as to protect the interest of the putative class of 200,000 California employees. If the under-valued MDL Settlement is approved, based on a misapplication of outdated and overruled California authority, Amazon can

avoid accounting for the true value of the claims. The California employees will certainly be better protected and would stand to receive a higher settlement amount if any of the claims in the *Trevino* matter were certified than what they will receive under the poor settlement currently manufactured by Amazon in the MDL Action.

**IV.    THIS COURT HAS MANY OPTIONS TO UTILIZE TO PROTECT THE CLASS MEMBERS.**

This Court has discretion on how to move forward in light of Amazon's attempt to obtain a reverse auction. The Court should deny the motion for preliminary approval or stay these proceedings pending the Eastern District of California's ruling on class certification.

A brief stay pending the *Trevino* certification ruling would also allow this Court to order additional briefing demanding the MDL Action parties to fully describe the facts that led to this sudden settlement after years of inaction while the matter was stayed pending the Sixth Circuit ruling.

The Court could also require the MDL parties to present the facts and evidence that support the settlement amount, their considerations in allocating the relative strength of the MDL Plaintiff's remaining claims, and the discounts the MDL Plaintiff's used in determining the settlement was fair and adequate.

**A.    The Court Has Inherent Power to Stay This Matter.**

This Court has the inherent authority to stay the MDL Action. A trial court can stay a matter if it is efficient for its own docket and fairest course for the parties pending resolution of independent proceedings which bear upon the case. (*Searcy v. Palmer*, 2018 U.S. Dist. LEXIS 167516, *2 (E.D. Mich. Sept. 28, 2018); *Leyva v. Certified Grocers of California, Ltd.* (9th Cir. 1979) 593 F.2d 857, 863. An action pending in another court need not be binding on the court considering a stay. (*Id.*)

Courts in the Sixth Circuit have stayed cases pending the imminent issuance of persuasive authority by other courts. (*DeJonghe v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 209950, *3 (E.D. Mich. Dec. 21, 2017).) Courts will look to the judicial economy that

can be saved by waiting for a decision, the public welfare and the hardship/prejudice to the party opposing the stay, given its duration. (*Michael v. Ghee* (N.D. Ohio 2004) 325 F.Supp.2d 829. The requested stay here would be relatively brief, and satisfies these requirements.

**B.      There is No Risk of Damage From a Stay.**

There are no genuine adverse consequences from issuing a stay of the MDL Action. This case has been stayed for years until the eve of the hearing on the *Trevino* Plaintiffs' motion for certification motion in the Eastern District of California. A class certification motion hearing has not been scheduled in the MDL proceedings, and there has been no briefings filed in support of or in opposition to class certification. When so little has been done in a case, there is no concern in granting a stay. (*See Garcia v. Hollister Co.* (C.D. Cal., Aug. 2, 2016, No. CV 16-154-JGB (AGRX)) 2016 WL 10988791, at *4; *Panavision Imaging, LLC v. OmniVision Technologies, Inc.* (C.D. Cal., Apr. 19, 2010, No. CV09-1577 DMG (CTX)) 2010 WL 11507881, at *3.) This should be especially true in this instance, where the remaining MDL Plaintiff lost on summary judgment.

**C.      Plaintiffs in the *Trevino* Consolidated Cases Would Suffer Without a Stay.**

Failure to grant a stay would greatly harm the *Trevino* Plaintiffs in the case because the proposed MDL Settlement poses distinct harm to them and the rest of the putative class of 200,000 California employees they are representing. The *Trevino* Plaintiffs have demonstrated sufficient and justifiable concern that Amazon has attempted to conduct a reverse auction for fear of an adverse certification ruling. By staying the MDL Action, the Eastern District could decide whether or not the claims as alleged are certifiable under California law. If they are, the putative class stands to receive significantly more than the paltry sum settled for in the MDL Action.

**D.      A Stay Promotes Efficiency.**

Given the overlap between the *Trevino* matter and the MDL Action, a stay of the MDL Action would further the goals of judicial economy. This Court would doubly benefit from a stay. First, as a fiduciary of the putative class, this Court can ask the Eastern District of

---

California to reach a decision on the certification issues, which are fully briefed and ready for hearing there. Knowledge of whether the claims alleged are certifiable is one of the most important considerations in determining whether a settlement is reasonable or not, especially under the required rigid application of the Rule 23 analysis. The Eastern District of California is best-suited to conduct this inquiry. Second, it promotes judicial efficiency as this MDL Action has been stayed for years while the *Trevino* actions have been embroiled in vehemently contested litigation and have advanced to the brink of a class certification ruling. That ruling will inform and either validate or discredit the reasonableness of the proposed MDL Settlement.

## V.   CONCLUSION

For the reasons addressed herein, and those stated in the supporting documents, the *Trevino* Plaintiffs respectfully request leave to intervene in these MDL proceedings to oppose the proposed MDL Settlement. They also request that the Court stay further MDL proceedings pending a ruling by the Eastern District of California on the *Trevino* Plaintiffs' motion for class certification.

Dated: May 21, 2020

/s PETER R. DION-KINDEM
PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone:   (818) 883-4900
Email: peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
5211 East Washington Blvd. # 2262
Commerce, CA 90040
Telephone:   (213) 599-8255
Fax:            (213) 402-3949
Email: lonnieblanchard@gmail.com

DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian
Alvin B. Lindsay
535 N. Brand Blvd., Suite 705
Glendale, CA 91203
Telephone:     (818) 230-8380
Fax:             (818) 230-0308
Email: david@yeremianlaw.com
alvin@yeremianlaw.com

JAMES HAWKINS APLC
James Hawkins
Isandra Fernandez
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone:     (949) 387-7200
Fax:             (949) 387-6676
Email: james@jameshawkinsaplc.com
isandra@jameshawkinsaplc.com

HAFFNER LAW PC
Joshua H. Haffner
Graham G. Lambert
445 South Figueroa Street, Suite 2325
Los Angeles, CA 90071
Telephone:     (213) 514-5681
Fax:             (213) 514-5682
Email: jhh@haffnerlawyers.com
gl@haffnerlawyers.com

THE WESTRICK LAW FIRM, P.C.
Shawn C. Westrick
11075 Santa Monica Boulevard, Suite 125
Los Angeles, CA 90025
Telephone:     (310) 746-5303
Fax:             (310) 943-3373
Email: swestrick@westricklawfirm.com

Attorneys for proposed Plaintiffs-in-Intervention

# UNITED STATES DISTRICT COURT
## WESTERN DIVISION OF KENTUCKY
### AT LOUISVILLE

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FOR FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION | Master File No. 3:14-MD-2504<br>MDL Docket No. 2504<br>Judge: Hon. David J. Hale |
| This Document Relates to *Saldana v. Amazon.com, LLC*, Case No. 14-CV-00290-DJH | **DECLARATION OF PETER R. DION-KINDEM IN SUPPORT OF MOTION TO INTERVENE FOR THE PURPOSE OF OPPOSING THE PRELIMINARY APPROVAL AND/OR OTHER RELIEF DEEMED APPROPRIATE**<br><br>Date:<br>Time:<br>Dept: 106<br>Judge: Hon. David J. Hale |

I, Peter R. Dion-Kindem, declare:

1.   I am counsel for the proposed Plaintiffs in Intervention, who are Plaintiffs in the Trevino action pending in the Eastern District of California.

2.   The *Trevino* action pending in the Eastern District of California is a consolidated matter comprising five wage and hour class action lawsuits, the earliest of which was filed on July 12, 2017.

3.   The initial proceedings in all the actions were litigated on Amazon's behalf by Morgan Lewis, who has also been counsel to Amazon in these MDL proceedings.

4.   After initial discovery and depositions and motions on the pleadings were completed in the California actions, the Amazon Defendants substituted Gibson Dunn as new counsel, who proceeded with aggressive litigation tactics designed to make completing discovery and class certification as difficult as possible for the *Trevino* Plaintiffs.

5.   When those tactics could no longer delay hearing on the motion for class certification, Amazon tasked Morgan Lewis with settling the remaining MDL claims on a class basis as quickly as possible to avoid an adverse class certification ruling in *Trevino*.

6.   Before consolidation in *Trevino*, Defendants' first attempt to forum shop this matter occurred when they attempted to transfer and consolidate the *Trevino* cases with this MDL, even though MDL proceedings were no longer pending in the Western District of Kentucky.

7.   This Court had already granted Defendants' Motion for Summary Judgment against Robertson's individual claims in the MDL and the matter was pending appeal to the Sixth Circuit.

8.   The Defendants' attempt to forum shop the cases into the MDL was denied by the JPML panel on the basis that the MDL action had already concluded and that the transfer would be inefficient.

9.   Not to be deterred, the Amazon Defendants next sought to stay the *Trevino* matters either in whole or in part based on the pending appeal in the Sixth Circuit.

**Declaration of Peter R. Dion-Kindem in Support of Motion to Intervene**

10.     Shortly after the hearing on the Motion to Stay, the *Trevino* Plaintiffs sought to file a consolidated complaint.

11.     On June 28, 2019, the Court for the Eastern District of California denied Defendants' Motion to Stay.

12.     Defendants next attempted to forum shop by moving the *Trevino* cases from the Eastern District to the Central District of California, where a new case against Defendants had been filed. The District Court of the Central District of California denied Defendants' motion.

13.     While the MDL trial court proceedings were stayed pending Robertson's appeal, the *Trevino* matter was actively litigated. Following two Court-ordered continuances, the *Trevino* Plaintiffs' motion for class certification, which was filed on November 26, 2019 and extensively briefed, was finally set for a hearing on May 8, 2020.

14.     The *Trevino* Court has now vacated the hearing once again and requested the parties to brief the impact of the MDL Settlement on the proposed Classes of California employees in *Trevino*.

15.     While these proceedings have been stayed for several years pending Robertson's appeal, the *Trevino* matter has been thoroughly prepared for certification in the Eastern District of California. The *Trevino* Plaintiffs sought substantial discovery in five separate actions and in the consolidated action, including compelling Amazon to produce comprehensive class data, defeated numerous attempts by Amazon to move or delay the case, hired an expert, and deposed numerous Amazon representatives and the experts retained by Amazon.

16.     The parties fully briefed the motion for class certification and provided and responded to Notices of Supplemental Authority.

17.     One of those notices pertained to the recent ruling issued by the California Supreme Court in *Frlekin*, which answered a certified question from the Ninth Circuit by ruling that time spent in exit screenings is compensable under California law. (*Frlekin v. Apple*

---

**Declaration of Peter R. Dion-Kindem in Support of Motion to Intervene**

*Inc.*, 8 Cal.5th 1038, 1057 (2020) (the employer "must compensate those employees to whom the policy applies for the time spent waiting for and undergoing these searches.").)

18.  After fully briefing the class certification issues under Rule 23 and prior to the certification hearing, the *Trevino* Plaintiffs and Amazon engaged in a mediation. It was unsuccessful

19.  The *Trevino* case has proceeded along expeditiously while the present MDL Action has remained stayed while on appeal. After Robertson lost on summary judgment and appealed, the *Trevino* Plaintiffs conducted substantial discovery, including payroll records, time records (which only followed a contested discovery motion and hearing), thousands of documents produced by Amazon, and completed depositions. The *Trevino* Plaintiffs hired an expert to prepare a report for certification. The *Trevino* Plaintiffs deposed Amazon representatives and its expert witnesses. The Amazon Defendants also deposed Plaintiffs and initiated contested discovery Motions to Compel production from them.

20.  The *Trevino* Plaintiffs seek to intervene for the purpose of opposing the Motion for Preliminary Approval of the proposed 2020 MDL Settlement. Should the Court wish to defer considering the merits of the settlement, or lack thereof, or would like to rely on a class certification analysis by a sister-district Court in California, the *Trevino* Plaintiffs ask the Court to stay the MDL Action pending the Eastern District of California's ruling on their motion for class certification.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Dated: May 21, 2010                    _____

                                                   Peter R. Dion-Kindem

**Declaration of Peter R. Dion-Kindem in Support of Motion to Intervene**

**UNITED STATES DISTRICT COURT**
**WESTERN DIVISION OF KENTUCKY**
**AT LOUISVILLE**

| | |
|---|---|
| **IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FOR FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION**<br><br>**This Document Relates to:**<br>***Saldana v. Amazon.com, LLC,***<br>**Case No. 14-CV-00290-DJH** | Master File No. 3:14-md-2504<br>MDL Docket No. 2504<br><br>JUDGE: HON. DAVID J. HALE |

**DECLARATION OF BRIAN KRIEGLER, PH.D.**
**IN SUPPORT OF MOTION TO INTERVENE**

**May 19, 2020**

# Table of Contents

**I.    Introduction**.................................................................................1

    A. Summary of Opinions ......................................................... 2

        1. Summary of Potential Damages, Pre-Judgment Interest, and
           Derivative Penalties in Trevino ..................................... 2

        2. Potential PAGA Penalties ............................................ 4

    B. Qualifications and Fee Statement........................................ 5

**II.   Proposed Class/Aggrieved Employee Definitions in *Trevino*
that Pertain to Amazon's Security Check Process**......................6

    A. Class Definitions ............................................................. 6

    B. Definition of Alleged Aggrieved Employees ......................... 7

**III.  Understanding of Applicable Laws and Overview of Plaintiffs'
Allegations in *Trevino* that Pertain to Amazon's Security
Check Process** ........................................................................7

    A. Alleged Compensable Time Off-the-Clock ........................... 7

        1. Understanding of California Law .................................... 7

        2. Understanding of Off-the-Clock Allegations in Trevino..................... 8

    B. Meal Periods.................................................................... 9

        1. Understanding of California Laws................................... 9

        2. Understanding of Meal Period Allegations in Trevino ..................... 10

    C. Rest Periods................................................................. 10



ii

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

1.  Understanding of California Laws .................................................. 10

2.  Understanding of Rest Period Allegations in Trevino ....................... 11

D.  § 203 Waiting Time Penalties ......................................................... 12

1.  Understanding of California Laws .................................................. 12

2.  Waiting Time Allegations in Trevino ............................................. 12

E.  § 226 Wage Statement Penalties .................................................... 12

1.  Understanding of California Laws .................................................. 12

2.  Wage Statement Allegations in Trevino ........................................ 12

**IV.  Data Analyzed to Date in *Trevino* .........................................13**

A.  Timekeeping Production .................................................................. 13

B.  Payroll Production ........................................................................... 13

**V.  Calculations Used to Derive Potential Damages, Interest, Derivative Penalties, and PAGA Penalties in *Trevino* ..............14**

A.  The Estimated Number of Putative Class Members ............................. 14

B.  The Average Hourly Rates Per Employee .......................................... 15

C.  The Estimated Numbers of Shifts Between July 12, 2013 and Present Day ................................................................................................ 15

D.  The Estimated Numbers of Shifts Over 6.0 and of at Least 3.5 Hours .... 15

E.  Pre-Judgment Interest Across the Putative Class ............................... 16

F.  Calculations Related to Potential Liquidated Damages ........................ 17

1.  The Estimated Number of Shifts On/After July 12, 2014 ................ 17



iii

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

   2. The Average Hourly Rate Among Employees On/After July 12, 2014  17

G. Calculations Related to § 203 Waiting Time Penalties .......................... 17

   1. The Estimated Number of Employees Terminated On/After July 12, 2014 ...................................................................................... 17

   2. The Estimated Average Daily Wage Among Persons Eligible for Waiting Time Penalties ............................................................... 18

H. Calculations Related to PAGA and § 226 Wage Statement Penalties ...... 18

**VI.   Potential Damages, Interest, and Penalties in *Trevino*............19**

**VII.  Concluding Remarks...............................................................20**

## LIST OF EXHIBITS

1 - Curriculum Vitae
2 - List of Proposed Classes in *Trevino v. Amazon*
3 - Formulas for Estimating Potential Principal Damages, Pre-Judgment Interest, Derivative Penalties, and PAGA Penalties
4 - Potential Damages, Pre-Judgment Interest, Derivative Penalties, and PAGA Penalties, July 12, 2013 through Present Day
   4A - Derivation of Potential Damages and Pre-Judgment Interest for Each Additional Compensable Minute Per Shift, July 12, 2013 through Present Day
   4B - Derivation of Potential Liquidated Damages for Each Additional Compensable Minute Per Shift, July 12, 2014 through Present Day
   4C - Derivation of Potential Damages and Pre-Judgment Interest for Potential Meal/Rest Premium Payments Owed, July 12, 2013 through Present Day
   4D - Potential Waiting Time Penalties For Persons Terminated On or After July 12, 2014
   4E - Potential Wage Statement Penalties, July 12, 2016 through Present Day
   4F - Potential PAGA Penalties, July 12, 2016 through Present Day



iv

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

I, Brian Kriegler, declare:

## I.       Introduction

1.      I have personal knowledge of the facts set forth in this declaration except where otherwise specified. If called to testify to these facts as a witness in this action, I would so testify.

2.      I have been retained by the plaintiffs in *Juan Trevino, et al. v. Amazon Fulfillment Services, Inc., et al.* ("Amazon"), Case No. 1:18-cv-00120-DAD-BAM, pending in the United States District Court, Eastern District of California (hereinafter, "*Trevino*"). To date in *Trevino*, I have provided my analyses and opinions in: (i) a declaration in support of Plaintiffs' motion for class certification,[1] (ii) a reply declaration in support of Plaintiffs' motion for class certification,[2] (iii) a declaration in response to a Daubert motion,[3] and (iv) deposition.[4]

3.      My understanding is that this declaration is being submitted in support of a motion to intervene in *Saldana v. Amazon.com, LLC*, Case No. 14-CV-00290-DJH, pending in the United States District Court, Western Division of Kentucky at Louisville.

4.      The purpose of this declaration is to show calculations of potential damages, pre-judgment interest, derivative penalties, and PAGA penalties in *Trevino*.  Such calculations stem from Amazon's exit security check process as alleged in that case. To derive these dollar amounts, I have relied on Amazon's timekeeping and payroll records that were produced during discovery in *Trevino*.  I have also applied generally accepted methods for making projections and extrapolations.

---

[1] Declaration of Brian Kriegler, Ph.D., in Support of Plaintiffs' Motion for Class Certification, dated November 21, 2019.

[2] Reply Declaration of Brian Kriegler, Ph.D., in Support of Plaintiffs' Motion for Class Certification, dated January 30, 2020.

[3] Declaration of Brian Kriegler, Ph.D., in Opposition to Defendants' Notice of Motion and Motion to Exclude Plaintiffs' Expert Dr. Brian Kriegler, dated February 6, 2020.

[4] Videotaped Deposition of Brian Kriegler, Ph.D., December 18, 2019.



5.      Section I.A below includes several tables showing potential damages, interest, and penalties.  I provide my qualifications and fee statement in Section I.B.  Subsequent to Section I, this declaration is organized as follows: Section II covers proposed class definitions and defines alleged Aggrieved Employees.  Section III includes my understanding of the allegations in *Trevino*.  In Section IV, I describe the timekeeping and payroll data that I have analyzed.  In Section V, I describe many of the inputs that are used to calculate the potential damages, interest, and penalties reported herein.  Section VI introduces several exhibits showing the derivation of these calculations.  I offer concluding remarks in Section VII.

## A.  Summary of Opinions

6.      The numbers herein are preliminary and potential for three chief reasons.  *First*, my analysis is based on timekeeping and payroll data for a random sample of 10 percent of putative class members in *Trevino* produced by Amazon.  *Second*, said sample of data is current only through mid-2018.  *Third*, my understanding is that *Trevino* is ongoing and that the Court has yet to issue a class certification order.

### 1.  Summary of Potential Damages, Pre-Judgment Interest, and Derivative Penalties in Trevino

7.      **Table 1** below shows <u>aggregate</u> potential damages, pre-judgment interest, and derivative penalties in *Trevino*.  These estimates are shown through May 19, 2020.

Page 2

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

| Table 1: Summary of Potential Classwide Damages, Interest, and Penalties in *Trevino* Through May 19, 2020 ||
|---|---|
| **Description** | **Dollar Amount** |
| *Unpaid Wages for Each Additional Minute of Compensable Time* | |
| Principal damages* | $4,870,976 |
| Pre-Judgment interest** | $1,166,112 |
| Liquidated damages*** | $3,832,004 |
| *Meal Premium Payments Owed for "Controlled" Meal Periods* | |
| Principal damages* | $200,917,727 |
| Pre-Judgment interest** | $48,099,704 |
| *Rest Premium Payments Owed for "Controlled" Rest Periods* | |
| Principal damages* | $223,480,940 |
| Pre-Judgment interest** | $53,501,337 |
| | |
| *California LC § 203 Penalties for Failure to Pay All Wages Upon Termination*** | $168,640,290 |
| *California LC § 226 Penalties for Failure to Issue Adequate Wage Statements**** | $122,196,500 |
| | |
| ***Potential Recovery Across All Class Claims*** | **$826,705,590** |
| | |
| * - Statute of limitation dates back to July 12, 2013. <br> ** - Computed at 7% simple per annum with an accrual date of May 19, 2020. <br> *** - Statute of limitation dates back to July 12, 2014. <br> **** - Statute of limitation dates back to July 12, 2016. ||

8. **Table 2** below shows potential damages, pre-judgment interest, and derivative penalties <u>per average putative class member</u> in *Trevino*. Averages for unpaid wages and meal/rest damages are based on the numbers in Table 1 above divided by an estimated class size of 179,533 people. Average waiting time penalties under § 203 are based on the classwide average daily wage multiplied by 30 days. Average wage statement penalties under § 226 are based on the numbers in Table 1 divided by an estimated wage statement class of 72,520 people.

| Table 2: Summary of Potential Damages, Interest, and Penalties Per Putative Class Member in *Trevino* Through May 19, 2020 ||
|---|---|
| **Description** | **Dollar Amount** |
| | |
| *Unpaid Wages for Each Additional Minute of Compensable Time* | |
| Principal damages* | $27.13 |
| Pre-Judgment interest** | $6.50 |
| Liquidated damages*** | $21.34 |
| | |
| *Meal Premium Payments Owed for "Controlled" Meal Periods* | |
| Principal damages* | $1,119.11 |
| Pre-Judgment interest** | $267.92 |
| | |
| *Rest Premium Payments Owed for "Controlled" Rest Periods* | |
| Principal damages* | $1,244.79 |
| Pre-Judgment interest** | $298.00 |
| | |
| *California LC § 203 Penalties for Failure to Pay All Wages Upon Termination*** | $3,451.50 |
| *California LC § 226 Penalties for Failure to Issue Adequate Wage Statements**** | $1,685.00 |
| | |
| **Potential Recovery Per Person Across All Class Claims** | |
| **Putative Class Members Terminated On/After July 2014** | **$8,121.29** |
| **Putative Class Members Not Terminated On/After July 2014** | **$4,669.79** |
| | |
| * - Statute of limitation dates back to July 12, 2013. ** - Computed at 7% simple per annum with an accrual date of May 19, 2020. *** - Statute of limitation dates back to July 12, 2014. **** - Statute of limitation dates back to July 12, 2016. ||

### 2. Potential PAGA Penalties

9.  My understanding is that the plaintiffs in *Trevino* also are seeking penalties pursuant to California's Private Attorneys General Act (PAGA).  In that regard, I further understand that alleged "Aggrieved Employees" include all Amazon hourly employees in California between July 12, 2016 and Present Day ("PAGA Period").  Lastly, my understanding is that for employees at Amazon warehouses that used

Page 4



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

metal detectors to conduct exit security checks, every employee pay period in which an employee had hours worked is potentially subject to a PAGA penalty.

10. **Table 3** shows <u>aggregate</u> potential PAGA penalties in *Trevino*, subject to different dollar amounts. These numbers are shown for the period July 12, 2016 through May 19, 2020.

| Table 3: Summary of Potential PAGA Penalties in *Trevino*\*, July 12, 2016 through Present Day ||
|---|---|
| **Assumed Dollar Amounts Per Violative Employee Pay Period** | **Dollar Amount** |
| $100 per violation | $163,308,000 |
| $200 per violation | $326,616,000 |
| $250 per violation | $408,270,000 |
| * - Statute of limitation dates back to July 12, 2016. ||

11. **Table 4** below shows PAGA Penalties per alleged Aggrieved Employee in *Trevino*. These calculations are derived using 25 percent of the numbers in Table 3 above and an estimated 72,520 alleged Aggrieved Employees.[5]

| Table 4: Summary of Potential PAGA Penalties Per Alleged Aggrieved Employee in *Trevino,*\* July 12, 2016 through Present Day ||
|---|---|
| **Assumed Dollar Amounts Per Violative Employee Pay Period** | **Dollar Amount** |
| $100 per violation | $562.98 |
| $200 per violation | $1,125.95 |
| $250 per violation | $1,407.44 |
| * - Statute of limitation dates back to July 12, 2016. ||

### B.  Qualifications and Fee Statement

12. I am a Managing Director at Econ One Research, Inc. ("Econ One"), an economic and statistical consulting firm with offices in Houston, Los Angeles, Memphis, New York, Sacramento, the San Francisco Bay Area, Washington, D.C, and India. I earned

---

[5] Under PAGA, my understanding is that 25 percent of penalties go to Aggrieved Employees and the remaining 75 percent goes to the State of California.



Page 5

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

my M.S. and Ph.D. in statistics from UCLA and my B.A. in mathematics/economics
from Claremont McKenna College. I have published several articles in peer-reviewed
journals on the use of sampling and statistical modeling.

13.     I have testified as an expert statistician in both State and Federal courts several dozen
times, of which approximately half were in connection with wage and hour class
actions.  I have been an invited speaker at numerous legal conferences, including the
American Bar Association's Annual Labor and Employment Conference in 2017,[6] the
California Employment Lawyers' Association Annual Conference in 2018,[7] and the
ABA's Fair Labor Standards Legislation mid-winter meeting in 2020.[8]  A true and
correct copy of my curriculum vitae, which includes my testimonial experience, is
attached hereto as **Exhibit 1**.

14.     Econ One currently is being compensated for the time I spend on this matter at $415
per hour. Econ One is being compensated for the time spent by other Econ One
employees on this project at their normal and customary hourly rates.

## II.    Proposed Class/Aggrieved Employee Definitions in *Trevino* that Pertain to Amazon's Security Check Process

### A. Class Definitions

15.     Attached hereto is **Exhibit 2**, which represents my understanding of the classes for
which Plaintiffs seek certification in *Trevino.*  There are 11 proposed classes, of which
the following 7 classes relate to Amazon's exit security check process:

- *Class 1* - Unpaid Wages Class (Hours Worked Claim Based on Control
  of Employees through Mandatory Exit Security Procedures)

- *Class 2* - Unpaid Wages Class (Controlled Meal Periods)

---

[6] "*Representative Evidence in Class Actions after Tyson Foods.*" With Ryan Haggerty, John Ho, Rachhana Srey, and Debra Nahrstadt. 2017 Annual ABA Labor and Employment Law Conference, Washington, DC.

[7] "An Analysis of California Employment-Related Arbitrations," with Genie Harrison and Cliff Palefsky. 31st Annual CELA Conference, San Diego, CA.

[8] "Arbitrating Individual FLSA Claims Under Compulsion," with Matthew Helland, Sally Abrahamson, Eric Su, and Sheri Eisner. 2020 ABA FLSL Midwinter Meeting, Los Cabos, MX.

Page 6



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

- *Class 3* - Meal Period Violations for Controlled Meal Periods

- *Class 4* - Rest Period Violations for Controlled Rest Periods

- *Class 9* - Derivative Wage Statement Class

- *Class 10* - § 203 Class

- *Class 11* - UCL Class

### B. Definition of Alleged Aggrieved Employees

16.     Aggrieved employees include all employees who were subject to any of the violations alleged as to class members on or after July 12, 2016.

## III. Understanding of Applicable Laws and Overview of Plaintiffs' Allegations in *Trevino* that Pertain to Amazon's Security Check Process

### A. Alleged Compensable Time Off-the-Clock

#### 1. Understanding of California Law

17.     I understand that employers generally are required to pay employees for all "hours worked"[9] and that "hours worked" includes "time during which an employee is subject to the control of an employer."[10] I further understand that this can include time spent before and after scheduled shift times.

---

[9] Wage Order No. 7 provides that "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (8 Cal. Code Regs. § 11070, subd. 4(B).)

[10] See IWC Wage Order 7, ¶2G ("'Hours worked' means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."). URL: https://www.dir.ca.gov/iwc/wageorders2005/iwcarticle7.html.



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

### 2. *Understanding of Off-the-Clock Allegations in Trevino*

18.   Plaintiffs contend that Amazon only paid the putative class for some, but not all, hours that they were under Amazon's control. The basis for these allegations stems from three primary reasons:

a.   *First*, at specific facilities, employees were required to go through a metal detector security check each time they exited.[11] These security checks were performed after employees clocked out.[12] Hereinafter I refer to said off-the-clock time as "Security Check Time." Additionally, I use the term "Facilities with Metal Detectors"[13] to refer to locations that utilize metal detectors during the security check process.

b.   *Second*, at Facilities with Metal Detectors, employees allegedly clocked in/out at a location different (and on a different device) from where they swiped to enter/exit the facility. The time spent after swiping in until clocking in at the time clock station was off-the-clock. Likewise, the time spent after clocking out at the time clock station and swiping out to exit the facility was off-the-clock. Hereinafter, the term "Controlled Pre/Post-Shift Time" refers to the entire time between the facility entrance/exit and the time clock station. Controlled Pre/Post-Shift Time includes, but is not limited to, Security Check Time.

c.   *Third,* at Facilities with Metal Detectors and as a result of the alleged mandatory security check process, Amazon allegedly retained "control" over the employees during meal periods inside the facility. Hereinafter, said time is referred to as "Controlled Meal Period Time."

---

[11] *See* Deposition of Cody Carr, dated October 25, 2019 ("Carr Depo."), at 16:6-15, 18:12-19:14.

Based on Mr. Carr's deposition testimony, at the outset I understand the 12 facilities with metal detectors at the security checkpoint to be as follows: LGB8, OAK3, OAK4, OAK6, ONT2, ONT3, ONT6, ONT8, ONT9, PCA1, SJC7, and SMF1. *See* Carr. Depo., at 35:19-36:3, 37:7-15, 37:21-38:14, 38:20-39:3, 39:16-25, 40:21-24, 41:2-7, 41:10-20, 41:23-42:13, and 42:24-43:22.

[12] *See* Carr Depo., at 71:11-72:19.

[13] My understanding is that there are **at least** 12 such facilities based on the testimony of Amazon's designated Rule 30(b)(6), as follows: LGB8, OAK3, OAK4, OAK6, ONT2, ONT3, ONT6, ONT8, ONT9, PCA1, SJC7, and SMF1.



19. Thus at Facilities with Metal Detectors, the plaintiffs in *Trevino* allege that the following are compensable because they are under the control of the employer: (i) Controlled Pre/Post-Shift Time (which includes Security Check Time), and (ii) Controlled Meal Period Time.  Hereinafter the term "Combined Controlled Time" refers to the combination of Controlled Pre/Post-Shift Time and Controlled Meal Period Time.

### B. Meal Periods

#### 1. Understanding of California Laws

20. **Table 5** below shows my understanding of the number of 30-minute duty free, uncontrolled, uninterrupted meal periods that California employers are required to provide to non-exempt employees each shift pursuant to the applicable Wage Order and the California Supreme Court's *Brinker* opinion.[14]

| Table 5: Number of Meal Periods Employer is Required to Provide to Each Putative Class Member on each Shift | |
| --- | --- |
| **Number of Hours in a Non-Exempt Employee's Shift** | **Number of Meal Periods Earned** |
| 5 hours or less | 0 |
| Over 5 hour and up to 10 hours | 1 |
| Over 10 and up to 15 hours | 2 |
| Over 15 and up to 20 hours | 3 |

21. I further understand that when California non-exempt employees are not provided all of their timely 30-minute uninterrupted and uncontrolled meal breaks in a shift, they are owed one hour of pay at their regular rate of compensation (hereinafter "Meal Period Premium Payment"). By way of example, this means that the employee is

---

[14] "We conclude that, absent waiver, section 512 requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work… [t]he statute requires a first meal period no later than the start of an employee's sixth hour of work…Accordingly, first meal periods must start after no more than five hours... [Section 512] require[s] a second meal period after no more than 10 hours of work in a day, *i.e.*, no later than what would be the start of the 11th hour of work..." *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal. 4th ("*Brinker*") at 1004, 1035, 1037-1039, 1041.



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

owed one hour of compensation--*i.e.*, a single Meal Period Premium Payment--under each of the following scenarios:

- The employee is under the employer's control for more than 6 hours and is not provided with any "uncontrolled" 30-minute meal periods.

- The employee is under the employer's control for more than 10 hours and is not provided with any "uncontrolled" 30-minute meal periods.

- The employee is under the employer's control for more than 10 hours, is provided with a 30-minute "uncontrolled" meal period within the first five hours but is not provided with an "uncontrolled" 30-minute second meal period within the first 10 hours.

### 2. Understanding of Meal Period Allegations in Trevino

22.     At Facilities with Metal Detectors, I understand that the plaintiffs in *Trevino* allege that Amazon required all employees to undergo a security check before exiting at specific facilities in order to take an off-site meal break.[15]  Thus, Amazon allegedly retained "control" over the employees during meal periods inside the facility.  Plaintiffs contend that such policy/practice violated Amazon's obligation to provide "uncontrolled" meal periods.  Within this framework, Plaintiffs are seeking Meal Period Premium Payments for each shift in which at least one earned meal period was "controlled."

## C. Rest Periods

### 1. Understanding of California Laws

23.     **Table 6** below shows the number of 10-minute uninterrupted and "uncontrolled" rest periods that California employers are required to authorize and permit non-exempt employees to take each shift, per my understanding of California law.[16]

---

[15] *See* Carr Depo., at 16:6-15, 18:12-19:14, and 24:5-25.

[16] "Employees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Brinker* at 1020.



Page 10

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

| Table 6: Number of Rest Periods Employer is Required to Authorize and Permit to Each Putative Class Member on each Shift | |
|---|---|
| **Number of Hours in a Non-Exempt Employee's Shift** | **Number of Rest Periods Earned** |
| Under 3 hours, 30 minutes | 0 |
| Between 3 hours, 30 minutes and up to 6 hours | 1 |
| Over 6 hours and up to 10 hours | 2 |
| Over 10 hours and up to 14 hours | 3 |

24.     I understand that when non-exempt employees working in California are not authorized and permitted to take a paid and timely 10-minute, duty-free, "uncontrolled," and uninterrupted rest break when required by California law, they are owed one hour of pay at their regular rate of compensation (hereinafter, "Rest Period Premium Payment"). By way of example, this means that the employer owes the employee one hour of pay--*i.e.*, *a single* Rest Period Premium Payment--under each of the following scenarios:

- The employee is under the control of the employer for at least 3.5 hours but is not authorized/permitted to take an "uncontrolled" rest period

- The employee is under the control of the employer for more than 6.0 hours but is not authorized/permitted to take any "uncontrolled" rest periods

- The employee is under the control of the employer for more than 6.0 hours but is authorized/permitted to take only one "uncontrolled" rest period

- The employee is under the control of the employer for more than 10.0 hours but is authorized/permitted to take fewer than three "uncontrolled" rest periods

### 2. Understanding of Rest Period Allegations in Trevino

25.     At Facilities with Metal Detectors, I understand that Amazon required all employees to undergo a security check before exiting at specific facilities in order to take an off-

Page 11



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

site rest break.[17]  Thus, Amazon allegedly retained "control" over the employees during rest periods inside the facility.  The plaintiffs in *Trevino* contend that such policy/practice violated Amazon's obligation to authorize and permit "uncontrolled" rest breaks.

### D. § 203 Waiting Time Penalties

#### 1. Understanding of California Laws

26.  My understanding is that California law requires employers to pay all wages due to its employees within 72 hours of their final date of employment.  I further understand that former employees are owed up to 30 days of wages if some wages are unlawfully withheld.

#### 2. Waiting Time Allegations in Trevino

27.  I understand that the plaintiffs in *Trevino* allege that waiting time penalties are owed as a derivative claim to the extent that they prevail on claims pertaining to (i) unpaid wages and/or (ii) unpaid Meal/Rest Premium Payments.

### E. § 226 Wage Statement Penalties

#### 1. Understanding of California Laws

28.  My understanding is that California law requires that employers provide employees with wage statements containing specific information, including but not limited to hours worked and wages owed.  I further understand that penalties are owed for each instance in which this information is not accurately and sufficiently shown on a wage statement.

#### 2. Wage Statement Allegations in Trevino

29.  The plaintiffs in *Trevino* contend that wage statement penalties are owed to the extent they prevail on the claims pertaining to (i) unpaid wages and/or (ii) unpaid Meal/Rest Premium Payments.

---

[17] *See* Carr Depo., at 16:6-15, 18:12-19:14, and 24:5-25.



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

## IV.   Data Analyzed to Date in *Trevino*

### A. Timekeeping Production

30.   Amazon's "Timekeeping Production" in *Trevino* consists of data for 7,718 employees. In that litigation, I understand that this purportedly comprised a random sample of 10 percent of putative class members through mid-2018.  I further understand that (i) all time clock stations are located inside the Amazon warehouses, and (ii) such locations are different than the security exit checkpoint(s).  In total, these data include 1,313,687 employee shifts for 7,715 employees spanning July 12, 2013 through July 1, 2018.[18]

31.   Within the Timekeeping Production, there are 7,373 employees who worked at one or more Facility with Metal Detectors.  These people had a total of 1,257,608 shifts at these facilities.  Section V below includes details about how I have estimated total numbers of employees and employee shifts through Present Day.

### B. Payroll Production

32.   Amazon's "Payroll Production" consists of earnings data for 7,726 putative class members in *Trevino v. Amazon*.[19]  With few exceptions, this data file includes information for the same set of employees as in the Timekeeping Production.  For each pay period and putative class member, the Payroll Production includes identification numbers, rates of pay, hours worked, and various categories of earnings. Across all putative class members, these data include 197,135 employee pay periods spanning the period from July 19, 2013 through June 29, 2018.

33.   Within the Payroll Production, there are 7,365 employees who worked at one or more Facilities with Metal Detectors.  They had a total of 183,245 employee pay periods.  Section V below includes details about how I have estimated total numbers of employees and employee pay periods through Present Day.

---

[18] I have excluded any "ambiguous" timekeeping records from my data analysis and calculations. Such records include shifts with inconsistent punch in and out times.  The excluded records account for less than 0.1 percent of all shifts.

[19] *See* TRE-AMA 001199-1200.



## V.  Calculations Used to Derive Potential Damages, Interest, Derivative Penalties, and PAGA Penalties in *Trevino*

34.    This section includes details about certain calculations that serve as inputs for potential damages, interest, and penalties in *Trevino*.

### A.  The Estimated Number of Putative Class Members

35.    The estimated number of putative class members is used to derive potential damages, interest, and penalties owed to each class member on average (*i.e.*, per capita).  At the outset, this number is estimated to be **179,533 people**.  This number is computed using five steps:

- *Step 1* - Identify the number of employees in the Timekeeping Production.  There are 7,715 people in Amazon's data between 7/12/2013 and 7/1/2018.

- *Step 2* - Identify the number of employees in the Timekeeping Production who worked at one or more Facility with Metal Detectors during the same time period.  There are 7,373 people meeting this condition.

- *Step 3* - Use Steps 1 and 2 to calculate the proportion of people at Amazon in California who worked at one or more Facility with Metal Detectors.  This is equal to 7,373 / 7,715 = 95.57 percent.

- *Step 4* - Identify the purported total number of employees at Amazon in California.  My understanding is that such number is approximately 187,855 for the period May 2013 to Present Day.[20]  Such date range aligns closely with the date range in *Trevino*.

- *Step 5* - Multiply the proportion in Step 3 by the number of people in Step 4.  This equals 95.57% x 187,855 = 179,533 people.

---

[20] Declaration of Mark R. Thierman in Support of Preliminary Approval of Class Action Settlement, dated April 30, 2020 (Dkt. 265-2), ¶ 48 ("The number of Post-May 2013 Subclass Member shall be determined by reference to Defendants' records but is currently estimated to be 187,855 persons.").

Page 14



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

### B. The Average Hourly Rates Per Employee

36. The average hourly rate in the Payroll Production from July 19, 2013 through June 29, 2018 is used to derive unpaid wages for alleged Combined Controlled Time. Based on the Payroll Production, this average hourly rate is **$13.17**.

### C. The Estimated Numbers of Shifts Between July 12, 2013 and Present Day

37. Shift counts qualifying for straight time, overtime, and double time are used to derive potential unpaid wages for each additional minute of Combined Controlled Time. Of the 1,257,608 shifts in the Timekeeping Production, 555,718 shifts are under 10 hours qualifying for straight time, 700,543 shifts are at least 10 and less than 12 hours qualifying for daily overtime, and 1,347 shifts are at least 12 hours qualifying for double time. Given that the data production in *Trevino* constitutes a 10 percent sample through July 1, 2018, it follows the estimated numbers of shifts during this date range are multiplied by 10.

38. Additionally, my understanding is that the *Trevino* case is ongoing such that the relevant date range extends to Present Day. As of the date of this report, the relevant date range has increased 37.9 percent.[21] Thus at the outset, the estimated numbers of employee shifts between July 12, 2013 through May 19, 2020 are equal to the following:

- 555,718 x 10 x (1 + 0.379) = **7,663,351 straight time shifts**

- 700,543 x 10 x (1 + 0.379) = **9,660,488 daily overtime shifts**

- 1,347 x 10 x (1 + 0.379) = **18,575 daily double time shifts**

### D. The Estimated Numbers of Shifts Over 6.0 and of at Least 3.5 Hours

39. Shift counts over 6.0 and of at least 3.5 hours are used to derive potential meal/rest period damages. Of the 1,257,608 shifts in the Timekeeping Production, 1,126,031 were over 6.0 hours qualifying for one meal period, and 1,230,525 were at least 3.5

---

[21] There are 1,816 days between July 12, 2013 and July 1, 2018. There are 688 days between July 2, 2018 and May 19, 2020. 688 / 1,816 = 37.9 percent.



hours qualifying for one rest period.  As of the date of this report, the relevant date range has increased 37.9 percent.[22]  Thus, among all putative class members in *Trevino* between July 12, 2013 and May 19, 2020, there are:

1,126,031 x 10 x (1 + 0.379) = **15,527,967 employee shifts over 6.0 hours**,[23] and

1,230,525 x 10 x (1 + 0.379) = **16,968,940 employee shifts of at least 3.5 hours**.[24]

### E.  Pre-Judgment Interest Across the Putative Class

40.   A pre-judgment interest rate is applied to unpaid wages for alleged (i) Combined Controlled Time (ii) Meal/Rest Premium Payments owed.  Plaintiffs' counsel in *Trevino* has asked me to calculate potential pre-judgment interest at 7 percent simple per annum.  For example, interest is equal to 35 percent on alleged damages from 5 years ago (5 x 7%).  Interest is equal to 14 percent on alleged damages from 2 years ago (2 x 7%).

41.   As of the date of this declaration, the *Trevino* class period includes pay periods between July 19, 2013 and May 19, 2020.  The "midpoint" of this date range is 3.42 years ago (December 18, 2016).  Therefore, estimated pre-judgment interest on average is the following:

7% x 3.42 years on average = **23.94%.**

---

[22] *See* ¶ 38 and fn. 21 above.

[23] Potential meal period damages are offset by 19,743 Meal Premium Payments in the Payroll Production. Extrapolated to the class period to Present Day, there are an estimated total of 19,743 x 10 x (1 + 0.379) = 272,256 Meal Premium Payments.  Thus, meal period damages are computed based on a "net" difference of 15,527,967 - 272,256 = 15,255,711 shifts in which a Meal Premium Payment is allegedly owed.

[24] There do not appear to be any Rest Premium Payments in the Payroll Production.  Therefore, a Rest Premium Payment allegedly is owed for each shift of at least 3.5 hours.



### F.  Calculations Related to Potential Liquidated Damages

42.  Estimates for the number of shifts and average hourly rate on/after July 12, 2014 are used to calculate potential liquidated damages.  The derivation of each number is described in this section.

#### 1.  The Estimated Number of Shifts On/After July 12, 2014

43.  Between July 12, 2014 and July 1, 2018 (i.e., 3.97 years), there are 1,184,388 shifts in the Timekeeping Production.  Since the end of the Timekeeping Production, the relevant date range for liquidated damages extended to Present Day and increased 47.4 percent.[25]  Thus at the outset, the estimated number of employee shifts between July 12, 2014 through May 19, 2020 is equal to the following:

$$1,184,388 \text{ x } 10 \text{ x } (1 + 0.474) = \textbf{17,457,879 employee shifts.}$$

#### 2.  The Average Hourly Rate Among Employees On/After July 12, 2014

44.  Based on the Payroll Production, this average hourly rate between July 12, 2014 and July 1, 2018 is **$13.17**.

### G.  Calculations Related to § 203 Waiting Time Penalties

45.  Estimates for the number of employees terminated after July 12, 2014 and their average daily wage are used to calculate § 203 waiting time penalties.  The derivation for each number is described in this section.

#### 1.  The Estimated Number of Employees Terminated On/After July 12, 2014

46.  The Timekeeping and Payroll Productions collectively include 4,886 putative class members who (i) had hours worked at one or more Facilities with Metal Detectors on or after July 12, 2014, and (ii) did not appear to have any hours worked or earnings on or after May 1, 2018 (*i.e.*, approximately 2 months before the end of data production).  Given that the data production constituted a 10 percent sample of

---

[25] There are 1,451 days between July 12, 2014 and July 1, 2018.  There are 688 days between July 2, 2018 and May 19, 2020.  688 / 1,451 = 47.4 percent.



putative class members, it follows that the estimated number of likely former employees as of mid-2018 is **48,860** (*i.e.*, 10 x 4,886).[26]

### 2. The Estimated Average Daily Wage Among Persons Eligible for Waiting Time Penalties

47.     The average daily wage for terminated employees is derived using four steps:

- *Step 1* - Restrict Timekeeping and Payroll Productions to the time period July 12, 2014 through July 1, 2018 and to the 4,886 people described in paragraph 46 above.

- *Step 2* - Among the people and during the time period described in Step 1, compute the average shift length according to the Timekeeping Production.  This is equal to 8.96 hours

- *Step 3* - Among the people and during the time period described in Step 1, compute the average base rate according to the Payroll Production. This is equal to $12.84.

- *Step 4* - Multiply the numbers obtained in Steps 2 and 3 to get the average daily wage.  This is equal to 8.96 x $12.84 = **$115.05**.

### H. Calculations Related to PAGA and § 226 Wage Statement Penalties

48.     My understanding is that the relevant date range for PAGA and § 226 penalties is July 12, 2016 to Present Day.  Collectively, there are two data inputs for these penalties: (i) the number of employees, and (ii) the number of pay periods per employee.

49.     Six steps are used to derive the potential number of employee pay periods that are subject to § 226 and PAGA penalties from July 12, 2016 to Present Day:

- *Step 1* - Calculate the length of the relevant date range.  This equals 3.85 years.

- *Step 2* - Identify the date that is 3.85 years prior to the last date in Amazon's data production.  Such date is August 23, 2014.

---

[26] This classwide total almost surely is understated because it does not include any employees who were terminated after July 1, 2018.

Page 18



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

- *Step 3* - Count the number of employees between August 23, 2014 and July 1, 2018.  There are 7,252 such employees.

- *Step 4* - Multiply the number of employees in Step 3 by 10 because the data production in *Trevino* constitutes a 10 percent sample.  This represents the estimated number of persons potentially qualifying for PAGA and § 226 penalties.  This equals **72,520 people**.

- Step 5 - Calculate the number of employee pay periods for the 7,252 people in Step 3.  There are 163,308 such employee pay periods.

- *Step 6* - Multiply the number of employee pay periods in Step 5 by 10 because the data production in *Trevino* constitutes a 10 percent sample.  This represents the estimated number of employee pay periods subject to PAGA penalties.  Thus, the estimated number of employee pay periods is **1,633,080**.

Two additional steps are used to derive potential § 226 wage statement penalties per average class member.

- *Step 7* - Calculate potential § 226 penalties for each of the 7,252 employees in Step 3.  These are equal to $4,000 if they have 41+ wage statements.  Otherwise, they are equal to $50 + $100 x (# of wage statements - 1) such that the dollar amount does not exceed $4,000.[27]

- *Step 8* - Use Steps 3 and 7 to estimate the average § 226 penalties per person.  This equals **$1,685.00 per putative class member.**

## VI.   Potential Damages, Interest, and Penalties in *Trevino*

50.   **Exhibit 3** includes the formulas that I have used to calculate potential unpaid wages, pre-judgment interest, liquidated damages, derivative penalties, and PAGA penalties.

51.   **Exhibit 4** collectively shows the derivation of potential principal damages, pre-judgment interest, derivative penalties, and PAGA penalties.  Dollar amounts are

---

[27] If an employee has 40 wage statements qualifying for § 226 penalties, then the calculation is $50 + $100 x (40 - 1) = $3,950.

Page 19



*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

listed as estimated totals and per "average" putative class member/alleged Aggrieved Employee.  There are six sub-exhibits, as follows:

- **Exhibit 4A** shows potential damages and pre-judgment interest for each additional minute of Combined Controlled Time, *i.e.*, compensable time off-the-clock.

- **Exhibit 4B** shows potential liquidated damages for each additional minute of Combined Controlled Time.

- **Exhibit 4C** shows potential damages and pre-judgment interest for potential meal/rest period violations.

- **Exhibit 4D** shows potential derivative penalties under § 203.

- **Exhibit 4E** shows potential derivative penalties under § 226.

- **Exhibit 4F** shows potential PAGA penalties.

## VII.  Concluding Remarks

52.     Potential damages, interest, and penalties are calculated using a combination of (i) my understanding of the allegations in *Trevino* and (ii) Amazon's historical data.  I have also utilized widely accepted methods for statistical extrapolation when working with a subset of all possible records.  The numbers reported herein are preliminary given the facts that (i) the Timekeeping and Payroll Productions pertained to a random sample of putative class members through mid-2018, (ii) the putative class period in *Trevino* is ongoing, and (iii) the *Trevino* case is ongoing.

53.     The computational programs used to derive the numbers herein are available upon request.  Should additional, pertinent information become available to me, I am amenable to incorporating it into my future calculations and opinions.

Page 20

econ ONE ————————————————————————————————————————

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

5/19/2020

I declare the foregoing to be true under penalty of perjury of the laws of the United States of America.  Executed this 19th day of May, 2020, at Los Angeles, California.

Brian Kriegler, Ph.D.
May 19, 2020

Page 21

*Amazon FLSA Wage & Hour Litigation* • Declaration of Brian Kriegler, Ph.D.

# EXHIBIT

# 1

**DR. BRIAN KRIEGLER**
*Managing Director*
**Los Angeles, California**
**Tel: 213 624 9600**
**Email:**
**bkriegler@econone.com**



**Brian Kriegler** is a Managing Director at Econ One Research in Los Angeles, California.  He earned his M.S. and Ph.D. in statistics from UCLA, and he earned his B.A. in mathematics/economics from Claremont McKenna College. He has published several articles in peer-reviewed journals on the use of sampling and statistical modeling.  To date, he has also contributed eight articles to Law360.

Dr. Kriegler has testified as an expert statistician in both State and Federal courts several dozen times, of which approximately half were in connection with wage and hour class actions.  He has also testified in the areas of civil rights, consumer claims, and Medicare fraud.  Dr. Kriegler has been an invited speaker in multiple panels, including at the ABA's Annual Labor and Employment Conference in 2017, the FLSL Midwinter Meeting in 2020, and the Annual Conference for the California Employment Lawyers Association in 2018.

Noteworthy cases in which Courts have relied directly on Dr. Kriegler's analysis/opinions include:

- *Alberts v. Aurora* - Employees alleged missed meal/rest periods and off-the-clock work

- *Senne v. Major League Baseball* - Minor league baseball players alleged minimum wage and overtime violations

- *Benton v. TNS* - Cell phone tower installers alleged underpaid overtime and missed meal/rest periods

- *Hamilton v. Walmart* - Fulfillment center employees alleged underpaid overtime and non-compliant meal periods

- *Magadia v. Walmart* - California nonexempt employees alleged various wage statement violations

- *Espinoza v. East West Bank* - Plaintiff and the putative class alleged they were misclassified as salary exempt employees

**DR. BRIAN KRIEGLER**
*Managing Director*

**EDUCATION**

Ph.D., Statistics, University of California, Los Angeles
M.S., Statistics, University of California, Los Angeles
B.A., Mathematics-Economics, Claremont McKenna College

**WORK EXPERIENCE**

*Econ One Research, Inc.*
Managing Director, January 2015 to Present
Statistician, August 2008 - December 2014

*Claremont McKenna College (Silicon Valley Program)*, Guest Lecturer
Econ 123, Quantitative Data Analysis, *March 2016*
Econ 123, Quantitative Data Analysis, *October 2015*

*University of Pennsylvania Department of Statistics,* Post Doctoral
Researcher, 2007 - 2008

*UCLA Department of Statistics,* Lecturer
Statistics 10, Introduction to Statistical Reasoning, Winter 2008
Statistics 130B, Statistical Analysis with SAS, Summer 2007

*Self-Employed*, Statistical Consultant*,* 2004 - 2008

*Claremont McKenna College Reed Institute for Applied Statistics,* Post
Doctoral Researcher, 2007

*RAND Corporation,* Summer Associate*,* 2006

*UCLA Department of Statistics,* Graduate Student Researcher*,*
2004 - 2006

*UCLA Department of Statistics,* Technology Teaching Assistant
Coordinator, 2004 - 2005

*Lockheed Martin Missiles and Space,* Associate Reliability Engineer,
2001 - 2003

**INVITED PRESENTATIONS**

"Arbitrating Individual FLSA Claims Under Compulsion," with Matthew
Helland, Sally Abrahamson, Eric Su, and Sheri Eisner. 2020 ABA
FLSL Midwinter Meeting, Los Cabos, MX.

"An Analysis of California Employment-Related Arbitrations," with Genie
Harrison and Cliff Palefsky. 31st Annual CELA Conference, San
Diego, CA.

**DR. BRIAN KRIEGLER**
*Managing Director*

"*Representative Evidence in Class Actions after Tyson Foods.*" With Ryan Haggerty, John Ho, Rachhana Srey, and Debra Nahrstadt. 2017 Annual ABA Labor and Employment Law Conference, Washington, DC.

"*Effective Use of Statistical Evidence in Employment Class Action Litigation: Practical Guide in 2017.*" Webinar presentation through The Knowledge Group with Eric Savage, Dubravka Tosic, Ph.D., and Paul White, Ph.D.

"*Counting the Homeless in Los Angeles County.*" Joint Statistical Meetings, Seattle, WA, August 2006.

"*A Southpaw Secret: Are Their Salaries Consistent with Their Contributions to Team Performance*?" Claremont McKenna College, Claremont, CA, March 2002.

"*Mixing Component and System Data in Reliability Assessment.*" United States Navy Complex, Washington, DC, July 2001.

## PUBLISHED ARTICLES & PAPERS

*"An Exploration and Validation of Confidence Intervals."* Law360 (July 15, 2019).

*"Practitioner's Guide to Stratified Random Sampling."* Law360 (Nov 30-Dec 3, 2018).
Part 1: Four Reasons to Select a Stratified Random Sample
Part 2: Three Misconceptions About Stratified Random Sampling

*"Practitioner's Guide to Statistical Sampling."* Law360 (Jan 8-11, 2018).
*Part 1*: Validating Random Sampling and the Central Limit Theorem
*Part 2*: Resampling and Bootstrapping: A Method for Determining Confidence Intervals from Small Datasets
*Part 3*: Making Valid Statistical Inferences When Sample Selections Are Missing
*Part 4*: Three Myths About Random Sampling Requirements

*"Delving Deeper Into Duran."* Law360 (Oct 1, 2014)*.*

*"Small Area Estimation of the Homeless Population in Los Angeles County: An Application of Cost-Sensitive Stochastic Gradient Boosting,"* Annals of Applied Statistics. Vol. 4 (3), 1234-1255, with Berk, R. (2010).

*"Counting the Homeless in Los Angeles County."* IMS Collections. Probability and Statistics: Essays in Honor of David A. Freedman, Vol. 2. 127-141, with Berk, R. and Ylvisaker, D. (2008).

**DR. BRIAN KRIEGLER**
*Managing Director*

*"Cost-Sensitive Stochastic Gradient Boosting Within a Quantitative Regression Framework,"* Ph.D. Dissertation, Committee Chair: Richard Berk. Portions of this research have been implemented into the "gbm" library in R (open source statistical software) available at www.r-project.org (2007).

*"Forecasting Dangerous Inmate Misconduct: An Application of Ensemble Statistical Procedures."* Journal of Quantitative Criminology, 22(2). 131-145, with Berk, R. and Baek, J.H. (2006).

*"Comparison of Achievement of 8th Graders Who Used the MathScape Curriculum to Those Who Used a More Traditional Curriculum,"* Creative Publications (2001).

*"Estimation of Component and System Reliabilities Using Binomial and Exponential Data and Various Test Methods,"* Undergraduate Senior Thesis, Chair: Janet Myhre (2001).

## REPRESENTATIVE ENGAGEMENTS

### Employment

Minimum wage and underpaid overtime
*Senne v. Major League Baseball* - To date, retained by the plaintiffs to propose a method for estimating hours worked and calculating damages. Analyzed employee transactional/payroll data, Google Maps, and the Minor League Baseball website to "re-create" minor league baseball players' workdays. Case is pending.

Missed breaks and off-the-clock work
*Alberts v. Aurora* - To date, retained by the plaintiffs to (i) analyze historical timekeeping and payroll records, along with survey data, and (ii) propose damages model at trial. Case is pending.

Missed breaks and underpaid overtime
*Benton v. Telecom Network Specialists* - To date, retained by the plaintiffs to (i) analyze historical timekeeping and payroll records from numerous staffing companies, and (ii) calculate classwide damages. Case is pending.

*DLSE v. Adat Shalom Board and Care* - Retained by the defendant to evaluate the sampling design carried out by the DLSE. Case is pending.

Regular rate
*Magadia v. Walmart* - Retained by the plaintiffs to analyze payroll and bonus data. Calculated penalties stemming from various wage statement violations.

**DR. BRIAN KRIEGLER**
*Managing Director*

Non-compliant breaks and underpaid overtime
*Hamilton v. Walmart* - Retained by the plaintiffs to analyze timekeeping data, payroll data, and security camera footage.  Calculated damages and penalties stemming from various wage and hour violations.

Missed breaks, underpaid overtime, and off-the-clock work
*Landon Fulmer v. Golden State Drilling* - Retained by the plaintiffs to calculate classwide damages using class member deposition testimony, timekeeping, and payroll records.

Misclassification
*Boyd v. Landsafe* - Retained by the plaintiffs to calculate classwide damages using survey data, activity logs, and payroll records.  Also worked with survey experts to design and implement a questionnaire to estimate hours worked.

*Espinoza v. East West Bank* - Retained by the defense to evaluate declarations and deposition testimony of potential class members prior to class certification.  Opined on Plaintiffs' experts' approach regarding the proposed use of surveying and sampling.

Seating
*Lampkins v. Chase Bank* - Retained by the plaintiff to analyze the length of time between transaction, the frequency of various types of transactions, and timekeeping data.

Discrimination
*Capen v. Temecula Preparatory School* - Retained by the plaintiff to conduct a statistical analysis of hiring and terminating practices at a charter school.

*Horvath v. Western Refining* - In a single plaintiff age discrimination case, conducted a statistical analysis of hiring and terminating practices at a logistics company.

Compliance audit
In the context of a pending class action, retained by a large restaurant chain to estimate how long various job activities took to complete.  Worked with restaurant industry expert to develop a survey of kitchen managers.

**Civil Rights**

Over-detention and strip searches
*Barnes v. District of Columbia* - Retained by the plaintiffs to analyze inmate databases and to identify potentially impacted individuals.  Also constructed a sampling design for selecting inmate files, and subsequently extrapolated the number of over-detentions and number of post-release strip-searched inmates based on a criminal justice expert's analysis of the sample.

**DR. BRIAN KRIEGLER**
*Managing Director*

Strip searches
: *Craft v. San Bernardino* - Retained by the plaintiffs to analyze large databases to identify inmates who were subjected to strip searches (i) prior to their arraignment, (ii) after being ordered released, and/or (iii) in large groups.  Collaborated with system administrators and officers from the law enforcement agency to construct criteria for identifying class members.

## False Claims Act

Medicare reimbursements, disgorgement
: Retained by the relator, who alleged that a pharmaceutical company offered illegal kickbacks to doctors for prescribing specific drugs and inflated revenue for the pharmaceutical company.  Constructed damages model that was used for settlement proceedings.

Medicare reimbursements
: *U.S. ex rel. Carlo Santa Ana v. Winter Park Urology* - Retained by the relator, who alleged that the medical provider submitted improperly up-coded Medicare claims. Extrapolated damages based on a random sample of patients' data.

## Antitrust

Large transactional data analysis
: *Marchbanks v. Comdata* - In a consulting role to the testifying expert to manage approximately one billion proprietary debit card transactions. Collaborated with class administrator to locate class members and calculate damages for settlement purposes.

## Breach of Contract

Unjust enrichment
: *McAllister v. St. Louis Rams* - Retained by the plaintiff, who alleged that season ticket holders were entitled to a refund for their personalized seating license.  Developed a damages model and sampling methodology.

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| **Employment** | | | | | |
| 1. Richard Fairfield v. Advantage Rent-A-Car | Superior Court of the State of California, for the County of Los Angeles | BC342461 | Declaration<br>Declaration<br>Declaration<br>Deposition<br>Supplemental Declaration | December 2006<br>February 2007<br>March 2007<br>March 2007<br>May 2007 | Plaintiff |
| 2. Elveta Louise Francis v. State of California Department of Corrections | Superior Court of the State of California, for the County of Los Angeles | BC302856 | Declaration<br>Declaration | January 2007<br>May 2010 | Plaintiff |
| 3. David Lubocki v. ZipRealty, Inc. | U.S. District Court, Central District of California | CV 07 2959 SJO (JCx) | Declaration | September 2007 | Plaintiff |
| 4. Eric Moore v. Roadway Express, Inc. et al. | U.S. District Court, Central District of California | 2:09-CV-01588 RBL (Opx) | Declaration | May 2010 | Plaintiff |
| 5. Maria Martinez. v. Jatco, Inc. | Superior Court of the State of California, for the County of Alameda | RG08397316 | Deposition<br>Trial | September 2011<br>December 2011 | Defendant |
| 6. Valerie Alberts v. Aurora Behavioral Health Care | Superior Court of the State of California, for the County of Los Angeles | BC419340 | Declaration<br>Deposition<br>Deposition<br>Supplemental Declaration<br>Declaration<br>Deposition<br>Reply Declaration | May 2012<br>July 2012<br>October 2012<br>April 2013<br><br>December 2017<br>February 2018<br>April 2018 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 7. | Patrick Santiago v. Amdocs, Inc. | U.S. District Court, Northern District of California | 3:10-CV-04317 SI | Declaration Deposition | April 2013 May 2013 | Plaintiff |
| 8. | Christina Espinoza v. East West Bank | Superior Court of the State of California, for the County of Los Angeles | BC502166 | Declaration Deposition | November 2014 February 2015 | Defendant |
| 9. | Crystal Brock v. Living Spaces Furniture; and Ronald Monroe v. Living Spaces Furniture | Superior Court of the State of California, for the County of Los Angeles | BC498415 / BC521299 | Declaration | December 2014 | Plaintiff |
| 10. | Marie Minns, Kemberly Briggs v. Advanced Clinical Employment Staffing LLC, et al. | U.S. District Court, Northern District of California | 3:13-03249-SI | Declaration Supplemental Declaration | February 2015 March 2015 | Plaintiff |
| 11. | Kimberly Murphy v. CVS Caremark Corporation, et al. | Superior Court of the State of California, for the County of Los Angeles | BC464785 | Declaration Deposition | March 2015 April 2015 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 12. | <u>Lorenzo Benton v. Telecom Network Specialists</u> | Superior Court of California, for the County of Los Angeles | BC354230 | Declaration Deposition Declaration Supplemental Declaration Supplemental Declaration Supplemental Declaration Reply Declaration Declaration Deposition Trial | March 2015 May 2015 July 2017 November 2017 March 2018 April 2018 August 2018 August 2019 August 2019 January 2020 | Plaintiff |
| 13. | <u>Connie Capen v. Temecula Preparatory School, et al.</u> | Superior Court for the State of California, for the County of Riverside | MCC 1300098 | Declaration | April 2015 | Plaintiff |
| 14. | <u>Terry P. Boyd v. LandSafe, et al.</u> | U.S. District Court, Central District of California | SA13-CV-00561 DOC (JPRx) | Expert Report | July 2015 | Plaintiff |
| 15. | <u>Valerie Horvath v. Western Refining Wholesale</u> | Superior Court for the State of California, for the County of San Bernardino | CIVDS1311846 | Declaration Deposition | November 2015 January 2016 | Plaintiff |
| 16. | <u>David Kaanaana v. Barrett Business Services, Inc., et al.</u> | Superior Court for the State of California, for the County of Los Angeles | BC496090 | Deposition Declaration Trial | December 2015 January 2016 February 2016 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 17. | James Cole v. CRST, Inc. | U.S. District Court, Central District of California | EDCV 08-1570-VAP(SPx) | Declaration<br>Deposition<br>Expert Report<br>Declaration | January 2016<br>February 2016<br>December 2016<br>February 2017 | Plaintiff |
| 18. | Christopher Williams v. Allstate Insurance Company | Superior Court for the State of California, for the County of Los Angeles | BC382577 | Declaration | March 2016 | Plaintiff |
| 19. | Larry Loffredo v. Astro Spar, Inc. | Superior Court for the State of California, for the County of Los Angeles | BC559611 | Declaration<br>Deposition | March 2016<br>April 2016 | Plaintiff |
| 20. | Aaron Senne v. Office of the Commissioner of Baseball, et al. | U.S. District Court, Northern District of California | 3:14-CV-00608-JCS /<br>3:14-CV-03289-JCS | Declaration<br>Declaration<br>Supplemental Declaration<br>Expert Report<br>Rebuttal Declaration | March 2016<br>April 2016<br>April 2016<br><br>August 2016<br>October 2016 | Plaintiff |
| 21. | Annette Blackwell v. Steve's Plating Corporation | Superior Court for the State of California, for the County of Los Angeles | BC531129 | Deposition | March 2016 | Defendant |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 22. Bertha Sanchez v. St. Mary Medical Center | Superior Court for the State of California, for the County of San Bernardino | CIVDS 1304898 | Declaration Deposition Rebuttal Declaration Rebuttal Declaration Deposition Declaration | April 2016 May 2016 July 2016 April 2018 April 2018 May 2018 | Plaintiff |
| 23. Antoaneta Vatraleva v. Sears, Robuck & Co. | Superior Court for the State of California, for the County of Los Angeles | BC515650 | Declaration | August 2016 | Plaintiff |
| 24. Donald Harrington v. Marten Transport | U.S. District Court, Central District of California | 15-CV-01419-MWF-ASx | Declaration | October 2016 | Plaintiff |
| 25. Roderick Wright v. Renzenberger, Inc. | U.S. District Court, Central District of California | 2:13-CV-06642-FMO-AGR | Expert Report | April 2017 | Plaintiff |
| 26. Holly Attia v. The Neiman Marcus Group, Inc. | U.S. District Court, Central District of California | 8:16-CV-00504 DOC (FFM) | Declaration | April 2017 | Plaintiff |
| 27. Clayton Dezan v. Dignity Health | Superior Court for the State of California, for the County of San Bernardino | CIVDS1516658 | Declaration Deposition Rebuttal Declaration Declaration | April 2017 June 2017 September 2017 August 2019 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 28. Darel D. Woods v. JFK Memorial Hospital, Inc. | Superior Court for the State of California, for the County of Riverside | INC 1205209 | Declaration Deposition Rebuttal Declaration Supplemental Declaration Declaration | May 2017 August 2017 December 2017 June 2018 August 2019 | Plaintiff |
| 29. Isaac Rodriguez v. Nike Retail Services, Inc. | U.S. District Court, Northern District of California | 5:14-CV-1508 BLF | Declaration Deposition Supplemental Declaration | June 2017 June 2017 August 2017 | Plaintiff |
| 30. Eric Chavez v. Converse, Inc. | U.S. District Court, Northern District of California | 15-CV-03746 NC | Declaration Expert Report Declaration Deposition Supplemental Declaration | June 2017 September 2017 September 2017 September 2017 September 2017 | Plaintiff |
| 31. Segundina Morin v. Physicians' Surgery Center of Downey, Inc. | Superior Court of California, for the County of Los Angeles | BC625567 | Deposition | July 2017 | Plaintiff |
| 32. Amber Stewart v. Hat World, Inc. | Superior Court of the California, for the County of San Mateo | CIV 533617 | Declaration Declaration Expert Report Supplemental Expert Report | August 2017 April 2018 January 2019 February 2019 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 33. | Safeway Wage and Hour Cases | Superior Court of the State of California, for the County of Los Angeles | JCCP 4772 | Rebuttal Declaration Deposition | August 2017 September 2017 | Plaintiff |
| 34. | Robyn James and Tiffany Belle v. American Corporate Security, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC525388 | Declaration | August 2017 | Plaintiff |
| 35. | Janae Brown v. Blazin' Wings, Inc | Superior Court of the State of California, for the County of Los Angeles | BC620185 | Declaration Declaration Declaration | October 2017 July 2018 March 2019 | Plaintiff |
| 36. | Ta'quonna Lampkins et al. v. JP Morgan Chase Bank | U.S. District Court, Central District of California | 11-CV-03428-PSG (PLAx) | Expert Report Supplemental Expert Report Expert Report Errata Supplemental Expert Report Errata Deposition | February 2018 March 2018 March 2018 March 2018 March 2018 | Plaintiff |
| 37. | Juan Garcia v. Walmart Stores, Inc. | U.S. District Court, Central District of California | 5:16-CV-01645 TJH (RAOx) | Declaration Reply Declaration Expert Report Deposition Reply Expert Report | February 2018 May 2018 April 2019 April 2019 June 2019 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 38. Landon Fulmer, Jr. v. Golden State Drilling | Superior Court of the State of California, for the County of Kern | S-1500-CV-279707 | Deposition | April 2018 | Plaintiff |
| 39. Emmy Song v. THC-Orange County | U.S. District Court, Central District of California | 8:17-cv-00965-JLS-DFMx | Declaration Deposition | April 2018 May 2018 | Plaintiff |
| 40. Chelsea Hamilton v. Walmart Stores, Inc. | U.S. District Court, Central District of California | 5:17-CV-01415 | Declaration Deposition Reply Declaration Declaration Expert Report Supplemental Expert Report Supplemental Expert Report Deposition Trial | June 2018 July 2018 August 2018 September 2018 September 2018 November 2018 February 2019 March 2019 April 2019 | Plaintiff |
| 41. Nicole Woodworth v. Loma Linda University Medical Center | Superior Court of the State of California, for the County of San Bernardino | CIVDS1408640 | Declaration Declaration Declaration Deposition Declaration Reply Declaration | June 2018 June 2018 December 2018 December 2018 February 2019 February 2019 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 42. Roderick Magadia v. Walmart Associates, Inc. | U.S. District Court, Northern District of California | 17-CV-00062-LHK | Expert Report Deposition Supplemental Expert Report Trial | July 2018 September 2018 October 2018 December 2018 | Plaintiff |
| 43. Christopher Wilson v. Harbor Rail Services | Superior Court of the State of California, for the County of Los Angeles | BC598348 | Declaration | July 2018 | Plaintiff |
| 44. Candice Ritenour v. Carrington Mortgage Services, LLC | U.S. District Court, Central District of California | 8:16-CV-02011-CJC-DFM | Declaration | August 2018 | Plaintiff |
| 45. Debbie Salazar v. See's Candy Shops, Inc | Superior Court of the State of California, for the County of Los Angeles | BC651132 | Declaration Declaration | September 2018 December 2018 | Plaintiff |
| 46. Janeice Thomas v. CheckSmart Financial, LLC | Superior Court of the State of California, for the County of Sacramento | 34-2014-00168533-CU-OE-GDS | Declaration Declaration | October 2018 June 2019 | Plaintiff |
| 47. Maykel Rodriguez v. La-Z-Boy Inc | Superior Court of the State of California, for the County of San Bernardino | CIVDS1615392 | Declaration | October 2018 | Plaintiff |
| 48. Brandon Vawter v. United Parcel Service | U.S. District Court, Central District of California | 2:18-cv-01318-RGK-E | Expert Report | November 2018 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 49. Gregorio Rosales et al. v. Professional Service Construction | Superior Court of the State of California, for the County of Orange | 30-2016-00892554-CU-OE-CXC | Declaration | November 2018 | Plaintiff |
| 50. Maria Herrera v. Federal Express Corporation | U.S. District Court, Central District of California | 5:17-CV-02137 | Declaration Deposition | November 2018 December 2018 | Plaintiff |
| 51. Julio Garcia v. Walmart Associates, Inc. | U.S. District Court, Southern District of California | 3:18-cv-00500-L-MDD | Declaration | December 2018 | Plaintiff |
| 52. Rose Gutierrez v. St. Bernardine Medical Center | Superior Court for the State of California, for the County of San Bernardino | CIVDS1703269 | Declaration | February 2019 | Plaintiff |
| 53. Sepehr Forghani v. Whole Foods Market California, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC637964 | Expert Report Deposition Amended Report Deposition | February 2019 February 2019 March 2019 April 2019 | Plaintiff |
| 54. Bryon Dittman v. Medical Solution, Inc. | United States District Court, Eastern District of California | 2:17-CV-01851 | Declaration | February 2019 | Plaintiff |
| 55. Reginald Lyle v. Doctors Hospital of Manteca | Superior Court of the State of California, for the County of San Joaquin | STK-CV-UOE-2016-6523 | Declaration Deposition | March 2019 April 2019 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 56. Division of Labor Standards Enforcement, Bureau of Field Enforcement v. Adat Shalom Board and Care | Department of Industrial Relations Office of the Labor Commissioner, State of California | 35-CM-259095 | Hearing | June 2019 | Appellant |
| 57. Crystal Perkins v. Exclusive Wireless, Inc. | Superior Court of the State of California, for the County of Fresno | 17CECG04108 | Declaration | June 2019 | Plaintiff |
| 58. Matthew Ogura v. Thrifty Payless, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC605968 | Declaration | June 2019 | Plaintiff |
| 59. Cipriano Ponce v. Agro-Jal Farming Enterprises, Inc. | Superior Court of the State of California, for the County of San Luis Obispo | 15 CV-0373 | Declaration Reply Declaration | June 2019 September 2019 | Plaintiff |
| 60. Salvador Ochoa v. CKE Restaurants Holdings; and Hermelinda Aguilar v. CKE Restaurants Holdings | Superior Court of the State of California, for the County of Los Angeles | BC623041 / BC686601 | Declaration | July 2019 | Plaintiff |
| 61. Blanca Castaneda v. San Gabriel Transit | Superior Court of the State of California, for the County of Los Angeles | BC590907 | Declaration | August 2019 | Plaintiff |
| 62. Yelter Cruz v. Gelson's Market | Superior Court of the State of California, for the County of Los Angeles | BC670061 | Declaration Deposition | August 2019 October 2019 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 63. | Alyssa Diersing v. Sharp Rees-Stealy Medical Group | Superior Court of the State of California, for the County of San Diego--Central | 37-2017-00029164-CU-OE-CTL | Declaration Deposition | September 2019 September 2019 | Plaintiff |
| 64. | Scott Carney v. Geo Drilling Fluids, Inc. | Superior Court of the State of California, for the County of Kern | BCV-15-101729 | Declaration | September 2019 | Defendant |
| 65. | Stacy O'Braza v. Dignity Health | Superior Court of the State of California, for the County of Sacramento | 34-2018-00240446 | Declaration | October 2019 | Plaintiff |
| 66. | Michelle Flynn v. Macy's Corporate Services, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC669170 | Declaration | October 2019 | Plaintiff |
| 67. | Ser Lao v. H & M Hennes & Mauritz, L.P. | United States District Court, Northern District of California | 5:16-CV-333 EJD | Expert Report Supplemental Expert Report Deposition | November 2019 November 2019 December 2019 | Plaintiff |
| 68. | Jillian Hameister v. Jaco Oil Company | Superior Court of the State of California, for the County of Kern | BCV-17-102876 | Declaration | November 2019 | Plaintiff |
| 69. | Juan Trevino v. Amazon Fulfillment Services, Inc. | United States District Court, Eastern District of California | 1:18-cv-00120-DAD-BAM | Declaration Deposition Reply Declaration Declaration | November 2019 December 2019 January 2020 February 2020 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 70. | Terrance Bailey v. Blue Apron, LLC | United States District Court, for the Northern District of California | 3:18-CV-07000-VC | Declaration | December 2019 | Plaintiff |
| 71. | Armando Gutierrez Recendez v. ICO Builders, Inc. | Superior Court of the State of California, for the County of Los Angeles, Central District | BC720019 | Deposition | December 2019 | Defendant |
| 72. | Rina Acosta v. Remington Hotels | Superior Court of the State of California, for the County of Contra Costa | MSC 16-02404 | Declaration | December 2019 | Plaintiff |
| 73. | Eric Camel v. Town of Chesterton | United States District Court, for the Northern District of Indiana, Hammond Division | 2:19-CV-00065-JVB-JPK | Expert Report | January 2020 | Plaintiff |
| 74. | Keenan Patton v. Skyler Electric | Superior Court of the State of California, for the County of Nevada | CU17-082544 | Declaration | January 2020 | Plaintiff |
| 75. | Securitas Wage and Hour Cases | Superior Court of the State of California, for the County of Los Angeles | JCCP 4837 | Declaration Deposition | January 2020 May 2020 | Plaintiff |
| 76. | Ana Mandujano v. Macy's West Stores | Superior Court of the State of California, for the County of Los Angeles | 19STCV33919 | Declaration | January 2020 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 77. Rafael Balderrama v. Park West Landscape Maintenance, Inc. | Superior Court of the State of California, for the County of Los Angeles, Central District | BC 644491 | Declaration | February 2020 | Plaintiff |
| 78. Jesus A. Rios v. All Star Seed | Superior Court of the State of California, for the County of Imperial | ECU008770 | Declaration | March 2020 | Plaintiff |
| 79. Stephanie Heredia v. Eddie Bauer | U.S. District Court, Northern District of California | 5:16-CV-06236-BLF (SVK) | Expert Report | March 2020 | Plaintiff |
| 80. Juan Vincente De La Cruz v. Standard Drywall, Inc. | Superior Court of the State of California, for the County of Los Angeles | BC 591790 | Declaration Deposition | March 2020 April 2020 | Plaintiff |
| **Civil Rights** | | | | | |
| 81. Dianna Johnson v. United States Marshals | U.S. District Court, District of Columbia | 02-2364 (RMC) | Declaration Declaration | July 2007 April 2010 | Plaintiff |
| 82. Marsial Lopez v. Sheriff Donny Youngblood | U.S. District Court, Eastern District of California | CV-F-07-0474 DLB | Declaration | June 2008 | Plaintiff |
| 83. Thomas Lee Goldstein v. City of Long Beach, John Henry Miller, William Collette, and Logan Wren | U.S. District Court, Central District of California | CV 04-9692 AHM (Ex) | Expert Report Deposition Declaration | November 2009 February 2010 June 2010 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 84. <u>Carl A. Barnes v. District of Columbia</u> | U.S. District Court, District of Columbia | 06-315 (RCL) | Declaration<br>Expert Report<br>Supplemental Expert Report<br>Deposition<br>Declaration<br>Expert Report<br>Declaration<br>Expert Report<br>Deposition<br>Expert Report<br>Trial | March 2010<br>November 2010<br>December 2010<br><br>December 2010<br>November 2011<br>February 2012<br>March 2012<br>June 2012<br>October 2012<br>November 2012<br>March 2013 | Plaintiff |
| 85. <u>Eric Jones v. Baltimore City Police Department, et al.</u> | U.S. District Court, District of Maryland | CCB 05 CV 1287 | Declaration<br>Deposition<br>Declaration | July 2010<br>October 2010<br>January 2011 | Plaintiff |
| 86. <u>Mary Amador v. Sheriff Leroy Baca, et al.</u> | U.S. District Court, Central District of California | CV 10-1649 SVW (JEMx) | Declaration<br>Declaration<br>Declaration<br>Declaration<br>Declaration | October 2010<br>January 2011<br>June 2013<br>July 2013<br>February 2016 | Plaintiff |
| 87. <u>C. Alan Powell v. Jacqueline H. Barrett, et al.</u> | U.S. District Court, Northern District of Georgia, Atlanta Division | 1:04-CV-1100 (RWS) | Declaration | October 2011 | Plaintiff |

**Econ One Research, Inc.**
**Los Angeles, California**

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 88. | <u>Duncan Roy v. Sheriff Leroy Baca, et al.</u> | U.S. District Court, Central District of California | CV 12-09012 BRO (FFMx) | Declaration Declaration Rebuttal Declaration Declaration Declaration Declaration | July 2014 May 2016 July 2016 <br> May 2018 May 2018 November 2018 | Plaintiff |
| 89. | <u>Marlon Johnson v. County of San Bernardino, et al.</u> | U.S. District Court, Central District of California | 5:18-CV-01121-GW (AFM) | Declaration | October 2019 | Plaintiff |

**False Claims Act**

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|---|
| 90. | <u>U.S. ex rel. Carlo Santa Ana v. Winter Park Urology Associates, P.A., et al.</u> | U.S. District Court, Middle District of Florida | 6:10-CV-806-28TBS | Expert Report Deposition | December 2012 February 2013 | Plaintiff |
| 91. | <u>U.S. ex rel. Misty Wall v. VistaCare Hospice Care, et al.</u> | U.S. District Court, Northern District of Texas | 3-07-CV-0604-M | Declaration Declaration Expert Report Rebuttal Report Deposition Declaration | August 2014 September 2014 July 2015 January 2016 <br> January 2016 April 2016 | Plaintiff |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| 92. U.S. ex rel. Laura Lovett and Lisa Mayhew v. Holzer Clinic | U.S.  District Court, Southern District of Ohio, Eastern Division | 2:08-CV-312 | Expert Report | March 2015 | Plaintiff |
| **Breach of Contract** | | | | | |
| 93. In the Matter of City of Moss Point v. FEMA | U.S. Civilian Board of Contract Appeals | CBCA 2346-FEMA | Arbitration Hearing | June 2012 | Plaintiff |
| 94. Amtrust North America, Inc., v. SquareTrade, Inc. | Judicial Arbitration and Mediation Services, San Francisco Office | 1100079447 | Expert Report Supplemental Expert Report Declaration Arbitration Hearing Rebuttal Declaration | April 2015 May 2015 June 2015 June 2015 July 2015 | Claimant |
| 95. Michael Nozzi v. Housing Authority of the City of Los Angeles, et al. | U.S. District Court, Central District of California | CV07-00380-PA (FFMx) | Declaration Expert Report Supplemental Expert Report Declaration | April 2016 February 2017 March 2017 March 2017 | Plaintiff |
| 96. Ronald McAllister v. The St. Louis Rams, LLC | U.S. District Court, Eastern District of Missouri | 4:16-CV-00172-SNLJ | Rebuttal Report Deposition | August 2017 September 2017 | Plaintiff |
| 97. Amtrust North America, Inc. v. SquareTrade, Inc. | Judicial Arbitration and Mediation Services, San Francisco Office | 1100086491 | Expert Report | March 2018 | Claimant |

Econ One Research, Inc.
Los Angeles, California

**DR. BRIAN KRIEGLER**
*Prior Testimony/Reports*

| Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Reports | Date | On Behalf Of |
|---|---|---|---|---|---|
| **Consumer Class Actions** | | | | | |
| 98.  Christopher O'Shea v. Epson America, Inc., et al. | U.S. District Court, Central District of California | CV09-8063 PSG (CWx) | Declaration | February 2011 | Plaintiff |
| 99.  Manny Villanueva v. Fidelity National Title Company | Superior Court of the State of California, for the County of Santa Clara | 1-10-CV-173356 | Deposition Declaration Deposition Trial | March 2014 April 2014 April 2014 April 2014 | Plaintiff |
| 100.  Charlene Eike v. Allergan, Inc., et al. | U.S. District Court, East St. Louis Division | 3:12-CV-01141-DRH-DGW | Expert Report Deposition | May 2014 August 2014 | Plaintiff |
| 101.  Mohammed Rahman v. Mott's LLP | Superior Court of the State of California, for the County of San Francisco | CGC-13-532078 | Declaration | October 2019 | Plaintiff |
| **Miscellaneous** | | | | | |
| 102.  2009 Aircraft Tax Refund Cases: American Airlines, Inc. v. County of Los Angeles, et al, and United Airlines, Inc. v. County of Los Angeles | Superior Court of the State of California, for the County of Orange | JCCP 4803 / BC547243 / BC550656 | Declaration | July 2017 | Court Appointed |

# EXHIBIT

# 2

## List of Proposed Classes in *Trevino v. Amazon*

| Class Name | Class Description |
|---|---|
| (A) | (B) |
| Class 1 - Unpaid Wages Class (Hours Worked Claim Based on Control of Employees through Mandatory Exit Security Procedures) | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who were required to go through a metal detector security process to exit the facility. |
| Class 2 - Unpaid Wages Class (Controlled Meal Periods) | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who took a meal period and who were required to go through a metal detector security process to leave the facility during such meal period and were not paid for the time of such meal period. |
| Class 3 - Meal Period Violations for Controlled Meal Periods | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who worked a shift longer than six hours and who were required to go through a metal detector security process to leave the facility during such meal periods and were not paid a meal period premium for such shifts. |
| Class 4 - Rest Periods Violations for Controlled Rest Periods | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who worked a shift longer than three and one-half hours and were subject to a policy that leaving company premises without permission during assigned work hours was a serious infraction that subjected them to termination or who were required to go through a metal detector security process to leave the facility during the rest period and were not paid a rest period premium for all such shifts. |
| Class 5 - Improper Rounding Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who were subject to a rounding practice that resulted in them being paid less that they would have received had no such rounding practice been utilized for such employees. |

Econ One
5/19/2020

## List of Proposed Classes in *Trevino v. Amazon*

| Class Name | Class Description |
|---|---|
| (A) | (B) |
| Class 6 - Invalid Second Meal Period Waiver Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who signed any meal period waiver in the forms attached as Exhibit 12 to the Declaration of Peter R. Dion-Kindem in Support of Motion for Class Certification and worked more than 10 hours in a day, did not receive a second 30 minute meal period, and did not receive one hour of pay at the class member's regular rate of compensation for such day. |
| Class 7 - Third Rest Period Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who were scheduled to work a 10-hour shift and worked more than 10 hours and who were not authorized or permitted to take a third uninterrupted, duty-free, and control-free 10-minute rest period and did not receive one hour of pay at the class member's regular rate of compensation for such day. |
| Class 8 - Direct Violation of Section 226(a)(2) Wage Statement Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. in California at any time during the period from July 12, 2016 and ending on the date of certification or as otherwise determined by the Court who did not receive an itemized statement in writing accurately showing the total hours worked by the employee where the wage statements reflect a line item for regular hours worked and at least one other line item for other types of hours worked other than regular overtime or double time, such as shift differential hours worked. |
| Class 9 - Derivative Wage Statement Class | All members of any of Classes 1 through 7 who, during the period from July 12, 2016 and ending on the date of certification or as otherwise determined by the Court, were not provided with accurate itemized wage statements with all the information required by Labor Code Section 226(a)(1), (2), (5) and (9). |
| Class 10 - Section 203 Class | All members of any of Classes 1 through 7 who, during the period from July 12, 2014 and ending on the date of certification or as otherwise determined by the Court, were either voluntarily or involuntarily separated from their employment and did not timely receive all wages owing pursuant to Labor Code Section 201 or 202. |
| Class 11 - UCL Class | All non-exempt employees employed by Amazon.com Services, Inc. or Amazon.com, Inc. at any of Defendants' facilities in California at any time during the period from July 12, 2013 and ending on the date of certification or as otherwise determined by the Court who are owed restitution as a result of Defendants' business acts and practices that are found to be unlawful, deceptive, and/or unfair. |

Econ One
5/19/2020

# EXHIBIT

# 3

**Formulas for Estimating Potential Principal Damages,
Pre-Judgment Interest, Derivative Penalties, and PAGA Penalties**

| Applicable Class(es) | Description | Statute of Limitation | Formula |
|---|---|---|---|
| (A) | (B) | (C) | (D) |
| **Unpaid Wages** | | | |
| Class 1; Class 2 | Compensable Time Off-the-Clock | 7/12/2013 | *For each additional compensable minute off-the-clock per shift*: (1/60) x Base Rate x (# of Straight Time Shifts + 1.5 x # of Overtime Shifts + 2.0 x # of Double Time Shifts) |
| Class 3 | Unpaid Meal Premium Payments | 7/12/2013 | Base Rate x (# of Shifts Over 6.0 Hours - # Meal Premium Payments Already Issued) |
| Class 4 | Unpaid Rest Premium Payments | 7/12/2013 | Base Rate x (# of Shifts of at Least 3.5 Hours - # Rest Premium Payments Already Issued) |
| **Pre-Judgment Interest** | | | |
| Class 1; Class 2; Class 3; Class 4 | Interest on Compensable Time Off-the-Clock and Unpaid Meal/Rest Premium Payments | 7/12/2013 | 7% x # of Years Between Interest Accrual Date and Pay Date x Potential Unpaid Wages Owed |
| **Liquidated Damages** | | | |
| Class 1; Class 2 | Straight Time Pay for Compensable Time Off-the-Clock | 7/12/2014 | *For each additional compensable minute off-the-clock per shift*: (1/60) x Base Rate x # of Shifts |
| **Derivative Penalties** | | | |
| Class 9 | Wage Statement Penalties | 7/12/2016 | *For each putative class member with unpaid wages*: $50 for the first pay period with unpaid wages; $100 for each subsequent pay period with unpaid wages; Maximum of $4,000 |
| Class 10 | Waiting Time Penalties | 7/12/2014 | Average Daily Wage x 30 Days |
| **PAGA\*** | | | |
| Alleged Aggrieved Employees | PAGA Penalties | 7/12/2016 | Penalty per Employee Pay Period (*e.g.*, $100, $200, etc.) x # of Violative Pay Periods |

\* - 25% of the penalty amounts go to Alleged Aggrieved Employees, while 75% of the penalty amounts go to the State of California.

# EXHIBIT
# 4A

**Derivation of Potential Damages and Pre-Judgment Interest for
Each Additional Compensable Minute Per Shift,
July 12, 2013 through Present Day**

| | In Timekeeping Production, July 12, 2013 - July 1, 2018 | | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | | Projected through May 19, 2020 | |
|---|---|---|---|---|---|---|
| | (A) | | (B) | | (C) | |
| | | | (A) x 10 | | (B) x [1 + 0.379] | |
| **Principal Damages** | | | | | | |
| Estimating the number of shifts | | | | | | |
| 1. Straight Time (under 10 hours) | | 555,718 | | 5,557,180 | | 7,663,351 |
| 2. Overtime (at least 10 and under 12 hours) | | 700,543 | | 7,005,430 | | 9,660,488 |
| 3. Double Time (over 12 hours) | | 1,347 | | 13,470 | | 18,575 |
| Estimating Unpaid Wages | | | | | | |
| 4. Straight Time (under 10 hours) [*Row 1 x $13.17 x (1/60)*] | $ | 121,980 | $ | 1,219,801 | $ | 1,682,106 |
| 5. Overtime (at least 10 and under 12 hours) [*Row 2 x $13.17 x (1/60)*] | $ | 230,654 | $ | 2,306,538 | $ | 3,180,716 |
| 6. Double Time (over 12 hours) [*Row 3 x $13.17 x (1/60)*] | $ | 591 | $ | 5,913 | $ | 8,154 |
| 7. **Total** [*Row 4 + Row 5 + Row 6*] | $ | **353,225** | $ | **3,532,252** | $ | **4,870,976** |

Econ One
5/19/2020

**Derivation of Potential Damages and Pre-Judgment Interest for
Each Additional Compensable Minute Per Shift,
July 12, 2013 through Present Day**

| | In Timekeeping Production, July 12, 2013 - July 1, 2018 | | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | | Projected through May 19, 2020 | |
|---|---|---|---|---|---|---|
| | (A) | | (B) | | (C) | |
| | | | (A) x 10 | | (B) x [1 + 0.379] | |
| **Pre-Judgment Interest** | | | | | | |
| Multiplying Principal Damages by 23.94% | | | | | | |
| 8.  For Straight Time Damages [*Row 4 x 23.94%*] | $ | 29,202 | $ | 292,020 | $ | 402,696 |
| 9.  For Overtime Damages [*Row 5 x 23.94%*] | $ | 55,219 | $ | 552,185 | $ | 761,463 |
| 10.  For Double Time Damages [*Row 6 x 23.94%*] | $ | 142 | $ | 1,416 | $ | 1,952 |
| 11.  **Total Pre-Judgment Interest** [***Row 8 + Row 9+ Row 10***] | $ | **84,562** | $ | **845,621** | $ | **1,166,112** |
| **Potential Damages and Interest per Putative Class Member, on Average** | | | | | | |
| Dividing Totals by 179,533 | | | | | | |
| 12.  **Principal Damages** [*Row 7 / 179,533*] | | | | | $ | **27.13** |
| 13.  **Pre-Judgment Interest** [*Row 11/ 179,533*] | | | | | $ | **6.50** |

Econ One
5/19/2020

# EXHIBIT
# 4B

## Derivation of Potential Liquidated Damages for
## Each Additional Compensable Minute Per Shift,
## July 12, 2014 through Present Day

|  | In Timekeeping Production, July 12, 2014 - July 1, 2018 | Projected 10x to Population of Employees, July 12, 2014 - July 1, 2018 | Projected through May 19, 2020 |
|---|---|---|---|
|  | (A) | (B) | (C) |
|  |  | (A) x 10 | (B) x [1 + 0.474] |
| 1. Estimated Number of Shifts at Facilities with Metal Detectors | 1,184,388 | 11,843,880 | 17,457,879 |
| 2. **Total Liquidated Damages** [*Row 1 x $13.17 x (1/60)*] |  |  | $   3,832,004 |
| 3. **Liquidated Damages per Putative Class Member, on Average** [Row 2 / 179,533] |  |  | $   21.34 |

Econ One
5/19/2020

# EXHIBIT
# 4C

### Derivation of Potential Damages and Pre-Judgment Interest for
### Potential Meal/Rest Premium Payments Owed,
### July 12, 2013 through Present Day

| | In Amazon's Data Production, July 12, 2013 - July 1, 2018 | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | Projected through May 19, 2020 |
|---|---|---|---|
| | (A) | (B) | (C) |
| | | (A) x 10 | (B) x [1 + 0.379] |
| **Principal Damages** | | | |
| Estimating the Number of Shifts | | | |
| 1.  Over 6.0 Hours (qualifying for at least one meal period) | 1,126,031 | 11,260,310 | 15,527,967 |
| 2.  At least 3.5 Hours (qualifying for at least one rest period) | 1,230,525 | 12,305,250 | 16,968,940 |
| Estimating the Number of Premium Payments Already Paid | | | |
| 3.  Meal Premium Payments | 19,743 | 197,430 | 272,256 |
| 4.  Rest Premium Payments | 0 | 0 | 0 |
| Estimating Meal/Rest Premium Payments Owed | | | |
| 5.  **Total Meal Period Principal Damages** [*(Row 1 - Row 3) x $13.17*] | $    14,569,813 | $    145,698,130 | $    200,917,727 |
| 6.  **Total Rest Period Principal Damages** [*(Row 2 - Row 4) x $13.17*] | $    16,206,014 | $    162,060,143 | $    223,480,940 |

Econ One
5/19/2020

### Derivation of Potential Damages and Pre-Judgment Interest for
### Potential Meal/Rest Premium Payments Owed,
### July 12, 2013 through Present Day

| | In Amazon's Data Production, July 12, 2013 - July 1, 2018 | | Projected 10x to Population of Employees, July 12, 2013 - July 1, 2018 | | Projected through May 19, 2020 | |
|---|---|---|---|---|---|---|
| | (A) | | (B) | | (C) | |
| | | | (A) x 10 | | (B) x [1 + 0.379] | |
| **Pre-Judgment Interest** | | | | | | |
| Multiplying Potential Principal Damages by 23.94% | | | | | | |
| 7.  **For Meal Period Damages** [*Row 5 x 23.94%*] | $ | 3,488,013 | $ | 34,880,132 | $ | 48,099,704 |
| 8.  **For Rest Period Damages** [*Row 6 x 23.94%*] | $ | 3,879,720 | $ | 38,797,198 | $ | 53,501,337 |
| | | | | | | |
| **Potential Damages and Interest per Putative Class Member, on Average** | | | | | | |
| Dividing totals by 179,533 | | | | | | |
| 9.  **Meal Period Damages** [*Row 5 / 179,533*] | | | | | $ | 1,119.11 |
| 10. **Rest Period Damages** [*Row 6 / 179,533*] | | | | | $ | 1,244.79 |
| 11. **Interest on Meal Period Damages** [*Row 7 / 179,533*] | | | | | $ | 267.92 |
| 12. **Interest on Rest Period Damages** [*Row 8 / 179,533*] | | | | | $ | 298.00 |

Econ One
5/19/2020

# EXHIBIT

# 4D

# Potential Waiting Time Penalties
## For Persons Terminated On or After July 12, 2014

| Description | | Calculation |
|---|---|---|
| 1. Number of Likely Putative Class Members* | | 4,886 |
| 2. Average Shift Length Among Likely Putative Class Members* | | 8.96 |
| 3. Average Base Rate Among Likely Putative Class Members* | $ | 12.84 |
| 4. Estimated Daily Wage Among Likely Putative Class Members<br>[*Row 2 x Row 3*] | $ | 115.05 |
| 5. Projected Number of Putative Class Members**<br>[*10 x Row 1*] | | 48,860 |
| 6. **Estimated Potential Penalties****<br>[***Row 4 x Row 5 x 30***] | $ | 168,640,290 |
| 7. **Potential Penalties per Class Member, on Average**<br>**[Row 4 x 30]** | $ | 3,451.50 |

\* - In Timekeeping/Payroll Production.

\*\* - This calculation does not account for persons terminated after July 1, 2018.

Econ One
5/19/2020

# EXHIBIT 4E

**Potential Wage Statement Penalties,**
**July 12, 2016 through Present Day**

| | Calculation |
|---|---:|
| Identifying Relevant Dates and Time Period | |
| 1. First date of Class Period for Derivative Wage Statement Class | 7/12/2016 |
| 2. Present Day | 5/19/2020 |
| 3. Current Length of Wage Statement Class Period<br>*[(Row 2 - Row 1 + 1)/365.25]* | 3.85 years |
| | |
| Calculating Counts Based on Latest 3.85 Years of the Payroll Production* | |
| 4. Number of Employees with Hours Worked in 41+ Pay Periods | 1,453 |
| 5. Number of Employees with Hours Worked in 40 or Fewer Pay Periods | 5,799 |
| 6. Number of Employees<br>*[Row 4 + Row 5]* | 7,252 |
| 7. Number of Employee Pay Periods Among Employees with Hours Worked in 40 or Fewer Pay Periods | 66,976 |
| | |
| Calculating Projected Counts | |
| 8. Number of Employees with Hours Worked in 41+ Pay Periods<br>*[Row 4 x 10]* | 14,530 |
| 9. Number of Employees with Hours Worked in 40 or Fewer Pay Periods<br>*[Row 5 x 10]* | 57,990 |
| 10. Number of Employees<br>*[Row 6 x 10]* | 72,520 |
| 11. Number of Employee Pay Periods Among Employees with Hours Worked in 40 or Fewer Pay Periods<br>*[Row 7 x 10]* | 669,760 |
| | |
| Calculating Penalties | |
| 12. Among Employees with Hours Worked in 41+ Pay Periods<br>*[Row 8 x $4,000]* | $ 58,120,000 |
| 13. Among Employees with Hours Worked in 40 or Fewer Pay Periods<br>*[Row 9 x $50 + (Row 11 - Row 9) x $100]* | $ 64,076,500 |
| 14. **Estimated Total Potential Wage Statement Penalties**<br>***[Row 12 + Row 13]*** | **$ 122,196,500** |
| 15. **Estimated Potential Wage Statement Penalties per Class Member, on Average**<br>**[Row 14 / Row 10]** | **$ 1,685.00** |

\* - Amazon's Data Production is current through July 1, 2018.  3.85 years prior to July 1, 2018 is August 21, 2014.

# EXHIBIT

# 4F

**Potential PAGA Penalties**
**July 12, 2016 through Present Day**

|  | Calculation |
|---|---|
| Deriving Estimates for the Number of Alleged Aggrieved Employees and their Number of Employee Pay Periods | |
| 1. First date of PAGA Period | 7/12/2016 |
| 2. Present Day | 5/19/2020 |
| 3. Current Length of Wage Statement Class Period [(Row 2 - Row 1 + 1)/365.25] | 3.85 years |
| 4. Number of Employees Appearing in Latest 3.85 Years of Data in the Payroll Production* | 7,252 |
| 5. Number of Employee Pay Periods Appearing in Latest 3.85 years of Data in the Payroll Production | 163,308 |
| 6. Projected Number of Alleged Aggrieved Employees' Pay Periods [Row 5 x 10] | 1,633,080 |
| 7. Average Number of Pay Periods per Alleged Aggrieved Employee [Row 5 / Row 4] | 22.5 |
| Multiplying the Number of Alleged Aggrieved Employees' Pay Periods by the Dollar Amount per Alleged Violation | |
| 8. **$100 per Violation** [Row 6 x $100] | $   163,308,000 |
| 9. **$200 per Violation** [Row 6 x $200] | $   326,616,000 |
| 10. **$250 per Violation** [Row 6 x $250] | $   408,270,000 |
| Calculating PAGA Penalties per Alleged Aggrieved Employee, on Average | |
| 11. **$100 per Violation** [Row 7 x $100 x 25%] | $   562.98 |
| 12. **$200 per Violation** [Row 7 x $200 x 25%] | $   1,125.95 |
| 13. **$250 per Violation** [Row 7 x $250 x 25%] | $   1,407.44 |

\* - Amazon's Data Production is current through July 1, 2018.  3.85 years prior to July 1, 2018 is August 23, 2014.

**UNITED STATES DISTRICT COURT**
**WESTERN DIVISION OF KENTUCKY**
**AT LOUISVILLE**

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FOR FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION<br><br>This Document Relates to *Saldana v. Amazon.com, LLC*, Case No. 14-CV-00290-DJH | Master File No. 3:14-MD-2504<br>MDL Docket No. 2504<br>Judge: Hon. David J. Hale<br><br>**[PROPOSED] ORDER ON MOTION TO INTERVENE FOR THE PURPOSE OF OPPOSING THE PRELIMINARY APPROVAL AND/OR OTHER RELIEF DEEMED APPROPRIATE**<br><br>[Filed concurrently with the Notice of Motion; Memorandum of Points and Authorities; Declaration of Peter Dion-Kindem; and Declaration of Brian Kriegler]<br><br>Date:<br>Time:<br>Dept: 106<br>Judge: Hon. David J. Hale |

On _____, 2020, this Court heard the Motion to Intervene for the limited purpose of opposing the preliminary approval motion filed by Plaintiff Robertson and seeking other relief.

**IT IS HEREBY ORDERED THAT:**

Effective immediately, Plaintiffs of the *Trevino* matter are granted the right to intervene in the *In re: Amazon.com, Inc., Fulfillment Center for Fair Labor Standards Act (FLSA) and Wage and Hour Litigation* matter and oppose the Motion for Preliminary Approval. The Court further orders that the hearing on the Motion for Preliminary Approval is stayed pending the class certification ruling in the Eastern District of California.

Dated:_____                    _____

                                             Hon. David J. Hale
                                             Judge of the Western District of Kentucky

ORDER

1

Exhibit 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: AMAZON.COM, INC.,
FULFILLMENT CENTER FAIR LABOR             Master File No. 3:14-md-2504
STANDARDS ACT (FLSA) AND                     MDL Docket No. 2504
WAGE AND HOUR LITIGATION

THIS DOCUMENT RELATES TO:
*Saldana, et al. v. Amazon.com, LLC, et al.*,        Case No. 3:14-cv-290-DJH

\* \* \* \* \*

## MEMORANDUM OF CONFERENCE AND ORDER

A telephonic status conference was held in this matter on May 22, 2020, with the

following counsel participating:

|  |  |
|---|---|
| For Plaintiffs: | David Markham |
|  | Joshua Buck |
|  | Mark Thierman |
|  | James Hill |
|  |  |
| For Defendants: | Joseph Nuccio |
|  | Richard Rosenblatt |

The Court and counsel discussed the procedural posture of the case, including the motion to

intervene filed the day before.  Based on the discussion during the conference, it is hereby

**ORDERED** that the parties shall separately respond to the motion to intervene (Docket

No. 94) on or before **June 12, 2020**.  The *Trevino* plaintiffs shall file a reply on or before **June

26, 2020**.

May 22, 2020

Court Time: 00/05
Court Reporter: April Dowell

**David J. Hale, Judge**
**United States District Court**

1