MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:  949.451.4220

JASON C. SCHWARTZ (admitted *pro hac vice*)
  jschwartz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539

KARL G. NELSON (admitted *pro hac vice*)
  knelson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201-6912
Telephone:  214.698.3100
Facsimile:  214.571.2900

KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
HELEN AVUNJIAN, SBN 300284
  havunjian@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendants GOLDEN
STATE FC LLC (now known as
AMAZON.COM SERVICES LLC),
AMAZON.COM, INC. and AMAZON
FULFILLMENT SERVICES, INC. (now
known as AMAZON.COM SERVICES
LLC)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| JUAN TREVINO, CHRISTOPHER WARD, LINDA QUINTEROS, ROMEO PALMA, BRITTANY HAGMAN, ALBERTO GIANINI, and JUAN C. AVALOS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN STATE FC LLC, a Delaware Limited Liability Company; AMAZON.COM INC., a Delaware Corporation, AMAZON FULFILLMENT CENTERS, INC. a Delaware Corporation, and Does 1 through 10, inclusive,<br><br>Defendants. | **LEAD CASE NO. 1:18-cv-00120-DAD (BAM)**<br>Member Case No: 1:18-cv-00121-DAD-BAM<br>Member Case No: 1:18-cv-00567-DAD-BAM<br>Member Case No: 1:18-cv-01176-DAD-BAM<br>Member Case No: 1:17-cv-01300-DAD-BAM<br><br>**RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL SETTLEMENT ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Magistrate Judge Barbara A. McAuliffe |

Gibson, Dunn &
Crutcher LLP

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL
SETTLEMENT – CASE NO. 1:18-CV-00120-DAD (BAM)

## I.      INTRODUCTION

Rather than offer their perspective on the "*impact*" of the MDL Action settlement on this case as this Court requested (Dkt. 146, emphasis added), Plaintiffs chose instead to urge this Court to commandeer the role of the judge in the MDL Action, preemptively second-guess the *fairness* of the settlement reached in that case (even though that settlement is not before this Court), and issue an advisory opinion on the impact of California Supreme Court decisions on the merits of Plaintiffs' claims, even though doing so is unnecessary to resolve Plaintiffs' motion for class certification.  This Court should reject these improper overtures and stay this action pending final approval of the settlement in the MDL Action, which will have a significant impact on the future progress of this case.

### A.      Staying This Action Until the MDL Action Settlement Process Concludes Would Promote Judicial Economy

Resolving the question of class certification in this case before final approval of the MDL Action settlement, as Plaintiffs propose, would be inefficient and unproductive for several reasons.

*First*, it would violate the first-to-file rule, which "allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015).The rule is "intended to serve the purpose of promoting efficiency . . . and should not be disregarded lightly." *Id.*  As Judge Drozd has previously acknowledged (Dkt. 71 at 8–11), under that rule, the MDL Action should take priority over this action.  The Judicial Panel of Multidistrict Litigation ("JPML"), too, in denying Amazon's motion to transfer *Trevino* to the MDL Court, "encourage[d] the parties to voluntarily coordinate any overlapping discovery or pretrial motions" raised by *Trevino* and to "avail themselves" of the discovery and the "*transferee court's* rulings."  Declaration of Katherine V.A Smith ("Smith Decl.") ¶ 2, Ex. A at 2 (emphasis added).  That is reason enough to step back to allow the proposed settlement in the MDL Action to run its course before proceeding here.

*Second*, as explained in Amazon's Notice of Settlement (Dkt. 145), deferring a decision on class certification here pending final approval of the settlement in the MDL Action will conserve already scarce judicial resources in this District by streamlining the claims this Court would be required to rule upon.  Contrary to Plaintiffs' claims that Amazon "specifically drafted the release in an attempt to encompass all of Plaintiffs' class and representative PAGA claims in this action" (Dkt. 147 at 2), the

MDL Action settlement will narrow, but not totally eliminate, Plaintiffs' claims in this case, as there are a number of claims that would not necessarily be resolved by this settlement.[1] For example, Plaintiffs' claims regarding rounding (and alleged meal break and third rest break violations premised on rounding), second meal break waiver violations, and alternative workweeks[2] were not alleged in *Saldana* and are not encompassed within the settlement. *Compare* Dkt. 65 *with* Dkt. 145–1, Ex. A at 7–9. Plaintiffs have previously recognized this by arguing, in opposing a stay pending the resolution of the MDL Action, that the "claims in [*Trevino*] are broader than those asserted in [this] action." Dkt. 45 at 2.

**Third**, resolution of the class certification issues in this case is unlikely to be speedy. As this Court is aware, after any decision on certification, both parties have the option to appeal to Judge Drozd (*see* Fed. R. Civ. P. 72), and could further seek permission to appeal Judge Drozd's order to the Ninth Circuit under Rule 23(f). Particularly in light of the judicial emergency in this District, it could take months—if not years—to conclusively resolve Plaintiffs' motion for class certification.

**Finally**, there is no prejudice to the putative class should this Court stay its decision on class certification pending final approval of the MDL Action settlement. The putative class members will have their chance to opt out of or object to the MDL Action settlement via the Rule 23 process to the extent they believe it is unfair or they believe they can get a better deal elsewhere. And those who do not opt out will expeditiously obtain relief. Plaintiffs have offered no reasonable argument for why— nearly seven years after the *Saldana* action was filed and years after they had the opportunity to consolidate their case with *Saldana*—this action should take precedence.

---

[1] The claims that would be barred by the settlement include failure to pay wages for all hours worked including overtime (predicated on Plaintiffs' security screening claims); failure to provide lawful meal periods (predicated on Plaintiffs' security screening claims); failure to provide rest periods (predicated on Plaintiffs' security screening claims); wage statement violations; and failure to pay timely wages upon termination (predicated on Plaintiffs' security screening claims). *See* Dkt. 145 at 3.

[2] Plaintiffs do not seek certification of their alternative workweek claim, but do allege it as an individual claim in their First Amended Consolidated Class Action Complaint. *See* Dkt. 65 ¶¶ 35– 37.

Gibson, Dunn & Crutcher LLP

3

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL SETTLEMENT – CASE NO. 1:18-CV-00120-DAD (BAM)

**B.**     **Plaintiffs' Accusations About the Fairness of the MDL Action Settlement Are Both Irrelevant and Meritless**

In an apparent effort to dissuade this Court from staying the hearing on class certification pending the MDL Action settlement, Plaintiffs resort to gross mischaracterizations of that settlement, claiming it is the product of "collusion" and a "reverse auction" that this Court must "necessarily assess" as part of its decision on how to move forward with this case.  Dkt. 147 at 4–5.  There is no support for any of those accusations.

*First*, contrary to Plaintiffs' assertion that the parties to the MDL Action did not "engage[] in any reasonable valuations" of potential recoveries since the purported change in California law (*id*. at 4), the MDL Action settlement is the product of a reasoned assessment of the continued risks of litigation against the backdrop of legal uncertainty.  The *Saldana* action—filed over three years before any of the putative class cases comprising this consolidated action—has been proceeding for nearly seven years, and is currently on appeal to the Sixth Circuit.  Facing risks in that appeal, both parties reasonably decided to engage in settlement discussions.  Although the plaintiff in *Saldana* believes that *Troester* and *Frlekin* "buttress [her] position," she "understands the benefits of providing a significant settlement sum now, as opposed to risking an appellate decision affirming the [*Saldana*] [c]ourt's decision granting summary judgment in favor of [Amazon]."  Smith Decl. ¶ 3, Ex. B at 14.  Likewise, although Amazon "remain[s] steadfast" in its defense on appeal, including its position on *Troester* and *Frlekin*, it is "also mindful that there are risks and significant expenses" associated with proceeding further in *Saldana*.  *Id.* at 15.  Thus, the settlement discussions produced what the parties believe to be a fair and reasonable settlement for the class.  The current proposed settlement is benchmarked against a 2016 settlement in the same action with other defendants which involved very similar claims, but nevertheless accounts for all the risks and potential costs of continued litigation, including subsequent changes in the law.

Plaintiffs have not cited any evidence supporting their allegations of collusion, nor can they, because there is nothing unlawful or improper about making reasonable judgments about litigation risks based on the particular circumstances of a case.  *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008) (the mere "specter of a reverse auction" was insufficient to

Gibson, Dunn &
Crutcher LLP

4

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL
SETTLEMENT – CASE NO. 1:18-CV-00120-DAD (BAM)

1   support an allegation of collusion where there were "no facts" indicating that "underhanded activity"

2   had actually taken place); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,

3   688 F.2d 615, 627 (9th Cir. 1982) ("The settlement proposal now before us was not hastily arrived at

4   and there is not a shred of evidence in the record suggesting the existence of collusion between the

5   negotiators" where "[d]iscovery had been completed," and "[t]he case had been aggressively litigated

6   . . . for six years, generating a voluminous record, and resulting in several pre-trial hearings and orders,

7   including preliminary injunctions and a partial summary judgment").

8       Rather than offer evidence, Plaintiffs speculate—through the largely improper declaration of

9   counsel[3]—that the only reason Amazon decided to settle the MDL Action was to "moot this Court's

10   certification inquiry," ostensibly out of fear that this Court would grant class certification.  Dkt. 147 at

11   5.   Again, the record shows otherwise.  Amazon was fully prepared to argue—based on, among other

12   evidence, "[v]ideo footage showing employees walking through metal detectors without slowing

13   down," 92 putative class member declarations, as well as expert testimony showing that putative class

14   members were not delayed when passing through security—why none of Plaintiffs' security screening

15   (or other) claims are amenable to certification.  *See* Dkt. 123, Ex. B ¶ 130; *see also* Dkt. 119 at 5–6.

16       ***Second***, this Court need not "assess" the MDL Action settlement in order to decide whether to

17   stay the hearing on class certification.  Whether that settlement should be approved is not an issue

18   before this Court.  And to the extent any of Plaintiffs' attacks on that settlement have merit, they will

19   be resolved by the court overseeing the MDL Action.   While Plaintiffs attack that court as

20   "disinterested" and "poised to possibly" misapply California law (Dkt. 147 at 3, 6), there is no basis to

21   conclude that a sister federal district court is not capable of conducting the requisite assessment of the

---

[3]   For example, in the Declaration of Peter R. Dion-Kindem, counsel declares "under the penalty of perjury" that Amazon engaged in several instances of "forum shopping" and "tasked [counsel] with settling the remaining MDL claims on a class basis as quickly as possible to avoid an adverse class certification ruling in *Trevino*." Dkt. 147–1, Ex. 2 at 38–39.  Mr. Dion-Kindem obviously does not have any personal knowledge of what Amazon did or did not "task[]" its counsel with doing, and this non-evidence should be stricken from the record.  But even if he had somehow obtained information about Amazon's instructions to its lawyers (which he certainly did not), that information would be the definition of a privileged attorney-client communication.  What Mr. Dion-Kindem is doing is attempting to pass off his own self-serving speculation as a purported "fact"—and, remarkably, doing so under penalty of perjury.  In any event, in addition to being unsupported by anything more than pure speculation, this testimony offers no independent facts establishing how Mr. Dion-Kindem could possibly have personal knowledge of Amazon's motivations or its "task[ing]" instructions to its own counsel.

Gibson, Dunn &
Crutcher LLP

proposed settlement through the lens of Rule 23.  Indeed, the JPML believed that the Western District of Kentucky was well-suited to address the claims in *Saldana*, as well as the claims brought under several other states' laws.  Most of the concerns Plaintiffs claim to have about the settlement—for example, that it is the alleged "result of a blatant reverse auction and collusive tactics," which resulting in an "undervalued settlement . . . rel[ying] upon outdated California law and . . . [that is] based on no analysis of the true potential liability . . . in this case" (Dkt. 147 at 4)—are necessarily encompassed within Rule 23's framework for assessing proposed class action settlements.  *See Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (outlining the seven factors courts consider in analyzing a settlement under Rule 23(e)).  There is no basis for this Court to assume that all the relevant factors will not be considered in due course by the United States District Judge presiding in the MDL Action.

**C.     The Court Is Not Poised to Issue a Merits Ruling Regarding *Frlekin* or *Troester***

Plaintiffs argue that this Court should move ahead to decide their motion for class certification because it is supposedly necessary for this Court to analyze the impact of *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038 (2020), and *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), before any settlement can be approved in the MDL Action.  Dkt. 147 at 3.  But there is no legitimate reason to believe that the court overseeing the MDL Action is unable to review and interpret these recent decisions, and Plaintiffs' suggestions to the contrary are both offensive and meritless.  *See* Dkt. 147 at 3, 6.  Even if these attacks on the competency of a sister federal court were to be credited, this Court's role is not to offer guidance on California law for other federal courts outside of California, as Plaintiffs seem to believe.

Regardless, there is no need for this Court to presently weigh in on the impact that *Frlekin* or *Troester* might have on the merits of Plaintiffs' claims.  The propriety of class certification in this action turns not on assessing the merits of California state law, but on an application of the factors under Rule 23(a) and (b)(3).  Rule 23 grants courts "no license to engage in free-ranging merits inquiries at the certification stage," and the merits may only be considered to the extent "they are relevant to determining whether the Rule 23 prerequisites" are satisfied.  *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111–1112 (9th Cir. 2014) (citation omitted).  Plaintiffs are well aware

Gibson, Dunn &
Crutcher LLP

6

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL
SETTLEMENT – CASE NO. 1:18-CV-00120-DAD (BAM)

1    of that fact, as they argued to this Court that it would be "improper[]" to consider "the merits of

2    Plaintiffs' claims at the class certification stage." Dkt. 128 at 1.

3         In any event, Plaintiffs' interpretation of the merits of California law with respect to security

4    screenings is wrong. *Frlekin* did not categorically require compensation for all end-of-shift security

5    screening, nor did it leave "[a] way to assess at a class trial whether and to what extent" employees

6    were "subject to security screening," such that a court could decide, in one stroke, whether such

7    screening resulted in compensable time or interfered with Amazon's provision of meal and rest breaks.

8    Dkt. 138 at 1. *Frlekin* does not create a bright-line rule that time spent passing through security

9    screening—regardless of the nature of the screening—is categorically compensable under California

10   law. Rather, the California Supreme Court adopted a fact-specific test under which "courts may and

11   should consider" several "relevant factors" when determining "whether an employee is subject to the

12   employer's control" during security screening. *Frlekin*, 8 Cal. 5th at 1056-57. Applying that test to

13   the facts before it, the court in *Frlekin* determined that Apple controlled its employees during security

14   screenings because they were "confine[d] . . . to the premises" for a lengthy period of time, were

15   required "to perform specific and supervised tasks" (*id*. at 1047), and could not avoid the screenings

16   "as a practical matter" (*id*. at 1054). The record in *Trevino* is clear that Amazon's security screenings

17   were materially less invasive than those in *Frlekin*; indeed, "for significant numbers of putative class

18   members . . . the screenings often took no time at all." Dkt. 138 at 1. And "[e]ven after *Troester*, the

19   precise contours of the *de minimis* doctrine remain uncertain." *Chavez v. Converse, Inc*., No. 15-CV-

20   03746-NC, 2020 WL 1233919, at *2 (N.D. Cal. Mar. 13, 2020) (citing *Troester*, 5 Cal. 5th at 848;

21   *Rodriguez v. Nike Retail Servs*., 928 F.3d 810, 818 (9th Cir. 2019).

22   **II.    CONCLUSION**

23        The Court should stay a hearing on class certification in this action pending final approval of

24   the *Saldana* settlement.

25

26

27

28

Gibson, Dunn &
Crutcher LLP

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL
SETTLEMENT – CASE NO. 1:18-CV-00120-DAD (BAM)

1    Dated: June 5, 2020                    Respectfully submitted,

2

3                                           JASON C. SCHWARTZ
                                            MICHELE L. MARYOTT
                                            KARL NELSON
4                                           KATHERINE V.A. SMITH
                                            HELEN AVUNJIAN
5                                           GIBSON, DUNN & CRUTCHER LLP

6

7                                           By:  */s/ Katherine V.A. Smith*
                                                       Katherine V.A. Smith
8
                                            Attorneys for Defendants GOLDEN STATE FC LLC
9                                           (now known as AMAZON.COM SERVICES LLC),
                                            AMAZON.COM, INC. and AMAZON
10                                          FULFILLMENT SERVICES, INC. (now known as
                                            AMAZON.COM SERVICES LLC)
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING IMPACT OF PROPOSED MDL
SETTLEMENT – CASE NO. 1:18-CV-00120-DAD (BAM)