MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
MEGAN COONEY, SBN 295174
  mcooney@gibsondunn.com
KATIE M. MAGALLANES, SBN 300277
  kmagallanes@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

JASON C. SCHWARTZ (admitted *pro hac vice*)
  jschwartz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

KARL G. NELSON (admitted *pro hac vice*)
  knelson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3100
Facsimile: 214.571.2900

KATHERINE V.A. SMITH, SBN 247866
  ksmith@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendants GOLDEN STATE FC
LLC (now known as AMAZON.COM SERVICES
LLC), AMAZON.COM, INC., and AMAZON
FULFILLMENT SERVICES, INC. (now known as
AMAZON.COM SERVICES LLC)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| JUAN TREVINO, CHRISTOPHER WARD, LINDA QUINTEROS, ROMEO PALMA, BRITTANY HAGMAN, ALBERTO GIANINI, and JUAN C. AVALOS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOLDEN STATE FC LLC, a Delaware Limited Liability Company; AMAZON.COM INC., a Delaware Corporation, AMAZON FULFILLMENT CENTERS, INC. a Delaware Corporation, and Does 1 through 10, inclusive, <br><br> Defendants. | **LEAD CASE 1:18-cv-00120-KES (BAM)** <br> Member Case No: 1:18-cv-00121-KES-BAM <br> Member Case No: 1:18-cv-00567-KES-BAM <br> Member Case No: 1:18-cv-01176-KES-BAM <br> Member Case No: 1:17-cv-01300-KES-BAM <br><br> **DEFENDANTS' NOTICE REGARDING MDL CLASS ACTION SETTLEMENT** |

Pursuant to the Court's order regarding informal discovery dispute, issued on December 2, 2024, Defendants Golden State FC LLC (now known as Amazon.com Services LLC), Amazon.com Inc., and Amazon Fulfillment Services, Inc. (now known as Amazon.com Services LLC) (collectively, "Defendants") by and through their respective counsel of record, hereby submit this notice providing an update on the final approval hearing and status of the Kentucky action: *In re: Amazon.com, Inc. Fulfillment Center Fair Labor Standards Act (FLSA) and Wage and Hour Litigation*, MDL Case No. 3:14-md-2504 (W.D. Ky.) ("MDL Class Action").

On December 23, 2024, the Honorable David J. Hale issued a memorandum and order, granting final approval of the MDL Class Action settlement. Judge Hale also certified for settlement purposes the class of all non-exempt employees employed by Amazon in California who worked at an Amazon.com warehouse facility (fulfillment centers and sortation centers) from October 1, 2012 through April 30, 2020. Further, Judge Hale directed the parties to effectuate the terms of the settlement agreement and directed the settlement administrator to calculate and pay the claims of the class members in accordance with the terms of the settlement agreement. A copy of Judge Hale's memorandum and order is attached as Exhibit 1.

On December 27, 2024, Judge Hale issued an order, attached hereto as Exhibit 2, relating to *Allison et al. v. Amazon.com, Inc. et al.*, dismissing the matter with prejudice. On January 3, 2025, Judge Hale issued an order, attached hereto as Exhibit 3, dismissing the MDL Class Action with prejudice and striking the MDL Class Action from the Court's docket.

Dated: January 13, 2025

GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Katherine V.A. Smith*
             Katherine V.A. Smith

Attorneys for Defendants
GOLDEN STATE FC LLC (now known as AMAZON.COM SERVICES LLC), AMAZON.COM, INC., and AMAZON FULFILLMENT SERVICES, INC. (now known as AMAZON.COM SERVICES LLC)

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: AMAZON.COM, INC.,
FULFILLMENT CENTER FAIR LABOR                    Master File No. 3:14-md-2504
STANDARDS ACT (FLSA) AND                              MDL Docket No. 2504
WAGE AND HOUR LITIGATION

THIS DOCUMENT RELATES TO:
*Saldana et al. v. Amazon.com, LLC et al.*,            Case No. 3:14-cv-290-DJH

\* \* \* \* \*

## <u>MEMORANDUM AND ORDER</u>

On April 17, 2024, the Court preliminarily approved the class-action settlement in this matter. (Docket No. 141)  In the same Memorandum and Order, the Court conditionally certified the class for settlement purposes; appointed class counsel and the claims administrator; and approved the notice and opt-out form to be sent to class members.  (*Id.*)  Plaintiff Khadijah Robertson now moves for final approval of the settlement and certification of the class for settlement purposes, as well as final approval of attorney fees and payments to the class representative and claims administrator.  (D.N. 146; D.N. 150)  Defendants Amazon.com LLC and Golden State FC, LLC do not oppose the motions.  (*See id.*)  Class member Antwoine Tyrone Taylor objects, arguing that the proposed settlement "is not fair, reasonable, and adequate" and that Robertson "failed to investigate, evaluate, or fairly settle claims for the affected class members." (D.N. 147, PageID.3149)  The Court held a final fairness hearing on September 13, 2024, and heard from the parties in support of the settlement, as well as from Taylor's counsel regarding Taylor's objection. (D.N. 152)  For the reasons set forth below, the Court will overrule the objection and grant Robertson's motions for final approval and attorney fees.

## I.

Amazon.com fulfillment-center employees filed this class action in December 2013, alleging that Defendants failed to properly compensate them for time spent in mandatory security screenings, in violation of California labor laws and the Private Attorneys General Act (PAGA). (Master File D.N. 61, PageID.1750 ¶ 1; *see also* D.N. 150-1, PageID.3278)  Robertson asserts that these mandatory individualized security searches resulted in "daily underpayment for all time worked, daily interruptions in employee meal and rest periods, a failure to provide correctly itemized and accurate wage statements showing all hours actually caused or suffered to work, and a failure to pay all wages owed at separation to separated employees." (D.N. 150-1, PageID.3280 (citing Master File D.N. 61, PageID.1762–65 ¶¶ 26–33))  Defendants moved for summary judgment on Robertson's claims. (D.N. 64)  The Court granted the motion for summary judgment (D.N. 85), and Robertson appealed on July 10, 2017.[1] (D.N. 87)

While the appeal was still pending nearly three years later, Robertson and Defendants "reached a preliminary settlement." (D.N. 90-1, PageID.1503)  The Sixth Circuit therefore stayed the appeal, and Robertson moved for preliminary approval of the settlement. (D.N. 90)  That prompted a motion to intervene by the plaintiffs in *Trevino v. Golden State FC LLC*, No. 1:18-cv-00120 (E.D. Cal.), who argued that the settlement in this action was rushed through to avoid class certification on similar claims in the Eastern District of California. (D.N. 94)  Following a lengthy stay in anticipation of a certification decision in *Trevino* (which has yet to occur), the Court denied

---

[1] At the parties' joint request and in light of the similarity between the two cases, the Court stayed *Allison v. Amazon.com Inc.*, No. 3:14-cv-168-DJH (W.D. Ky.), pending resolution of the appeal in this matter. (Master File D.N. 249; *see* Master File D.N. 248)  During the final fairness hearing, counsel for the parties agreed that upon resolution of this case, *Allison* would also be resolved. (D.N. 163, PageID.3400)  *Allison* will therefore be dismissed by separate order following entry of this Memorandum and Order.

the *Trevino* plaintiffs' motion to intervene and preliminarily approved the parties' settlement on

April 17, 2024.  (D.N. 141)

    In its April 17 Memorandum and Order, the Court conditionally certified the following

class for settlement purposes:

> All non-exempt employees employed by Amazon in California who worked at an
> Amazon.com warehouse facility (fulfillment centers and sortation centers)
> ("Covered Facilities") from October 1, 2012[,] until the date that the preliminary
> approval of the proposed settlement is ordered ("Class Members").
>
>> (a)    The Pre-May 2013 Subclass is defined as: Those Class Members
>>         who were employed by Amazon in California and who worked at an
>>         Amazon.com Covered Facility from October 1, 2012[,] through
>>         April 30, 2013.
>>
>> (b)    The Post-May 2013 Subclass is defined as: Those Class Members
>>         who were employed by Amazon in California and who worked at an
>>         Amazon.com Covered Facility from May 1, 2013[,] until the date
>>         that the preliminary approval of the proposed settlement is ordered.

(*Id.*, PageID.2963)

    The proposed final settlement totals $11,132,134.  (D.N. 128-1, PageID.2816 ¶ 4)  That

sum includes payments to individual class members who did not opt out of the settlement; attorney

fees and costs; an incentive payment to Robertson as the named plaintiff; "penalties, interest and

taxes, except that Defendants agree that the employer's portion of tax payments shall be paid

separately by Defendants"; and fees for administration of the settlement.  (*Id.*)  Any class member

who did not timely request exclusion from the class will release Defendants and related entities

from "any and all claims that were or could have been asserted based upon the facts alleged in this

action."  (*Id.*, PageID.2819 ¶ 6)

    Antwoine Tyrone Taylor is the sole objector to the proposed settlement.  (D.N. 147)

According to Taylor, "the evidence demonstrates that this proposed settlement is totally unfair,

unreasonable, and inadequate for the class," and Robertson "proposes to pay class members

fractions of pennies on the dollar without providing any justification for the discount." (*Id.*, PageID.3149) Taylor relies upon expert-witness analysis commissioned by the *Trevino* plaintiffs to contend that potential recovery across all class claims equals or exceeds $826,705,590, with an average recovery for a terminated employee of $8,121.29 and average recovery for a current employee of $4,669.79. (*Id.*, PageID.3154–55) As explained below, Taylor's objection does not preclude final approval of the parties' settlement.

## II.

### A. Approval of Settlement

Pursuant to Federal Rule of Civil Procedure 23, the Court may approve a class-action settlement "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" after having considered whether

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The rule largely encompasses the factors employed by the Sixth Circuit:

(1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."[2]

_____

[2] Citing an unpublished district-court decision from the Northern District of California, Taylor suggests that the Court should apply California law in deciding whether to approve the parties' settlement. (D.N. 147, PageID.3168 ("Because this is a California class, Plaintiff and Defendants should comply with California law in proving that the settlement is fair and adequate." (citing

*Does 1-2 v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (internal quotation marks omitted) (quoting *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In addition to the seven factors listed above, the Sixth Circuit has "looked to whether the settlement 'gives preferential treatment to the named plaintiff[] while only perfunctory relief to unnamed class members.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 (6th Cir. 1983)).

The Sixth Circuit does not appear to have addressed the current version of Rule 23(e)(2). Since the rule's 2018 amendment, courts within the Circuit have applied both sets of factors.  *See, e.g.*, *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-CV-825-BJB, 2023 WL 5997294, at *2 (W.D. Ky. Sept. 15, 2023) (citing *Doe*, 925 F.3d at 894–95); *Elliott v. LVNV Funding, LLC*, No. 3:16-CV-675-RGJ, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019)).  Due to the significant overlap, the two sets of criteria can be considered jointly.  *See Southard v. Newcomb Oil Co., LLC*, No. 3:21-CV-607-DJH-CHL, 2024 WL 4263639, at *2 (W.D. Ky. Sept. 23, 2024).

## 1. Adequate Representation/Amount of Discovery/Counsel and Representatives' Opinions

This case has been litigated for more than ten years, and counsel on both sides have deep experience in similar cases.  (*See, e.g.*, D.N. 146-2, PageID.2997-98)  Contrary to Taylor's

---

*O'Sullivan v. Diamond Parking, Inc.*, No. C 07-3389 VRW, 2008 WL 11404948, at *3 (N.D. Cal. Nov. 16, 2008))))  But "[i]n multidistrict litigation, when analyzing questions of federal law"— such as the Federal Rules' process for class certification and class-action settlement approval— "the transferee court should apply the law of the circuit in which it is located." *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F. Supp. 2d 914, 920 (S.D. Ohio 2007) (cleaned up) (quoting *Temporomandibular Joint (TMJ) Implant Recipients v. E.I. DuPont DeNemours & Co.*, 97 F.3d 1050, 1055 (8th Cir. 1996)).

assertion that Robertson conducted insufficient discovery to make an informed decision about the settlement (D.N. 147, PageID.3171-72), as the Court explained in its preliminary-approval order, the parties engaged in extensive discovery in this matter.[3]  (*See* D.N. 141, PageID.2953–54)  Thus, these factors and the opinions of counsel and the class representative, all of whom favor the settlement, support final approval.[4]  *See Doe*, 925 F.3d at 899.

## 2.    Arm's-Length Negotiations/Risk of Fraud or Collusion

The bulk of Taylor's objection pertains to purported collusion between the parties.  Taylor characterizes the settlement as the result of a "maleficent reverse auction," asserting that after the *Trevino* plaintiffs and Amazon engaged in unsuccessful mediation, "Amazon and Robertson's counsel complicity raced to enter a blatantly inadequate settlement to attempt to minimize the impact of an adverse certification ruling in the *Trevino* matter."  (D.N. 147, PageID.3153; *see id.*, PageID.3152)  According to Taylor, the settlement values "security screening claims and derivative wage statement, meal and rest period, waiting time, and PAGA claims in California at fractions of pennies on the dollar, despite recent California Supreme Court precedent" favorable to plaintiffs.  (*Id.*, PageID.3151)  Taylor also contends that the settlement's release provision is overbroad.  (*Id.*, PageID.3158-68)

"Courts require 'concrete evidence' before finding inadequate representation based on collusion."  *Adams-Gillard v. Sedgwick Claims Mgmt. Servs., Inc*., No. 221CV02038SHMCGC, 2022 WL 969628, at *5 (W.D. Tenn. Mar. 30, 2022) (collecting cases).  Without the requirement

---

[3] Specifically, Taylor contends that "there is no evidence that Plaintiff took discovery with respect to claims that are unrelated to security claims."  (D.N. 147, PageID.3171)  But the settlement does not encompass such claims: the release expressly excludes claims "unrelated to security screening."  (*See* D.N. 128-1, PageID.2819)
[4] To the extent Taylor argues that Robertson and class counsel inadequately represented the class by colluding with Defendants, that contention is addressed in the next section.

of concrete evidence, "all settlements of competing cases would be derailed by accusations of reverse auction." *Id.* (citing *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008)).  But Taylor cites no evidence to support his allegations of collusion.  Nor has he established through "concrete evidence" that Robertson "represents an adverse interest or has failed to fulfill her duty as a Named Plaintiff." *Id.*  The Court may therefore "presume the absence of fraud or collusion."  *Dick v. Sprint Commc'ns Co.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014) (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

Moreover, the procedural history of the litigation indicates that the parties' settlement is the result of "a truly adversarial bargaining" process.  *Newberg on Class Actions* § 13:50 (6th ed. 2024).  Although the settlement did not follow mediation by a third party, this case has been pending for more than a decade, with significant adversarial motion practice and discovery during that time, as well as an appeal to the Sixth Circuit.  (*See* D.N. 146-2, PageID.3002–05 ¶¶ 24–33; D.N. 87; *see also, e.g.*, D.N. 64; D.N. 78)  And as noted above, the release provision excludes non-security-related claims.  (*See* D.N. 128-1, PageID.2819)  In sum, these factors also weigh in favor of final approval.

   3.    **Adequacy of Relief**

          a.    **Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

The parties have already invested significant time and money in this litigation, at significant risk.  (*See, e.g.*, D.N. 146-2, PageID.3002–04)  Proceeding to trial would entail further risk and expense, with the outcome uncertain—regardless of the strength of her claims, Robertson

could fail at the certification stage, while Defendants could face even greater exposure if the case were to proceed.[5]  This factor therefore favors approval.

### b.    Method of Distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Newberg on Class Actions* § 13:53.  This factor therefore favors approval when class members are not required to "submit claim forms or other documents to participate in the recovery."  *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N.D. Ohio 2023).  The distribution process here imposes no such requirement; instead, payments will be made automatically to class members who did not timely opt out.  (*See* D.N. 128-1, PageID.2817)  Thus, no portion of the settlement amount will revert to Defendants.  (*See id.*)  In short, there are no "red flag[s]" suggesting that the method of distribution is designed to prevent class members from receiving payment, *Newberg on Class Actions* § 13:53, and this factor likewise favors final approval.

### c.    Attorney Fees

The parties' agreement provides that class counsel may seek "attorneys' fees amounting to $3,673,604 and costs not to exceed $25,000."  (D.N. 128-1, PageID.2818 ¶ 5)  The requested fees represent thirty-three percent of the total settlement amount.  (*See id.*, PageID.2816 ¶ 4)  The Sixth Circuit recognizes two methods for calculating attorney fees: the lodestar method and the percentage-of-the-fund method.  *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th

---

[5] As Defendants point out in their response to Taylor's objection (D.N. 151, PageID.3337-41), the magistrate judge in *Trevino* has twice recommended that no class be certified as to the *Trevino* plaintiffs' security-related claims.  *See Trevino v. Golden State FC LLC*, No. 1:18-CV-00120-KES-BAM (E.D. Calif.), ECF Nos. 166, 205.  While no final certification decision has yet been reached in *Trevino*, these recommendations undermine Taylor's position that a massive class recovery there is a foregone conclusion.

Cir. 2016). The Court "ha[s] the discretion to select the particular method of calculation, but must articulate the 'reasons for "adopting a particular methodology and the factors considered in arriving at the fee."'" *Id.* at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The percentage method is generally preferred in common-fund cases. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

The percentage-of-the-fund method is straightforward and consistent with the fee arrangement between Plaintiff and class counsel (*see* D.N. 128-1, PageID.2818 ¶ 5); it also "more accurately reflects the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516). Moreover, the concern that "a percentage award may . . . provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested" is not present here given that class counsel have already invested more than a decade in this litigation. *Id.* (quoting *Rawlings*, 9 F.3d at 516). The Court will therefore apply the percentage-of-the-fund method in this case.[6]

The Sixth Circuit has identified six factors relevant to the attorney-fee inquiry under either method:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

---

[6] Taylor objects to the requested fee amount on the ground that it is excessive and not adequately documented under the lodestar method. (D.N. 147, PageID.3172-73) Because the Court finds the percentage-of-the fund method more appropriate and a lodestar cross-check is optional, however, analysis of the lodestar is unnecessary. *See Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020) (noting that the Sixth Circuit "has repeatedly said that district courts are not required to conduct a crosscheck in every case" (citing *Gascho*, 822 F.3d at 281-82)).

*Id.* (quoting *Moulton*, 581 F.3d at 352).    These factors support approval of class counsel's requested fee.    First, the value of the benefit to class members is clear: the highest estimated Individual Settlement Payment is $3,547.39, and the average estimated Individual Settlement Payment is $32.94.  (D.N. 154, PageID.3357)  Further, class counsel have extensive experience in this type of litigation and provided their services on a contingent basis.  (D.N. 146-2, PageID.3004–05 ¶¶ 33–39)  The case is complex, and society has a strong interest in rewarding attorneys who take on such cases and "achieve a result that the individual class members probably could not obtain on their own," particularly in the wage-and-hour context.  *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (citation omitted).

Finally, the percentage sought is not unreasonable.  The proposed fee award in this case represents approximately one third of the total settlement amount.  (*See* D.N. 128-1, PageID.2816–18 ¶¶ 4–5)  Courts within the Sixth Circuit frequently approve fee awards of thirty-three percent in complex wage-and-hour cases.  *See, e.g.*, *Ware v. CKF Enters., Inc.*, No. 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (collecting cases).  In light of this precedent and the factors listed above, the proposed fee award is reasonable.

### d.    Other Agreements

The parties represent that the "Settlement Agreement and its exhibits constitute the entire agreement among the Parties to the Settlement Agreement and no representations, warranties, or inducements have been made to any party concerning the Settlement Agreement or its exhibits, other than the representations, warranties, and covenants covered and memorialized in such documents."  (D.N. 128-1, PageID.2823-24 ¶ 16)  Thus, this factor favors final approval.

4.    **Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiff**

The settlement agreement provides for a $10,000 incentive payment to Robertson. (D.N. 128-1, PageID.2817 ¶ 4(a))  Such payments generally "do[] not raise a red flag" in the settlement-approval inquiry "because the class representative and class member are not similarly situated in regard to . . . the incentive payment: the class representative did extra work and took extra risk to earn that." *Newberg on Class Actions* § 13:56.  Requests for incentive awards are nevertheless "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

As noted in the Court's April 17, 2024 Order, the incentive payment requested here "exceeds the threshold suggested by Sixth Circuit caselaw at least as to some class members." (D.N. 141, PageID.2957 (citing *Strano v. Kiplinger Washington Eds., Inc.*, 646 F. Supp. 3d 909, 913 (E.D. Mich. 2022)))  But "considerable time" spent by a plaintiff in protecting the class's interests can justify a heightened incentive payment if such efforts are "supported by . . . [documentation that] quantif[ies] the plaintiff's] invested time." *Moeller v. Week Pub'ns, Inc.*, 646 F. Supp. 3d 923, 927 (E.D. Mich. 2022).

In light of the large payment requested here, the Court instructed "Robertson . . . to submit thorough documentation of [her] time spent on the litigation." (D.N. 141, PageID.2958)  To establish her contribution to the suit, Robertson reports that she "responded to Defendants' requests for production of documents and interrogatories"; "spent hours searching for documents, scanning and emailing them to [her] attorneys, and reviewing documents [her] attorneys asked [her] to review"; "had to answer [her] attorneys' questions by phone, emails, and text messages";

Case 3:14-md-02504-DJH    Document 377    Filed 12/23/24    Page 12 of 16 PageID #:
7348
Case 1:18-cv-00120-KES-BAM    Document 231    Filed 01/13/25    Page 15 of 23

and "sat for a full day deposition in Los Angeles," which required more than five hours of travel

and taking a full day of unpaid leave from work.  (D.N. 146-7, PageID.3138–40)  Robertson "was

also on standby during mediation of the related actions." (*Id.*, PageID.3140)  In total, she estimates

that she has spent "more than 100 hours on this case so far."  (*Id.*)  And her involvement in the

litigation has spanned a decade.  (*See id.*, PageID.3141 (describing difficulty of having the case

"'hanging over [her] head' for so long"))  These representations are sufficient to justify the

heightened award because they "quantify [Robertson's] invested time."  *Moeller*, 646 F. Supp. 3d

at 927.  Moreover, the relief to unnamed class members will not be "perfunctory," *Vassalle*, 708

F.3d at 756, but instead is based on the number of shifts they worked during the relevant period.

In sum, this factor supports final approval of the settlement and the incentive payment.

### 5.       Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class

action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement

conserves judicial resources."  *Doe*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*,

218 F.R.D. 508, 530 (E.D. Mich. 2003)).  This factor therefore also supports approval.

### B.       Certification for Settlement Purposes

The Court previously found certification for settlement purposes appropriate under Rule

23.  (D.N. 141, PageID.2958-61)  There is no indication that any of the factors supporting

certification have changed since that ruling; thus, certification for settlement purposes remains

appropriate.  *See* Fed. R. Civ. P. 23(a), (b)(3).  As Taylor correctly observes, however (D.N. 147,

PageID.3157–58), the class definition in the Court's April 17, 2024 Order erroneously reflected

the superseded settlement agreement: it defined the class and post-May 2013 subclass to include

employees who worked at Covered Facilities "until the date that the preliminary approval of the

proposed settlement is ordered" (D.N. 141, PageID.2963), instead of "through April 30, 2020." (D.N. 128-1, PageID.2815-16 ¶ 3)  Importantly, the notice sent to class members contained the correct definitions.  (*See* D.N. 154-1; D.N. 154-2)

Taylor cites no authority indicating that a discrepancy in definition between the preliminary-approval order and the class ultimately certified precludes final approval (*see* D.N. 147, PageID.3157-58), and the Court is aware of none.  To the contrary, Rule 23 contemplates changes to class definitions at the settlement stage even following certification.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); advisory committee's note to 2003 amendment ("Settlement review also may provide an occasion to review the cogency of the initial class definition.").[7]  The Court will therefore certify the following class in accordance with the parties' revised settlement agreement:

> All non-exempt employees employed by Amazon in California who worked at an Amazon.com warehouse facility (fulfillment centers and sortation centers) ("Covered Facilities") from October 1, 2012 through April 30, 2020 ("Class Members").
>
> > (a)    Pre-May 2013 Subclass: Those Class Members who were employed by Amazon in California and who worked at an Amazon.com Covered Facility from October 1, 2012 through April 30, 2013.
> >
> > (b)    Post-May 2013 Subclass: Those Class Members who were employed by Amazon in California and who worked at an Amazon.com Covered Facility from May 1, 2013 through April 30, 2020.

(*See* D.N. 128-1, PageID.2815–16)

---

[7] The advisory committee noted that "[r]edefinition of a class certified under Rule 23(b)(3) may require notice to new class members under Rule 23(c)(2)(B)."  Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.  As explained above, however, the notice sent to class members in this case contained the correct definition.

**C.    Notice to Class Members**

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the form and content of the notice and directed that it be sent to class members via first-class mail. (D.N. 141, PageID.2963)

The claims administrator has confirmed that a total of 198,379 notices were sent to class members; of these, 21,679 were returned by the post office. (D.N. 154, PageID.3356 ¶¶ 8, 10) The settlement administrator then re-mailed 18,649 notices. (*Id.*, PageID. 3356–57 ¶ 11) Ultimately, 3,026 notices, or approximately 1.5%, were undeliverable. (*Id.*, PageID.3357 ¶ 11) Thus, a total of 195,353 class members received notice. The administrator received 1,346 valid and timely requests for exclusion from the settlement, or approximately 0.69% of that total. (*Id.*, PageID.3357 ¶ 14) And as discussed above, there was a single objection. (*Id.*, PageID.3358 ¶ 15) These figures do not raise a concern as to the adequacy of the settlement. *See Newberg on Class Actions* § 13:58 n.24 (noting 0.6% mean percentage of opt-outs (citing Theodore Eisenberg, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1546 (2004))).

**D.    Payment to Claims Administrator**

Based on the affidavits submitted by Simpluris representative Markus Bulthuis, the claims administrator appears to have performed its duties in accordance with the settlement agreement and the Court's prior order. (*See* D.N. 148; D.N. 154)

**III.**

In sum, the Court finds the parties' settlement to be fair, reasonable, and adequate. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    The parties' consent motion (Master File D.N. 372; D.N. 153) is **GRANTED**.  The extension of deadlines granted in the Court's August 1, 2024 Order (D.N. 152) applied only to those Class Members whose Class Notices were mailed on July 22, 2024.  For all other Class Members, the deadlines remained as set forth in the Court's April 17, 2024 Preliminary Approval Order, without modification by the August 1, 2024 Order.

(2)    Antwoine Tyrone Taylor's objection to the proposed settlement (Master File D.N. 363; D.N. 147) is **OVERRULED**.

(3)    Plaintiff Khadijah Robertson's unopposed motion for final approval (Master File D.N. 369; D.N. 150) and motion for attorney fees and costs (Master File D.N. 362; D.N. 146) are **GRANTED**.

(4)    The Court adopts the defined terms in the Settlement Agreement.

(5)    The following class is certified for settlement purposes only:

All non-exempt employees employed by Amazon in California who worked at an Amazon.com warehouse facility (fulfillment centers and sortation centers) ("Covered Facilities") from October 1, 2012 through April 30, 2020 ("Class Members").

(a)    Pre-May 2013 Subclass: Those Class Members who were employed by Amazon in California and who worked at an Amazon.com Covered Facility from October 1, 2012 through April 30, 2013.

(b)    Post-May 2013 Subclass: Those Class Members who were employed by Amazon in California and who worked at an Amazon.com Covered Facility from May 1, 2013 through April 30, 2020.

(6)     The Court confirms the appointment of Khadijah Robertson as Class Representative and the incentive payment in the amount of $10,000, as set forth in the Settlement Agreement.

(7)     The Court confirms the appointment of Thierman Buck LLP; Cohelan Khoury & Singer; The Markham Law Firm; Hamner Law Offices, PAC; and United Employees Law Group, P.C. as Class Counsel for the settlement class and approves their requests for attorney fees of $3,673,604 and litigation costs of $9,078.80.

(8)     The Court finds that as of the date of this Order, each and every class member who did not submit a timely and valid request for exclusion has waived and released claims as set forth in the Settlement Agreement and Notice of Settlement.

(9)     The Court finds that the settlement administrator Simpluris, Inc. is entitled to $639,000 for settlement administration.

(10)     The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

(11)     This matter is **DISMISSED** with prejudice, **STRICKEN** from the Court's docket, and **CLOSED**.  The Court retains jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund.

December 23, 2024

**David J. Hale, Judge**
**United States District Court**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: AMAZON.COM, INC.,
FULFILLMENT CENTER FAIR LABOR            Master File No. 3:14-md-2504
STANDARDS ACT (FLSA) AND                    MDL Docket No. 2504
WAGE AND HOUR LITIGATION

THIS DOCUMENT RELATES TO:
*Allison et al. v. Amazon.com, Inc. et al.*,            Case No. 3:14-cv-168-DJH

\* \* \* \* \*

## ORDER

In light of the Memorandum and Order entered in *Saldana v. Amazon.com, LLC* (Master File Docket No. 377) and the parties' agreement (*see* Master File D.N. 375, PageID.7332; Master File D.N. 248), it is hereby

**ORDERED** that this matter is **DISMISSED** with prejudice, **STRICKEN** from the Court's docket, and **CLOSED**.

December 27, 2024

**David J. Hale, Judge**
**United States District Court**

1

# EXHIBIT 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE: AMAZON.COM, INC.,
FULFILLMENT CENTER FAIR LABOR                 Master File No. 3:14-md-2504
STANDARDS ACT (FLSA) AND                         MDL Docket No. 2504
WAGE AND HOUR LITIGATION

* * * * *

## <u>ORDER</u>

All matters having been resolved, it is hereby

**ORDERED** that this multidistrict litigation is **DISMISSED** with prejudice,

**TERMINATED**, and **STRICKEN** from the Court's docket.

January 3, 2025

**David J. Hale, Judge**
**United States District Court**

cc:    Clerk, Judicial Panel on Multidistrict Litigation

1